UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AYANA F. MUMIN,

               Plaintiff,

        -against-

THE CITY OF NEW YORK, LOUIS A. MOLINA, individually and in his official capacity as Commissioner of the New York City Department of Correction, and SALESFORCE.COM, INC.,

               Defendants.

Case No. 1:23-cv-03932 (JLR)

**<u>OPINION AND ORDER</u>**

---

JENNIFER L. ROCHON, United States District Judge:

       Ayana F. Mumin ("Mumin" or "Plaintiff") brings this suit for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and related state and city laws, as well as claims under 42 U.S.C. §§ 1983 and 1985 against the City of New York; Louis A. Molina ("Molina" and, together with the City, "City Defendants"), individually and in his official capacity as Commissioner of the New York City Department of Corrections ("DOC"); and Salesforce, Inc. ("Salesforce" and, together with City Defendants, "Defendants"). *See generally* Dkt. 45 ("Second Amended Complaint" or "SAC"). Plaintiff alleges that she was denied a reasonable accommodation from DOC's COVID-19 vaccine mandate based on her religious beliefs and that Defendants conspired to deny her a reasonable accommodation. City Defendants move to dismiss the Second Amended Complaint, Dkt. 53, and Salesforce moves to dismiss the claims against it in Counts III to IV and IX to XV of the Second Amended Complaint, Dkt. 65. For the reasons stated below, the Court GRANTS the motions of the City Defendants and Salesforce and dismisses the Second Amended Complaint.

# BACKGROUND[1]

## I.    Factual Background

Plaintiff is a former employee of the New York City Department of Corrections.  SAC ¶ 15.  She is a practicing Muslim.  SAC ¶ 17.  Plaintiff was employed at the DOC from November 2005 until February 2022, first as a Correction Officer and then as a Captain.  SAC ¶¶ 54-55.  After Plaintiff became a Captain in July 2015, she was assigned to work at a DOC facility on Rikers Island, the Robert N. Daveron Complex, and eventually became Captain-Mentor Supervisor at the Complex.  SAC ¶¶ 62-64.  On November 11, 2020, Plaintiff suffered a job-related injury to her knee, after which she was reassigned to the Health Management Division (the "HMD") as a Captain-Supervisor/Tour Commander in May 2021.  SAC ¶¶ 65-68.  In this role, Plaintiff supervised approximately twenty (20) uniformed employees or

---

[1] The facts stated herein are taken from the Second Amended Complaint, as well as documents incorporated by reference in the SAC, and are accepted as true for purposes of this motion.  *See, e.g.*, *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018).  The parties dispute whether the Court may consider certain documents — namely the City's vaccine mandate, the denial letter Mumin received on November 10, 2021, DOC's November 8, 2021 teletype order regarding compliance with and accommodations from the City vaccine mandate, and the email Mumin received from Salesforce informing her that her appeal had been denied — when deciding the motions to dismiss.  *See* Dkt. 55 ("City Dfs. Br.") at 8 n.3; Dkt. 66 ("Salesforce Br.") at 15 n.7; Dkt. 68 ("Pl. City Opp.") at 3-4, 9-10, 12-14.  The SAC repeatedly refers to the vaccine mandate, teletype order, denial letter, and the Salesforce email, and even quotes from the latter three documents.  *See, e.g.*, SAC ¶¶ 87-97, 104-106, 112-116, 128, 131, 135-138.  These "clear, definite[,] and substantial reference[s] to the documents" lead the Court to conclude that the documents were incorporated by reference in the SAC.  *Bergesen v. Manhattanville Coll.*, No. 20-cv-03689 (KMK), 2021 WL 3115170, at *2 (S.D.N.Y. July 20, 2021) (alteration in original) (quoting *Atlas Partners, LLC v. STMicroelectronics, Int'l N.V.*, No. 14-cv-07134 (VM), 2015 WL 4940126, at *7 (S.D.N.Y. Aug. 10, 2015)).  Even if the Court did not find that the documents were incorporated by reference, it would still consider them on this motion.  The latter three documents were integral to the SAC, since the SAC "relies heavily on the documents' terms and effect," and Mumin "has actual notice of all the information in the documents and relied upon those documents in framing the complaint," *id.* (citation omitted), and the Court may take judicial notice of the City's vaccine mandate as a "public document[] . . . not subject to dispute," *Hacyznska v. Mount Sinai Health Sys.*, --- F. Supp. 3d ---, 2024 WL 3178639, at *2 (E.D.N.Y. June 26, 2024).

correction officers, as well as medical staff who worked at the HMD "to provide medical services to [the] DOC"; she was also responsible for "creating spreadsheets and reports, and compiling data regarding uniformed and non-uniformed employees of the DOC, who reported sick." SAC ¶¶ 69-71. Her position in the HMD did not require her to have contact with the DOC inmate population or the public. SAC ¶¶ 72-73. In July 2021, Plaintiff underwent knee surgery and went on medical leave. SAC ¶ 75.

In August 2021, while Plaintiff was still on medical leave, the City Defendants announced a policy whereby City employees, including DOC employees, had to obtain the COVID-19 vaccine or undergo weekly testing. SAC ¶ 77. In October 2021, while Plaintiff was still on medical leave, the City announced that it would require all City employees, including those working for the DOC, to be vaccinated against COVID-19, and the DOC announced that it would review and determine requests from employees who sought accommodations based on their medical condition or religion. SAC ¶¶ 78-79; Dkt. 54-1; Dkt. 54-3. To obtain such an accommodation, employees were required to complete a form entitled "Correction Department of the City of New York — Request for a Reasonable Accommodation" (the "Accommodation Form"). SAC ¶¶ 79-80.

On October 22, 2021, while still on medical leave, Plaintiff submitted the Accommodation Form, requesting an accommodation or exemption from the mandate "based on her Islamic religion, which prohibits her from being vaccinated against all conditions, ailments[,] and impairments, including the corona virus." SAC ¶ 81. On November 8, 2021, then-DOC Commissioner Vincent Schiraldi issued a teletype order (the "Teletype Order") to all DOC employees, which set forth the COVID-19 vaccine mandate and the process for requesting a reasonable accommodation, and stated in part that "the only allowable accommodation from the Vaccine Mandate that will not cause undue hardship and/or

disruption to the department is weekly testing and submission of negative PCR results." SAC

¶¶ 87-89 (further capitalization and emphasis omitted); Dkt. 54-3. On November 9, 2021,

Plaintiff returned to work. SAC ¶ 101. On November 10, 2021, the City Defendants

informed Plaintiff that the DOC had reviewed her request and could not accommodate it,

stating that providing Plaintiff with any exemption would cause "an undue hardship to the

Department as it presents a direct threat to members of service, the public and those detained

by the Department." Dkt. 54-2 at 1; SAC ¶¶ 104, 106. The letter further advised that:

> The facilities maintained by the [DOC] are often confined spaces with narrow
> passages that do not always allow for social distancing. The layout and the
> duration of time people spend near each other in the facilities allows for the easy
> transmission of COVID-19. Due to this, many Members of Service have
> contracted COVID-19 during the pandemic, and some Members of Service and
> detainees have died due to the virus. Furthermore, the Department interacts with
> visiting members of the public on a regular basis. Since the public frequently
> visits detainees and interacts with Members of Service, they may introduce
> COVID-19 into the facilities where it can be transmitted to Members of Service
> and to detainees within our custody.

Dkt. 54-2 at 1. It also cited the risk of asymptomatic transmission and the concern that

"masks and weekly testing may be insufficient to control the spread of COVID-19 in the

Department." *Id.* It further noted that:

> The Department is currently operating with a severe shortage of staff at most
> jail facilities. At various points over the last few months, more than a quarter
> of uniformed Members of Service have been out sick or have not appeared for
> work. Due to these widespread staffing shortages, the Department has had to
> redeploy uniformed Members of Service at non-jail Commands to the jail
> facilities to fill the posts not manned due to the absences. Therefore, it is an
> undue hardship to exempt Members of Service from the vaccine because many
> Members of Service have been out sick recently and the Department has had
> difficulty fully staffing the facilities. The Department has a great need to make
> sure that Members of Service are healthy and manning their posts.

Dkt. 54-2 at 1-2.

On November 16, 2021, Plaintiff appealed the denial of her request for an

accommodation and requested to speak and meet with someone in the DOC's Equal

Employment Opportunity ("EEO") office about her request and the appeal. SAC ¶¶ 125-126. After receiving an email acknowledging receipt of her appeal, on December 19, 2021, Plaintiff received an email from noreply@salesforce.com[2] "on behalf of Vax Appeal (DCAS)" informing her that "the City of New York Reasonable Accommodation Appeals Panel has decided to deny the appeal of Ayana Mumin" and that the "decision classification" for the appeal was "Does Not Meet Criteria." SAC ¶¶ 130, 135; Dkt. 67-1. The email also stated that it had been "[s]ent from the Department of Citywide Administrative Services." Dkt. 67-1.

Plaintiff did not receive the COVID-19 vaccination or submit proof of vaccination by December 22, 2021, as required. SAC ¶¶ 137, 139. From November 9, 2021, until she was placed on leave on January 2, 2022, Plaintiff underwent weekly testing and submitted negative PCR test results. SAC ¶¶ 102-103. The December 19, 2021 email advised Plaintiff that she would be placed on leave without pay if she did not comply with the vaccine mandate and she was thereafter placed on leave without pay on January 2, 2022. SAC ¶¶ 138, 146. The City Defendants informed her that she would remain on leave without pay until she provided proof of vaccination. SAC ¶ 147. Because she was placed on leave without pay, Plaintiff lost her income and benefits, and her retirement benefits were reduced. SAC ¶ 148.

Plaintiff alleges that the DOC had a policy and practice of denying applications that sought the weekly-testing accommodation if the requests were made on religious grounds, and only granted medical requests for accommodation or exemptions. SAC ¶ 141. According to

---

[2] Mumin alleges that Salesforce entered into a contract with the City in 2020 to provide claims-review services in connection with requests by City employees, including DOC employees, for exemptions or accommodations from the vaccine mandate. SAC ¶ 28. According to Mumin, Salesforce reviewed and made determinations about whether to grant or deny appeals from the initial denial of an accommodation or exemption from the vaccine mandate. SAC ¶ 30.

Plaintiff, the DOC granted every request for medical accommodation, including for DOC employees who had direct contact with the inmate population and public.  SAC ¶¶ 152, 154, 157.  In contrast, the DOC refused to grant any request for religious accommodations.  SAC ¶ 155.  She alleges that Molina was aware of that policy and practice and continued it when he became DOC Commissioner, directing Salesforce and DOC employees to adhere to it.  SAC ¶¶ 141, 143.

Plaintiff identifies another female captain at the DOC, Captain Janelle Murray, whose request for a religious accommodation was also denied.  SAC ¶ 151.  Plaintiff alleges that certain male DOC employees were permitted to continue working without being vaccinated, and identifies three such employees whose duties involved daily direct contact with the incarcerated population and the public.  SAC ¶¶ 159-161.  Two of those individuals, identified as Correction Officer Gilbert Frederique and Correction Officer Jeffrey, worked in the complex on Rikers Island where Plaintiff worked before being moved to the HMD.  SAC ¶ 160, 163-164.  Plaintiff alleges that Molina was aware of the practice of permitting male employees to remain unvaccinated and employed, while terminating the employment of Plaintiff and other unvaccinated female DOC employees.  SAC ¶ 167.

The City Defendants eventually rescinded the vaccine mandate, effective February 10, 2023.  SAC ¶ 177.  In February 2023, the City Defendants announced that employees who had been terminated for failure to comply with the vaccine mandate could reapply for entry-level positions within City agencies, including the DOC, but they would have to "start at the bottom of the employment ladder" rather than "return[ing] to [their] former position[s]."  SAC ¶¶ 178-180.

## II.    Procedural History

On March 11, 2022, Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC"), alleging that the City, the DOC, and Salesforce.com, Inc. subjected her to discriminatory treatment in the terms and conditions of her employment based on her religion, religious beliefs, and gender.  SAC ¶ 10.  The EEOC issued a Notice of Right to Sue with respect to the charges asserted against the City and the DOC.  SAC ¶ 11.

Plaintiff subsequently filed her Complaint on May 11, 2023, alleging violations of Title VII against the City and the DOC; the NYSHRL and the NYCHRL against the City, the DOC, and Salesforce; as well as claims under 42 U.S.C. § 1983 against Molina and claims under 42 U.S.C. §§ 1981 and 1983 against Salesforce.  *See* SAC ¶ 12; *see generally* Dkt. 3. On September 29, 2023, the EEOC also issued a Notice of Right to Sue with respect to the claims Plaintiff asserted against Salesforce.  SAC ¶ 13.  On October 10, 2023, the City Defendants moved to dismiss the Complaint.  Dkt. 16.  On October 31, 2023, Plaintiff filed a First Amended Complaint that added more detail about her claims and added claims against Salesforce for violations of Title VII resulting from alleged religious and gender discrimination.  *See generally* Dkt. 20 ("FAC").

The City Defendants moved to dismiss the FAC in its entirety.  Dkt. 27.  During the Initial Pretrial Conference on January 16, 2024, Plaintiff indicated her intent to file a Second Amended Complaint; the Court permitted that amendment and accordingly denied the pending motion to dismiss the FAC without prejudice to refiling after Plaintiff filed her Second Amended Complaint.  Dkt. 43 at 1-2.  Defendant Salesforce was served on February

2, 2024.  Dkt. 44.  Plaintiff filed a Second Amended Complaint on February 15, 2024.  *See*

SAC.[3]

On March 14, 2024, the City Defendants moved to dismiss the SAC and submitted a

declaration and three exhibits in support of that motion.  Dkt. 53; Dkt. 54 ("Bonaparte Decl.");

Dkt. 55 ("City Dfs. Br.").  On May 7, 2024, Salesforce moved to dismiss Counts III to IV and

IX to XV of the SAC and submitted a declaration and one exhibit in support of that motion.

Dkt. 65; Dkt. 66 ("Salesforce Br."); Dkt. 67 ("Fornos Decl.").  The parties completed briefing

by July 19, 2024.  *See* Dkt. 68 ("Pl. City Opp."); Dkt. 73 ("City Dfs. Reply"); Dkt. 74 ("Pl.

Salesforce Opp."); Dkt. 78 ("Salesforce Reply").

## DISCUSSION

### I.    Motion to Dismiss Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 554, 570 (2007)).  "A complaint must allege 'more than a sheer possibility that a

defendant has acted unlawfully' and more than 'facts that are merely consistent with a

defendant's liability.'  'Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice.'"  *McCrae v. Trans Union LLC*, No. 23-cv-07971

(JLR), 2024 WL 1859965, at *1 (S.D.N.Y. Apr. 29, 2024) (some quotation marks omitted)

(quoting *Iqbal*, 556 U.S. at 678).

"'[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of

the factual allegations contained in the complaint,' and 'draw[] all reasonable inferences in

---

[3] The SAC has removed the DOC as a defendant, and brings claims only against the City,
Molina, and Salesforce.

favor of the plaintiff.'" *Greenberg v. Visiting Nurse Servs. in Westchester, Inc.*, No. 23-cv-04252 (KMK), 2024 WL 4252550, at *5 (S.D.N.Y. Sept. 19, 2024) (alterations in original) (first quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); and then quoting *Daniel v. T&M Prot. Res., Inc*., 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014)).  "A complaint that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.  Further, if the plaintiff 'ha[s] not nudged [his] claims across the line from conceivable to plausible, [those claims] must be dismissed.'" *Rizzo v. N.Y.C. Dep't of Sanitation*, No. 23-cv-07190 (JMF), 2024 WL 3274455, at *2 (S.D.N.Y. July 2, 2024) (alterations in original) (quoting *Twombly*, 550 U.S. at 555, 570).

The Court will first address the City Defendants' motion to dismiss and then address the motion filed by Salesforce.[4]

---

[4] As a threshold matter, insofar as the SAC seeks injunctive relief, Mumin lacks standing to bring such claims.  *See Hulinsky v. County of Westchester*, 670 F. Supp. 3d 100, 109 (S.D.N.Y. 2023) ("Standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages).") (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021)).  The SAC seeks both an order "prohibiting Defendants from continuing or maintaining the policy, practice, and/or custom of denying job benefits and opportunities to employees on the basis of religion, religious beliefs and gender," and an order "enjoining Defendants from engaging [in] the wrongful acts and practices complained of herein."  SAC at 47.  But the only practices complained of are those tied to the vaccine mandate and the DOC's accommodations policy, and — as the SAC acknowledges — the City Defendants rescinded the vaccine mandate effective February 10, 2023.  *Id.* ¶ 177.  Any constitutional or statutory violation that occurred is in the past, and Mumin has made no showing that these events have any likelihood of recurring.  A plaintiff seeking injunctive relief "cannot rely on past injury to satisfy" Article III's injury requirement and must instead "show a likelihood that [she] will be injured in the future."  *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (citation omitted); *see also Wiggins v. Unilever U.S., Inc.*, 684 F. Supp. 3d 127, 141 (S.D.N.Y. 2023) (same).  As a result, the Court dismisses Mumin's claims insofar as they seek injunctive relief.

## II. Title VII, NYSHRL, and NYCHRL Claims Against the City Defendants (Counts I, II, XII, XIII, XIV, and XV)

Title VII prohibits employers from discriminating against their employees with respect to "compensation, terms, conditions, or privileges of employment" based on protected classifications, including religion and gender. 42 U.S.C. § 2000e-2(a)(1). The NYSHRL and NYCHRL similarly provide that "it shall be an unlawful discriminatory practice for an employer "to discharge from employment such individual or to discriminate against such individual in . . . terms, conditions[,] or privileges of employment" because of their gender or creed, among other protected categories. N.Y. Exec. Law § 296(1)(a) (McKinney 2024); N.Y.C. Admin. Code § 8-107(1)(a), (3).

While courts in this Circuit have historically treated Title VII and NYSHRL discrimination claims similarly, in 2019, the NYSHRL was amended to be "closer to the standard of the NYCHRL." *Chinchilla v. N.Y.C. Police Dep't*, No. 23-cv-08986 (DEH), 2024 WL 3400526, at *7 (S.D.N.Y. July 12, 2024) (quoting *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021)). Therefore, because Plaintiff's NYSHRL claims accrued after 2019, they "rise and fall with [her] NYCHRL claims," *id.* (citation omitted), and the Court will thus analyze Plaintiff's NYSHRL and NYCHRL claims separately from her Title VII claims.

The Court will first discuss Plaintiff's religious discrimination claims and then her gender discrimination claims.

### A. Religious Discrimination Claims (Counts I, XII, and XIV)

In support of her Title VII, NYSHRL, and NYCHRL claims against the City Defendants for religious discrimination — Counts I, XII, and XIV, respectively — Plaintiff claims that the City took an adverse employment action against her because of her sincerely

held religious beliefs by placing her on unpaid leave and subsequently terminating her

employment. SAC ¶¶ 146-147, 174. Plaintiff claims that she informed the City that her

religious beliefs prevented her from receiving the COVID-19 vaccination because Islam

"prohibits her from being vaccinated against all conditions, ailments[,] and impairments,

including the corona virus." *Id.* ¶ 81. Plaintiff requested an accommodation or exemption

from the COVID-19 vaccine. *Id.* She did not demand a particular accommodation, but

indicated her willingness to undergo weekly COVID-19 testing and submit weekly PCR

testing as an accommodation. *Id.* ¶¶ 81, 117-118. City Defendants denied her request for an

accommodation on November 10, 2021, and stated that the DOC could not accommodate her

"request to be exempt from the COVID-19 vaccine," because it "present[ed] an undue

hardship to the Department as it present[ed] a direct threat to members of service, the public[,]

and those detained by the Department." Dkt. 54-2 at 1; SAC ¶¶ 104-106. When Plaintiff did

not comply with the vaccine mandate after her appeal was denied, the City placed her on

unpaid leave and subsequently terminated her employment. SAC ¶¶ 135, 146-148, 174.

Plaintiff alleges that the City (1) discriminated against her based on her religion in the terms

and conditions of her employment by failing to provide her with a reasonable accommodation

in violation of Title VII, and (2) subjected her to disparate treatment on the basis of her

religion and religious beliefs, in violation of Title VII, the NYSHRL, and the NYCHRL. *Id.*

¶¶ 184, 263, 271. Plaintiff does not challenge the lawfulness of the vaccine mandate. Pl. City

Opp. at 8, 23.

### 1. Legal Standards

Title VII defines "religion" to include "all aspects of religious observance and

practice, as well as belief." 42 U.S.C. § 2000e(j). Employers must "reasonably

accommodate . . . an employee's . . . religious observance or practice" unless it would cause

an "undue hardship on the conduct of the employer's business." *Id.*; *see also Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) (employer notified of sincerely held religious belief, practice, or observance "must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship"). The NYSHRL and NYCHRL further provide that it is an unlawful discriminatory practice for "any employer, or an employee or agent thereof, to impose upon a person as a condition of obtaining or retaining employment . . . any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion." N.Y. Exec. Law § 296(10)(a) (McKinney 2024); N.Y.C. Admin. Code § 8-107(1)(a), (3)(a).

### 2. Analysis

#### i. *Title VII Claim for Failure to Accommodate (Count I)*

Plaintiff claims that she was discriminated against based on her religion because the DOC placed her on unpaid leave and fired her for refusing to be vaccinated against COVID-19 instead of accommodating her by allowing her to continue weekly COVID testing. SAC ¶¶ 104, 115, 146-147, 151, 174.

"To make out a *prima facie* case of religious discrimination based on a failure to accommodate in violation of Title VII," plaintiffs must allege that they (1) "held a bona fide religious belief conflicting with an employment requirement"; (2) "informed [their] employers of this belief"; and (3) were "disciplined for failure to comply with the conflicting employment requirement." *Rizzo*, 2024 WL 3274455, at *2 (quoting *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006)); *see also Greenberg*, 2024 WL 4252550, at *5 (same). "If the *prima facie* case is shown, 'the burden then shifts to the employer to show it could not accommodate the employees' religious beliefs without undue hardship.'" *Algarin v. N.Y.C. Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 508 (S.D.N.Y. 2023) (quoting *Knight v.*

*Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)), *aff'd*, No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024) (summary order).  An accommodation presents an undue hardship if the employer can "show [that] a burden is substantial in the overall context of an employer's business."  *D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023) (summary order) (quoting *Groff v. DeJoy*, 600 U.S. 447, 468 (2023)); *accord Kueh v. N.Y. & Presbyterian Hosp.*, No. 23-cv-00666 (VSB), 2024 WL 4882172, at *4 (S.D.N.Y. Nov. 25, 2024).  To survive a motion to dismiss, the "complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss," but "it must at a minimum assert nonconclusory factual matter sufficient to 'nudge' [the] clai[m] 'across the line from conceivable to plausible . . . .'"  *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)) (quoting *Iqbal*, 556 U.S. at 680).

Plaintiff argues that while she is not required to plead a *prima facie* case, she has presented a *prima facie* case of failure to accommodate by alleging she (1) had a sincere religious belief, (2) that she informed City Defendants about, and (3) this led to an adverse employment decision.  Pl. City Opp. at 6-7.  The Court agrees with Plaintiff.  Plaintiff has sufficiently alleged that she held a sincere religious belief that conflicts with the employment requirement to obtain a vaccination, that she informed DOC of this belief, and that she was disciplined for failure to comply with that requirement by being placed on leave and then terminated.  The City Defendants' attempt to argue that Plaintiff has not met her burden because she was terminated for her failure to comply with the vaccine requirement and not because of her religious belief is unavailing.  As courts in this Circuit have explained, a plaintiff's complaint that her defendant-employer suspended her without pay and ultimately terminated her employment because she did not take the required COVID-19 vaccine due to

conflicting sincerely held religious beliefs is "sufficient to plead the final element of the *prima facie* case of religious discrimination for failure to accommodate." *Jackson v. N.Y. State Off. of Mental Health*, No. 23-cv-04164 (JMA), 2024 WL 1908533, at *6 (E.D.N.Y. May 1, 2024) (quoting *Algarin*, 678 F. Supp. 3d at 509); *see also Haczynska v. Mount Sinai Health Sys., Inc.*, --- F. Supp. 3d ---, 2024 WL 3178639, at *12 (E.D.N.Y. June 26, 2024) (same).

The City Defendants next (and principally) argue that granting an accommodation to Plaintiff would have presented an undue hardship to the DOC and that the DOC therefore did not violate Title VII when it denied her request for an accommodation or exemption.  City Dfs. Br. at 12-15.  Plaintiff responds that the affirmative defense of undue hardship does not appear on the face of the SAC and that, unlike in other cases where an undue hardship was found as a matter of law, providing Plaintiff with an accommodation would not require the DOC to violate any law or regulation.  Pl. City Opp. at 9-10.

Because undue hardship is an affirmative defense, "it may be raised on a pre-answer motion to dismiss only if 'the facts establishing it are clear from the face of the complaint.'" *Rizzo*, 2024 WL 3274455, at *3 (quoting *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-cv-02929 (CS), 2023 WL 3467143, at *5 (S.D.N.Y. May 15, 2023)).  In evaluating undue hardship on a motion to dismiss, a district court may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993); *see, e.g.*, *Kane v. De Blasio*, 623 F. Supp. 3d 339, 347 n.7, 362 n.30 (S.D.N.Y. 2022) (considering facts incorporated by reference in the amended complaint in determining whether undue hardship existed), *aff'd in part, vacated in part on other grounds sub nom. New Yorkers for Religious Liberty, Inc. v. City of New York*, 121 F.4th 448 (2d Cir. 2024)).  The Court finds that undue hardship appears on the face of the

complaint and that the City Defendants have sufficiently shown that granting Plaintiff an accommodation would have imposed an "undue hardship" on the DOC's operations.

The Court agrees with the City Defendants that it can consider the denial letter on this motion to dismiss because its contents were incorporated by reference in the Complaint.  SAC ¶¶ 104-106, 112-116.  The denial letter provided that an exemption from the COVID-19 vaccine mandate would cause the DOC undue hardship, citing the unique threats that COVID-19 posed to the DOC, the deaths of service members, and the difficulties the DOC had been experiencing in staffing jail facilities.  SAC ¶ 106; *see* Dkt. 54-2 at 1-2.  The letter further stated that an accommodation would present an undue hardship because "masks and weekly testing may be insufficient to control the spread of COVID-19 in the Department."  Dkt. 54-2 at 1-2.  The letter also addressed the need for employees like Plaintiff, who were at non-jail commands like the HMD, to receive the vaccination, since widespread staffing shortages "at most jail facilities" had required the DOC "to redeploy uniformed Members of Service at non-jail commands to the jail facilities to fill the posts not manned due to the absences." *Id.* at 1.  As a result, permitting Plaintiff to remain unvaccinated would present "an undue hardship . . . because many Members of Service have been out sick recently and the Department has had difficulty fully staffing the facilities." *Id.* at 1-2.  The letter concluded that the DOC has a "great need to make sure that Members of Service are healthy and manning their posts." *Id.* at 2.

Even accepting all of Plaintiff's allegations as true and drawing all inferences in her favor, the Court concludes that the SAC does not plead allegations that contradict the DOC's finding of undue hardship.  Plaintiff has not pleaded anything to refute that the DOC was experiencing deaths of service members, many service members calling out sick, and resultant difficulties in staffing.  Plaintiff has also not pleaded anything to refute the DOC's contention

in the denial letter that it would suffer undue hardship because staffing shortages had required the DOC to redeploy service members in non-jail commands, like the HMD where Plaintiff was working, to jail facilities. Plaintiff has also not refuted that she was working in person at the HMD, albeit a non-jail facility. SAC ¶¶ 84-85. That role required her to supervise approximately twenty other uniformed employees or correction officers, as well as medical staff contracted to work at the HMD to provide medical services to the DOC. *Id.* ¶¶ 69-70. These allegations, rather than contradicting the DOC's finding of undue hardship, confirm its rationale, since Plaintiff's role required her to work in person, in the health management division, and to interact with more than twenty other DOC staff members and medical staff who provided medical services to the DOC. Such a working arrangement presented opportunities for the spread of the coronavirus to other DOC staff members and medical providers, an undue burden on the DOC given its staffing shortages, redeployment processes, and medical crises. Plaintiff's failure-to-accommodate claim under Title VII is properly dismissed on this basis. *See New Yorkers for Religious Liberty*, 121 F.4th at 463 (affirming district court's dismissal of religious accommodation claims where complaint "identifie[d] the . . . undue-hardship rationale, but d[id] not plead allegations that contradict that finding").

Plaintiff's contention that there was a DOC-approved accommodation available that could and should have been made available to her does not change this conclusion. In both the SAC and her opposition to the City Defendants' motion to dismiss, Plaintiff argues that the Teletype Order "unequivocally declare[d] that weekly testing is an accommodation that would not cause DOC undue hardship." Pl. City Opp. at 15; *see also* SAC ¶¶ 90-97 (repeatedly claiming that the "Teletype Order declared that 'weekly testing and submission of negative PCR results' was the accommodation from the vaccine mandate that would not 'cause [the DOC] undue hardship'"). The City Defendants disagree, and argue that, read in its

entirely, the Teletype Order only establishes that if an officer was approved for a reasonable accommodation, they could only be accommodated with weekly testing and the submission of negative PCR results. *See* City Dfs. Br. at 11. The Court agrees with the City Defendants.

"If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Rec. Grp. Inc.*, No. 11-cv-00559 (LTS), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012); *see also Idle Media, Inc. v. Create Music Grp., Inc.*, No. 24-cv-00805 (JLR), 2024 WL 5009713, at *10 (S.D.N.Y. Dec. 6, 2024) (same). The Teletype Order, incorporated into the SAC by Plaintiff's repeated quotations from it, reminded employees of the deadline for submitting proof of vaccination and for "seeking a reasonable accommodation request." Dkt. 54-3 at 1 (emphasis and capitalization omitted). It advised of the process for requesting accommodations. *Id.* Finally, the Teletype Order provided that "the only allowable accommodation from the vaccination mandate that will not cause undue hardship and/or disruption to the department is weekly testing and submission of negative PCR results." *Id.* (further capitalization omitted). When read in context, this paragraph indicates that *if* an accommodation were to be permitted, the only one that would be permitted was a weekly testing accommodation; it does not in any way indicate that every request for an accommodation would be granted or that in every circumstance an accommodation with testing would not create an undue hardship for the DOC. The Court thus concludes that the Teletype Order does not contradict the DOC's individualized decision that accommodating Plaintiff would create an undue hardship.

*Vasquez v. City of New York*, which Plaintiff cites in support of her claim, Pl. City Opp. at 12, does not change this Court's conclusion. No. 22-cv-05068 (HG), 2024 WL 1348702 (E.D.N.Y. Mar. 30, 2024). In *Vasquez*, a "light-duty" firefighter was denied an

exemption from the vaccine mandate because of the undue hardship on the Fire Department of New York ("FDNY") based on "the state of the public health emergency, the nature of the [FDNY]'s life-saving mission, and the impact to the safety and health of [FDNY] members and the public that [FDNY] members regularly interact with." *Id.* at *7-8 (alterations in original). The court denied the motion to dismiss the failure to accommodate claim based on religion because the court could not determine on the face of the complaint that the requested accommodation would cause an undue hardship. *Id.* Plaintiff here, however, is situated differently from the light-duty firefighter in *Vasquez*, whose role required "limited interaction with others." *Id.* at *8. Plaintiff did not work remotely or have limited interaction with others — rather, she supervised twenty DOC officers as well as medical staff who contracted with the DOC. SAC ¶¶ 69-70. In addition, the denial letter expressly explained the undue hardship that would be imposed on the DOC if "Members of Service at non-jail Commands" remained unvaccinated. Dkt. 54-2 at 1. The allegations in Plaintiff's complaint do not contradict this particularized undue hardship assessment.[5]

In a more recent (and binding) decision, the Second Circuit in *New Yorkers for Religious Liberty, Inc. v. City of New York*, 121 F.4th 448, 462-63 (2d Cir. Nov. 13, 2024) affirmed a district court's dismissal of claims brought by city employees who sought a religious accommodation from the COVID-19 vaccine mandate on a motion to dismiss,

---

[5] City Defendants and Mumin dispute the import of *Algarin* and *Dennison*, *see* City Br. at 14; Pl. City Opp at 10, cases where undue hardship existed because granting the plaintiffs a religious exemption would have required defendants to violate Section 2.61, New York's COVID-19 vaccine mandate for employees of healthcare facilities, N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61 (2021). *See Algarin*, 678 F. Supp. 3d at 503-04, 509; *Dennison*, 2023 WL 3467143, at *5-6. Because permitting Mumin to be vaccinated would not require the City Defendants to break the law, the Court concludes that the circumstances herein are not analogous to *Algarin* or *Dennison*.

finding that the complaint did not refute the defendant's undue hardship rationale.  121 F.4th at 462-63.  The defendant had articulated that accommodating plaintiff classroom teachers would cause an undue hardship because the unvaccinated teachers would present a risk to vulnerable and unvaccinated students.  *Id.*  The Second Circuit found that the plaintiffs did not plead allegations that contradicted the undue hardship rationale that was identified on the face of the complaint because plaintiffs "offer[ed] only threadbare conclusions" about how they did not pose a threat to anyone by being unvaccinated.  *Id.* at 463.  Therefore, the Second Circuit affirmed the dismissal of the religious accommodation claims, citing to cases that permitted dismissal on the pleadings of religious accommodation claims based on undue hardship.  *Id.* (citing, for example, *Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010) (explaining that an "affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint" (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998))); and *Lowe v. Mills*, 68 F.4th 706, 719 (1st Cir. 2023) (affirming dismissal of religious accommodation claim where pleadings demonstrated undue hardship)); *see also Beickert v. N.Y.C. Dep't of Educ.*, No. 22-cv-05265 (DLI), 2023 WL 6214236, at *5  (E.D.N.Y. Sept. 25, 2023) (accommodating request from special education teacher in the New York City public schools would have imposed an undue hardship on the Department of Education due to the health and safety risk it would present "to the vulnerable and still primarily unvaccinated student population and other employees" (citation omitted)).

Similarly, the Court finds here that the unique problems facing the DOC during the COVID-19 pandemic support the DOC's assessment of an undue hardship.  The denial letter cited the fact that the DOC's employees worked in facilities that housed a vulnerable population, "often [in] confined spaces with narrow passages that do not always allow for

social distancing," and the "layout and the duration of time people spend near each other in

the facilities" led to "easy transmission of COVID-19" and the deaths of detainees and DOC

employees.  Dkt. 54-2 at 1.  Though Plaintiff worked primarily with other officers and

medical staff, and not the incarcerated population, *see* SAC ¶¶ 69-72, the DOC's denial letter

identified particular hardships associated with exempting employees at non-jail commands,

given the need to deploy some of those individuals to jail commands in the face of staffing

shortages.  Dkt. 54-2 at 1; *see Groff*, 143 S. Ct. at 2294 (directing the court to consider

whether the burden of an accommodation is "substantial in the *overall context* of an

employer's business" (emphasis added)).  Thus, the Court finds that the City Defendants have

shown, based on the face of the SAC, that exempting Plaintiff from the DOC's vaccine

mandate or providing her with an accommodation would have imposed an undue hardship on

the DOC.[6]

     For these reasons, the Court grants the City Defendants' motion to dismiss Plaintiff's

Title VII failure to accommodate claim.[7]

---

[6] While not cited by Mumin, this case is also dissimilar to *Rizzo*, which also predated the
Second Circuit's decision in *New Yorkers for Religious Liberty*.  In *Rizzo*, the court denied a
motion to dismiss plaintiff's claim against the New York City Department of Sanitation for
failure to accommodate his religious exemption from the COVID-19 vaccine mandate.  2024
WL 3274455, at *3.  In *Rizzo*, the court noted that plaintiff's work as a sanitation worker was
a "far cry" from that of teachers who "[could not] physically be in the classroom while
unvaccinated without presenting a risk to the vulnerable and still primarily unvaccinated
student population."  *Id.* (alteration in original) (citation omitted).  The comprehensive and
detailed denial letter citing to the vulnerabilities of confined prison populations and the need
to ensure enough staffing to maintain secure correctional facilities demonstrates that the
present scenario is distinguishable from *Rizzo*.

[7] Mumin's NYSHRL and NYCHRL claims are framed only as disparate treatment claims.
*See* SAC ¶¶ 262-265, 270-273 (Counts XII, XIV).  As a result, the Court does not address the
NYSHRL or NYCHRL with regard to a failure to accommodate claim.

ii.    *Title VII, NYSHRL, and NYCHRL Disparate Treatment Claims (Counts I, XII, and XIV)*

Plaintiff also claims that City Defendants discriminated against her on the basis of her religion in violation of Title VII, the NYSHRL, and the NYCHRL. She alleges that the DOC denied her request for a religious accommodation from the vaccine while granting every medical accommodation request. SAC ¶¶ 150, 152, 184, 263, 271. The Court will address the Title VII claim separately from the state and local claims in light of the more liberal construction that both the NYSHRL, as amended in 2019, and the NYCHRL mandate. *See Hatzimihalis v. SMBC Nikko Sec. Am., Inc.*, No. 20-cv-08037 (JPC), 2023 WL 3764823, at *11 (S.D.N.Y. June 1, 2023).

An individual plaintiff may prove disparate treatment under Title VII under the *McDonnell Douglas* framework by establishing "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Barrett v. Forest Lab'ys, Inc.*, 39 F. Supp. 3d 407, 426 (S.D.N.Y. 2014) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). At the pleading stage, "a plaintiff 'is not required to plead a *prima facie* case under *McDonnell Douglas*.'" *Makhsudova v. City of New York*, No. 20-cv-10728 (KPF), 2022 WL 1571152, at *6 (S.D.N.Y. May 18, 2022) (alteration adopted) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)). Instead, "a plaintiff must plausibly allege that [i] the employer took adverse action against [her] and [ii] [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Id.* (alterations in original) (quoting *Vega*, 801 F.3d at 86).

In connection with her disparate treatment claim, Plaintiff alleges that the City Defendants denied her request for religious accommodations from the vaccine mandate (and

all religious requests), while granting every medical accommodation requested.  SAC ¶¶ 150,

152.  These general allegations are unsupported by factual detail that would permit the Court

to assess the plausibility of her claim.  "[T]o survive a motion to dismiss, a plaintiff must

support her claims with 'specific and detailed factual allegations, not stated in wholly

conclusory terms.'"  *Williams v. N.Y.C. Health & Hosp. Corp.*, No. 08-cv-04123 (RRM),

2010 WL 2836356, at *4 (S.D.N.Y. July 16, 2010) (quoting *Friedl v. City of New York*, 210

F.3d 79, 85-86 (2d Cir. 2000)).  Courts in this Circuit have routinely rejected Title VII claims

(as well as claims under similar statutes that use the *McDonnell Douglass* framework) at the

motion to dismiss stage where plaintiffs provide only generalized, conclusory allegations.

*See, e.g.*, *Wiley v. Plattsburgh*, 407 F. Supp. 3d 119, 129 (N.D.N.Y. 2019) (dismissing Title

VII plaintiff's claim because his "allegation that Caucasian employees charged with sexual

misconduct were allowed to continue teaching pending an investigation" was a "naked

assertion devoid of further factual enhancement" (citation omitted)); *Williams*, 2010 WL

2836356, at *4 (dismissing Title VII plaintiff's disparate treatment claim where plaintiff

stated only that "males got paid when they were out sick but females were not" and did not

"specify any facts to support her claim"); *Wiltz v. N.Y. Univ.*, No. 19-cv-03406 (SDA)

(GHW), 2019 WL 8437456, at *11 (S.D.N.Y. Dec. 23, 2019) (Fair Housing Act) (finding no

inference of discriminatory motive on motion to dismiss because the "[c]omplaint contains

only conclusory allegations that [plaintiff] was denied a lease renewal based on his race and/or

disability and that NYU imposed different rental application standards for white and non-

disabled residents"), *report and recommendation adopted*, 2020 WL 614658 (S.D.N.Y. Feb.

10, 2020); *cf. Warburton v. John Jay Coll. of Crim. Justice of the City Univ. of N.Y.*, No. 14-

cv-09170 (JPO), 2016 WL 3748485, at *4 (S.D.N.Y. July 7, 2016) (finding plaintiff did not

plead a plausible inference of discrimination given conclusory allegations that "'the

scholarship and academic standards' applied to his application were 'far different than the scholarship and academic standards applied' to his 'white peers' and that his white peers were 'routinely granted tenure with the same academic and scholarship credentials possessed by'" plaintiff); *McKinney v. County of Dutchess*, No. 19-cv-03920 (NSR), 2024 WL 1376499, at *2, *4, *7 (S.D.N.Y. Mar. 31, 2024) (holding that plaintiff did not adequately plead disparate treatment under Equal Protection Clause or Title VII where plaintiff asserted "[g]eneral assertions that Plaintiff was subjected to different treatment than her white or non-Black colleagues" such that white officers were given privileged posts and more generous sick leave and disability retirement terms than black officers, white officers were not subject to the same monitoring on leave as black officers, and white officers were treated differently with respect to their disability ratings).

For example, in *Harewood v. New York City Department of Education*, the court dismissed plaintiff's Title VII disparate treatment claim where the plaintiff "assert[ed] more generally that 'younger and/or Dominican teachers who were ineffectively rated were not asked to leave the school,'" but "provide[d] no names of individuals who were similarly situated to her" and "no facts" beyond "the conclusory assertion that this occurred." No. 18-cv-05487 (KPF) (KHP), 2019 WL 3042486, at *7-8 (S.D.N.Y. May 8, 2019), *report and recommendation adopted*, 2019 WL 2281227 (S.D.N.Y. May 29, 2019). The court concluded that the allegations were "insufficient to give rise to an inference of discrimination with respect to the actions taken against Plaintiff." *Id.* at *8.

Here, too, Plaintiff has made a conclusory, general allegation that the City Defendants discriminated against her because they granted all medical accommodations and denied all religious accommodation requests. She cites to only a few individuals, none of which are pleaded to be similarly situated to her. Plaintiff identifies one other employee, a Captain,

whose religious accommodation was denied, but provides no detail about her other than her name, gender, and position.  SAC ¶ 151.  She identifies three employees who continued to work unvaccinated but provides no detail about the accommodations they received, the basis for their accommodations, how many employees they supervised or interacted with, or what their duties were beyond the bare allegation that they had "daily direct contact with [the] inmates and the public."  *Id.* ¶ 161.  These allegations are insufficient to support Plaintiff's general assertion that the DOC discriminated against her by denying her request for a religious accommodation.  Based on the generality of these allegations, Plaintiff has not "nudged [her] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, and the Title VII claim against the City Defendants must be dismissed.  *See, e.g.*, *Greenberg*, 2024 WL 4252550, at *10 (dismissing Title VII disparate treatment claim where plaintiff provided no information suggesting proposed comparators were "in any way similarly situated as compared to Plaintiff"); *Moore v. Montefiore Med. Ctr.*, No. 22-cv-10242 (ER), 2023 WL 7280476, at *5 (S.D.N.Y. Nov. 3, 2023) (dismissing Title VII disparate treatment religious discrimination claim because plaintiff "d[id] not identify what [comparator's] religious denomination was, how his treatment compared to her own, or any details regarding whether he was otherwise 'similarly situated' to her"); *Veras v. N.Y.C. Dep't of Educ.*, No. 22-cv-00056 (JLR), 2024 WL 3446498, at *4 (S.D.N.Y. July 17, 2024) (dismissing Title VII disparate-treatment claim where Plaintiff failed to allege that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself" (citing *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000))); *Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 437 (S.D.N.Y. 2015) (dismissing claim for failing to plausibly allege an inference of discrimination where plaintiff failed to provide

any facts supporting an indication that she was similarly situated to those to whom she compared herself).

The Court turns next to the NYSHRL and NYCHRL religious discrimination claims based on alleged disparate treatment, Counts XII and XIV, and concludes that they too must be dismissed. While the NYSHRL and NYCHRL require a more liberal construction than Title VII, a NYSHRL or NYCHRL plaintiff still must allege that, compared to similarly situated employees, she experienced "differential treatment — that she is treated 'less well' — because of a discriminatory intent." *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 257 (S.D.N.Y. 2014) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109-10 (2d Cir. 2013)); *see Golston-Green v. City of New York*, 123 N.Y.S.3d 656, 668 (N.Y. App. Div. 2020) (where evidence "established that the plaintiff was not treated differently from similarly situated employees," "the circumstances did not give rise to an inference of discrimination" for NYCHRL disparate treatment claim). Because Plaintiff has not identified similarly situated DOC employees, she has not met her burden to plead circumstances that would permit the Court to conclude that she experienced differential treatment compared to similarly situated employees. As a result, the Court dismisses Counts XII and XIV against the City.

## B.    Gender-Discrimination Claims (Counts II, XIII, and XV)

Plaintiff next alleges that the City Defendants engaged in gender discrimination in violation of Title VII, NYSHRL, and NYCHRL (Counts II, XIII, and XV) because they denied her vaccine accommodation request and that of another female DOC captain while permitting some male DOC employees who had not received the COVID-19 vaccine to continue working without placing them on unpaid leave or terminating their employment.

SAC ¶¶ 151, 159-165.  The Court will consider the Title VII claim before considering the NYSHRL and NYCHRL claims together.

### 1.  Title VII Gender Discrimination Claim (Count II)

"To state a claim for . . . gender-based discrimination, plaintiff must allege (i) she is a member of a protected class, (ii) she was qualified for the position she held, (iii) she suffered an adverse employment action, and (iv) the adverse action took place under circumstances giving rise to an inference of discrimination."  *Parra v. City of White Plains*, 48 F. Supp. 3d 542, 553 (S.D.N.Y. 2014).  "If a comparison with another employee is to lead to an inference of discrimination it is necessary that the employee be similarly situated in all material respects."  *Id.* (quoting *Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 536 (S.D.N.Y. 2002), *aff'd*, 76 F. App'x 366 (2d Cir. 2003) (summary order)).

Plaintiff alleges in Count II that she is a member of a protected class based on gender and that she suffered an adverse employment action — her termination.  SAC ¶¶ 15, 174, 190-194.  The SAC identifies three male employees: Captain Doninelli Christian, who worked at the Manhattan Detention Center, and Correction Officers Gilbert Frederique and Jeffrey, who worked at the complex on Rikers Island where Plaintiff worked before she was reassigned to the HMD.  SAC ¶¶ 63, 68, 160-164.  All three employees did not obtain the COVID 19 vaccine and "perform[ed] duties which involved daily direct contact with . . . inmates and the public."  *Id.* ¶ 161.  Plaintiff argues that she has stated a plausible claim for gender discrimination because the DOC exempted certain male employees from the vaccine mandate, while enforcing the mandate with regard to herself and other female employees.  Pl. City Opp. at 21.

The City Defendants argue that Plaintiff has not pleaded facts sufficient to permit a plausible inference that she was treated less well because of her gender because (1) she

provides only conclusory allegations to support her gender discrimination claims, (2) she does not plead facts that plausibly suggest that the DOC granted accommodations based on gender, and (3) her proposed comparators are not similarly situated to her.  City Dfs. Br. at 6-7.  The Court agrees.

First, Plaintiff's allegations supporting a disparate treatment claim based on gender are insufficient to state a claim because they are largely conclusory.  Plaintiff alleges that the City Defendants denied her an accommodation "because of their discriminatory animus directed against Plaintiff because of her gender" and that the DOC had a "practice of permitting unvaccinated male DOC employees to retain their employment, while terminating Plaintiff's employment and the employ[ment] of other unvaccinated female DOC employees." SAC ¶¶ 166-167; *see also id.* ¶ 53 ("Defendants engaged in the foregoing conduct and subjected Plaintiff to the foregoing treatment because of their gender based animus directed against Plaintiff.").  As with Plaintiff's disparate treatment claim based on religion, these claims are conclusory and too general, and "[c]ritically missing are facts to support the notion that similarly situated employees were treated differently."  *Wiley*, 407 F. Supp. 3d at 129.  Indeed, to show facts that permit an inference of discrimination based on "preferential treatment given to employees outside the protected class," *Salas v. N.Y.C. Dep't of Investigation*, 298 F. Supp. 3d 676, 687 (S.D.N.Y. 2018) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)), Title VII plaintiffs must normally identify specific comparators and "allege that the relevant comparators were not members of the relevant 'protected group' and were treated less harshly despite being 'similarly situated' to the plaintiff," *id.* at 688.  Plaintiff's general, conclusory allegations alone do not suffice to support her claim for gender discrimination.

Plaintiff's identification of three proposed male comparators and another female employee whose accommodation request was denied, SAC ¶¶ 151, 160-164, does not salvage her claim because she has not provided specific detail about these comparators to permit the Court to conclude that her proposed comparators are "similarly situated in all material respects," *Parra*, 48 F. Supp. 3d at 553 (quoting *Staff*, 233 F. Supp. 2d at 536). Plaintiff identifies three male DOC employees who she alleges were permitted to work unvaccinated: Captain Christian, Correction Officer Frederique, and Correction Officer Jeffrey. SAC ¶ 160. Plaintiff fails to allege whether the male employees sought accommodations or the basis for any accommodation they received. If the male employees received medical accommodations, which they presumably did since Plaintiff alleges that no religious accommodation requests were granted, then they are not similarly situated to her. Plaintiff's allegations about the roles of the comparators also do not establish that they were similarly situated to her. Christian worked in the Manhattan Detention Center, and the two male correction officers she identifies worked at the Robert N. Daveron Complex on Rikers Island, *id.* ¶¶ 162-163, while Plaintiff worked in the Health Management Division during the relevant time period, *id.* ¶ 68. Plaintiff also does not plead facts regarding how many employees they supervised or interacted with, or what their duties were beyond the bare allegation that they had "daily direct contact with those inmates and the public." *Id.* ¶ 161. The Court thus concludes that, while Plaintiff's burden is slight at this stage of litigation, she has not identified similarly situated employees outside her protected group.

Further, Plaintiff has not alleged any other basis for gender discrimination. Plaintiff has not identified degrading comments made by her employer, "invidious comments about others in the employee's protected group," or troublesome aspects about "the sequence of events leading to the plaintiff's discharge," *Littlejohn v. City of New York*, 795 F.3d 297, 312

(2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).  In fact, Plaintiff's pleading contradicts her assertion of gender discrimination given that she alleges that the DOC denied all religious accommodations, SAC ¶ 156, which would have presumably included both men and women as Plaintiff does not allege that the DOC differentiated between applicants for a religious accommodation based on gender.  As a consequence, the Court concludes that the facts alleged in the SAC do not support a claim of gender discrimination.

Because the SAC does not state a plausible claim for gender discrimination under Title VII, Count II must be dismissed pursuant to Rule 12(b)(6).

### 2. NYSHRL and NYCHRL Gender Discrimination Claim Against the City Defendants (Counts XIII and XV)

The NYCHRL and NYSHRL make it an "unlawful discriminatory practice" for an employer to "refuse to hire or employ" or to "discriminate against [an employee] in compensation or in terms, conditions, or privileges of employment" based on "gender." N.Y.C. Admin Code § 8-107(1)(a); N.Y. Exec. Law § 296(1)(a) (same); *see Mihalik*, 715 F.3d at 109-10.  "To state a claim for gender discrimination under the NYCHRL [and NYSHRL], a 'plaintiff need only show differential treatment — that she is treated "less well" — because of a discriminatory intent.'"  *Pryor*, 992 F. Supp. 2d at 257 (quoting *Mihalik*, 75 F.3d at 110)); *see Cannizzaro v. City of New York*, 206 N.Y.S.3d 868, 884-85 (N.Y. Sup. Ct. 2023) ("As the amended NYSHRL adopts the same standard as the NYCHRL, the plaintiff's 'NYSHRL claims rise and fall with [the] NYCHRL claims.'" (alteration in original) (quoting *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021), *vacated and remanded on other grounds following certification*, No. 22-1251, 2024 WL 2813563 (2d Cir. June 3, 2024)

(summary order))); *Hunold v. City of New York*, 216 N.Y.S.3d 550, 2024 WL 4140057, at *5 n.4 (N.Y. Sup. Ct. Sept. 10, 2024) (unpublished table opinion) (same).

As with Plaintiff's Title VII claims, the City Defendants argue that Plaintiff's NYSHRL and NYCHRL claims (Counts XIII and XV) should be dismissed because Plaintiff has not alleged any facts from which one could infer the City Defendants' discriminatory motive. City Dfs. Br. at 8-9. The Court analyzes the claims separately from the Title VII claims because NYCHRL claims — and post-2019 amendment NYSHRL claims — "must be analyzed separately" from Title VII claims, with the NYCHRL and NYSHRL "construed 'more liberally'" than federal law "and 'broadly in favor of discrimination plaintiffs.'" *Algarin*, 678 F. Supp. 3d at 513 (quoting *Owens v. City of New York Dep't of Educ.*, No. 21-2875, 2022 WL 17844279, at *2 (2d Cir. Dec. 22, 2022) (summary order)); *see also Mihalik*, 715 F.3d at 109 (similar).

While the NYSHRL and NYCHRL must be "constru[ed] . . . 'broadly in favor of discrimination plaintiffs,'" *Mihalik*, 715 F.3d at 109 (quoting *Albunio v. City of New York*, 947 N.E.2d 135, 137 (N.Y. 2011)), and Plaintiff needs only to show that she "has been treated less well at least in part '*because of* her gender,'" *id.* at 110 (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39 (App. Div. 2009)), the Court concludes that Plaintiff has not stated a claim under either statute for gender discrimination. Plaintiff still must allege facts that would permit an inference that she has been treated less well because of her gender. She can do so by, among other things, "demonstrating the disparate treatment of at least one similarly situated employee outside [her] protected group and sufficient facts from which it may reasonably be inferred that 'the plaintiff's and comparator's circumstances . . . bear a reasonably close resemblance.'" *Syeed*, 568 F. Supp. 3d at 338 (quoting *Sutter v. Dibello*, No. 18-cv-00817 (SJF), 2021 WL 930459, at *21 (E.D.N.Y. Mar. 10, 2021)). She has not done

so. Plaintiff rests her claims under the NYSHRL and NYCHRL on the same allegations as her claim for gender discrimination under Title VII. Those allegations, as discussed, are largely conclusory and inconsistent with her claims of gender discrimination. Further, she provides an insufficient level of detail about the comparability of the male employees she identifies to raise an inference that she was treated "less well" because of her gender. Such allegations do not suffice to state a claim for disparate treatment under the NYSHRL or the NYCHRL. *See, e.g.*, *Acala v. Mintz Levin Cohn Ferris Glovsky & Popeo, P.C.*, 201 N.Y.S.3d 202, 204 (App. Div. 2023) (affirming dismissal of claim where "plaintiff failed to allege acts sufficient to establish that similarly situated persons . . . were treated more favorably than she"); *Thompson v. City of New York*, 211 N.Y.S.3d 920, 2024 WL 2948671, at *4 (Sup. Ct. 2024) (unpublished table opinion) (granting motion to dismiss gender discrimination claim under the NYCHRL where allegations did not "demonstrate that the referenced male officers were similarly situated").

Plaintiff's reliance on *Herman v. City of New York*, No. 21-cv-06295 (ALC), 2023 WL 6386887 (S.D.N.Y. Sept. 29, 2023), is misplaced. *See* Pl. City Opp. at 22. In *Herman*, the court concluded that plaintiff pleaded a discrimination claim under Title VII, NYSHRL and NYCHRL where he identified eight other employees with the same position, alleged that they were similarly situated to him, and alleged that they had received less discipline than he did for similar actions. *Herman*, 2023 WL 6386887, at *1, *7. In contrast, Plaintiff has identified only one other male employee with the same job title as her, Captain Christian, and has not alleged facts to plausibly suggest that he was similarly situated to her in terms of his employment or his accommodation request. Even under the more liberal NYSHRL and NYCHRL standards, this is not enough to demonstrate that Plaintiff was "treated less well

than other employees because of her gender." *Mihalik*, 715 F.3d at 110 (quoting *Williams*,

872 N.Y.S.2d at 39); *see Golston-Greene*, 123 N.Y.S.3d at 668.

As a result, the Court likewise dismisses Counts XIII and XV against the City

Defendants.

**III.    Section 1983 Claims Against City Defendants (Counts V, VI, VII, and VIII)**

Plaintiff alleges claims under 42 U.S.C. § 1983 against Molina in both his official

capacity as DOC Commissioner and his individual capacity.  SAC ¶¶ 213-232.  The Court

considers whether Plaintiff has stated a claim against Molina in his official capacity before

considering whether she has stated a claim against him in his individual capacity.

**A.  Legal Standard**

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.  To state a cognizable claim under 42 U.S.C. § 1983, "the plaintiff must

allege '(1) the challenged conduct was attributable at least in part to a person who was acting

under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under

the Constitution of the United States.'"  *Greene v. City of New York*, 725 F. Supp. 3d 400, 417

(S.D.N.Y. 2024) (quoting *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999)).

**B.    Claims Against Molina in his Official Capacity (Counts V and VII)**

Plaintiff bring claims against Molina in his official capacity as DOC Commissioner

under 42 U.S.C. § 1983 (Counts V and VII), alleging (1) that the DOC had a policy of

granting only medical exemptions from the vaccine mandate and denying all religious

accommodation or exemption requests, including Plaintiff's request, and (2) that the DOC had

a practice of permitting unvaccinated male employees to retain their employment while

terminating the employment of unvaccinated female employees, including Plaintiff.  SAC

¶¶ 143, 167, 208-209, 221-222.  The Court will address the Section 1983 claim based on

alleged religious discrimination before considering the claim based on alleged gender

discrimination.

### 1.  Legal Standard for *Monell* Claims

A claim against a municipal officer in his official capacity is "in effect a claim against

the governmental entity itself."  *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012).

Claims against municipalities are considered under the standard for municipal liability

articulated in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  *See Lore*, 670

F.3d at 168.  Under *Monell*, "a municipality is not liable for the unlawful actions of an

employee under a theory of *respondeat superior*."  *Greene*, 725 F. Supp. 3d at 428.  Rather, a

municipality may be liable under § 1983 "on the basis that its policies or customs 'inflict[ed]

the injury upon the plaintiff.'"  *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276

(S.D.N.Y. 2010) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)); *Greene*,

725 F. Supp. 3d at 428 (citing *Monell*, 436 U.S. at 691).  "When the defendant sued for

discrimination under § 1983 is a municipality or an individual sued in his official capacity, the

plaintiff is required to show that the challenged acts were performed pursuant to a municipal

policy or custom."  *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 575 (S.D.N.Y. 2011).

The plaintiff must also "establish a causal connection . . . between the policy and the

deprivation of his constitutional rights."  *Greene*, 725 F. Supp. 3d at 428 (omission in

original) (quoting *Vippolis v. Village of Havestraw*, 768 F.2d 40, 44 (2d Cir. 1985)).

### 2. Religious Discrimination Section 1983 Claim (Count V)

The City Defendants argue that Plaintiff's Section 1983 religious discrimination claim should be dismissed because the DOC vaccine mandate does not reveal any animus against religious beliefs. *See* City Dfs. Br. 15-17. Plaintiff disagrees, arguing that the SAC demonstrates that but for the City Defendants' policy of excluding religious accommodation requests from the vaccine mandate, the City Defendants would not have denied her accommodation request. Pl. City Opp. at 8. The Court finds that Plaintiff has not stated a claim against Molina in his official capacity based on religious discrimination.

To hold Molina liable in his official capacity, Plaintiff "may satisfy the 'policy or custom' requirement by alleging one of the following":

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates . . . .

*Staboleski v. City of New York*, No. 19-cv-08834 (LJL), 2021 WL 796616, at *4 (S.D.N.Y. Mar. 1, 2021) (quoting *Johnson v. Paul*, No. 17-cv-03654 (KMK), 2018 WL 2305657, at *3 (S.D.N.Y. May 21, 2018)). The Court considers each ground for *Monell* liability in turn and concludes that Plaintiff falls short.

First, Plaintiff has not alleged a formal policy on the DOC's part to deny all religious accommodations. For a municipality to be liable for a constitutional violation caused by a formal policy, that policy must be in the form of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." *Monell*, 436 U.S. at 690. But neither of the formal policies alleged in the complaint — the City's vaccine mandate for city employees or the DOC vaccine mandate — set forth a formal policy to deny

all religious accommodations.  Thus, the Court concludes that Plaintiff has not demonstrated

that there was a formal policy to deny all religious accommodations.

Second, Plaintiff has not alleged facts that give rise to a custom-or-practice theory of

municipal liability.  "[A]n act performed pursuant to a 'custom' that has not been formally

approved by an appropriate decisionmaker may fairly subject a municipality to liability on the

theory that the relevant practice is so widespread as to have the force of law." *Bowen v.

County of Westchester*, 706 F. Supp. 2d 475, 284 (S.D.N.Y. 2010) (quoting *Bd. of Cnty.

Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).  To do so, the plaintiff must establish that the

custom or practice is "so permanent and well settled as to constitute a custom or usage with

the force of law." *Tieman v. City of Newburgh*, No. 13-cv-04178 (KMK), 2015 WL 1379652,

at *16 (S.D.N.Y. Mar. 26, 2015) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127

(1988)).

Here, the only allegations of a practice so persistent and widespread that it constitutes

a custom or usage are Plaintiff's assertion that the DOC denied each request for a religious

accommodation and granted every request for a medical accommodation based on Molina's

instructions, supported by Plaintiff's allegation that both she and Captain Janelle Murray had

their requests for religious accommodations denied.  *See, e.g.*, SAC ¶¶ 45-48, 99, 151.  "The

broader the policy a plaintiff seeks to plead, the greater the factual allegations that are required

to render it plausible." *Patterson v. City of New York*, No. 16-cv-03525 (NGG), 2017 WL

3432718, at *14 (S.D.N.Y. Aug. 9, 2017) (quoting *White v. City of New York*, 206 F. Supp. 3d

920, 937 n.2 (S.D.N.Y. 2016)).  "Absent specific examples or some other form of supporting

evidence, Plaintiff's generalized allegations" that the City Defendants denied all religious

accommodations and granted all medical allegations "are insufficient" to sustain her *Monell*

claim.  *Id.*; *see also, e.g.*, *Ki v. City of New York*, No. 20-cv-04343 (ARR) (JRC), 2022 WL

5423642, at *6 (E.D.N.Y. Sept. 1, 2022) ("A plaintiff must provide a large quantity of examples that are sufficiently similar to each other."), *report and recommendation adopted sub nom. Ki v. Kim*, 2022 WL 4551378 (E.D.N.Y. Sept. 29, 2022); *Brock v. City of New York*, No. 21-cv-03087 (PGG), 2022 WL 4544966, at *3 (S.D.N.Y. Sept. 29, 2022) (where plaintiff alleged "at least twenty other individuals" had experienced the same issues, but did not "identify those individuals" or "recount their specific experiences," *Monell* claim failed due to the lack of "specific allegations regarding the systemic nature" of the alleged practice).

In *Patterson*, for example, plaintiff alleged that there was widespread preferential treatment of Jewish criminal suspects in the NYPD, alleging that the orthodox Jewish community had fixers in the NYPD and that these fixers assisted in a variety of ways, including avoiding and voiding arrests, undercharging suspects, and intervening with the district attorney. *See* 2017 WL 3432718, at *14. The court concluded that these general allegations were insufficient to sustain a *Monell* claim based on a theory of a persistent and widespread practice. *Id.* at *15. Similarly here, Plaintiff's conclusory claim, without any factual support, that the DOC denied all religious accommodations is too generalized to sustain her claim. For example, Plaintiff has not indicated how many DOC employees sought religious accommodations or where they worked within the DOC. So too for the medical accommodations. The lack of detail about the similarity and scope of denials for accommodations prevents the Court from determining that Plaintiff has adequately pleaded that the DOC had an alleged custom or practice of denying any accommodation request sought based on religion. *See Colon v. City of Rochester*, 419 F. Supp. 3d 586, 605 (W.D.N.Y. 2019) (in assessing whether past incidents give rise to widespread practice claim, "courts typically consider both the *number* of alleged prior incidents and the *degree of similarity* that they bear to the incident that gave rise to the lawsuit at bar" (emphases added)).

Plaintiff has identified two instances in a period of slightly less than one-and-a-half years where a religious accommodation was denied: her own case and that of Captain Janelle Murray.  She has identified no specific examples of DOC employees whose medical accommodations were approved.  Such sparse pleading falls short of nudging a *Monell* claim that there was a persistent and widespread practice of denying all religious accommodations and granting all medical accommodations across the line from conceivable to plausible.  While "[t]here is no set number of incidents that make a practice 'widespread,' . . . courts have found a wide range of instances," including allegations of two, three, four, eight, and even thirteen examples, "insufficient to plausibly allege a municipal custom."  *Gem Fin. Serv., Inc. v. City of New York*, 298 F. Supp. 3d 464, 491-92 (E.D.N.Y. 2018); *see, e.g.*, *Jones v. Town of East Haven*, 691 F.3d 72, 74-75, 85 (2d Cir. 2012) (where plaintiff alleged a policy of deliberate indifference to Black people, two or three instances, over a period of three years, fell "far short" of showing a persistent or widespread practice); *Giaccio v. City of New York*, 308 F. App'x 470, 472 (2d Cir. 2009) (summary order) (four examples fell "far short of establishing a practice that is 'so persistent or widespread' as to justify the imposition of municipal liability"); *White*, 206 F. Supp. at 937-38 (where plaintiff alleged an NYPD custom or policy of abusing transgender people, "six incidents and one newspaper article" over ten years failed to render conclusory allegations of the existence of a policy plausible at motion to dismiss); *Cruz v. City of New York*, No. 15-cv-02265 (PAE), 2016 WL 234853, at *4-5 (S.D.N.Y. Jan. 19, 2016) (where plaintiff alleged consistent NYPD policy of fabricating evidence, imprisoning innocent persons wrongfully arrested, and imprisoning innocent persons even where credible evidence exonerated them, allegations of eight instances between 2001 to 2006 did not establish a custom sufficient to support *Monell* claim); *Tieman*, 2015 WL 1379652, at *15-16 (where plaintiff alleged policy of using excessive force in arrests,

thirteen instances of excessive force over four years did not demonstrate the existence of a widespread or persistent practice at motion to dismiss).  Based on the foregoing, Plaintiff has not alleged the existence of a custom or practice so widespread as to have the force of law.

Finally, Plaintiff has not alleged facts that support either a final policymaker or a failure-to-train-or-supervise theory of municipal liability.  She has not alleged that Molina "has authority to formulate the rules governing personnel decisions," *Baity v. Kralik*, 51 F. Supp. 3d 414, 437 (S.D.N.Y. 2014), including adopting vaccine mandates or the DOC's internal vaccine policy, and indeed the record indicates that a different city agency's commissioner directed the adoption of the city-employee vaccine mandate and related policies, *see* Dkt. 54-1.[8]  She also has not alleged any facts regarding the inadequate training or supervision of DOC employees involved in the review of vaccine accommodation requests. *Cf. Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992) (claims of inadequate training or supervision can give rise to municipal liability where the failure to train or supervise amounts to deliberate indifference).

---

[8] Mumin does not provide any basis for finding that Molina had final policymaking authority over these areas and his title alone is not sufficient to plead such authority.  *See* SAC ¶ 21 (citing only to Chapter 25 of the New York City Charter, Title 9, Chapter 1 of the New York City Administrative Code, which does not delegate to the Commissioner responsibility for health and safety mandates for DOC employees such as vaccine mandates or accommodation policies, *see* N.Y.C. Charter Code, ch. 25, § 623); *see, e.g.*, *Gersbacher v. City of New York*, No. 14-cv-07600 (GHW), 2017 WL 4402538, at *16 (S.D.N.Y. Oct. 2, 2017) ("That Chief Esposito has the word 'Chief' in his title, or that he ordered the [challenged action], do not make him a 'final policymaker' for the City as a matter of law."); *accord City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (explaining that whether "a particular officer has 'final policymaking authority' is a question of *state law*," and "the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in *that area* of the city's business" (emphases in original)).

As a result, Plaintiff has not satisfactorily alleged the existence of a municipal policy or custom that was the moving force behind any alleged constitutional violation based on religious discrimination.  The Court dismisses Count V.

### 3.   Gender Discrimination Section 1983 Claim (Count VII)

Plaintiff alleges that the City Defendants had a practice of permitting unvaccinated male employees to retain employment while terminating the employment of unvaccinated female employees, including Plaintiff.  SAC ¶ 167.  The City Defendants move to dismiss this claim.  The Court considers each ground for *Monell* liability and concludes that Plaintiff has not demonstrated the existence of such a policy or custom.

First, Plaintiff has not alleged the existence of a formal policy to permit male employees to remain unvaccinated while terminating female employees who were unvaccinated.  To satisfy the "formal policy" route, the policy must be in the form of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers."  *Monell*, 436 U.S. at 690.  As with Plaintiff's religious-discrimination *Monell* claim, neither of the formal policies alleged in the SAC — either the City's vaccine mandate for City employees or the DOC vaccine mandate — amount to a formal policy to permit male employees to remain unvaccinated while terminating unvaccinated female employees.  As a consequence, Plaintiff has not alleged the existence of a formal policy.

Second, Plaintiff has not adequately alleged facts that give rise to a custom-or-practice theory of municipal liability.  Plaintiff conclusorily alleges that there was a "practice of permitting unvaccinated male DOC employees to retain their employment, while terminating Plaintiff's employment and the employee [*sic*] of other unvaccinated female DOC employees, including Plaintiff."  SAC ¶ 167.  In support of this conclusory allegation, she alleges that

three male DOC employees continued working without a vaccination; she does not allege on what basis they were permitted to work unvaccinated. *See* SAC ¶¶ 159-160. She does not even allege that the DOC terminated the employment of the other female employee whose request for an accommodation was denied. SAC ¶ 151. Plaintiff's failure to allege the existence of *any* other incident similar to hers "dooms" her claim because "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct . . . without more evidence that connects th[e] incident to a municipal policy or practice." *Bird v. County of Westchester*, No. 20-cv-10076 (NSR), 2022 WL 2263794, at *12 (S.D.N.Y. June 23, 2022) (first quoting *Dumel v. Westchester County*, No. 19-cv-02161 (KMK), 2021 WL 738365, at *5 (S.D.N.Y. Feb. 25, 2021); and then quoting *Pittman v. City of New York*, No. 14-cv-04140 (ARR), 2014 WL 7399308, at *7 (E.D.N.Y. Dec. 30, 2014)). Plaintiff has therefore failed to allege the existence of a widespread and persistent custom or practice of gender discrimination giving rise to *Monell* liability.

Finally, Plaintiff has not alleged facts that support either a final-policymaker or failure-to-train-or-supervise theory of municipal liability. As with her religious discrimination claim, she has not alleged that Molina "has authority to formulate the rules governing personnel decisions," *Baity*, 51 F. Supp. 3d at 437, including adopting vaccine mandates, the DOC's internal vaccine policy, or the DOC's policy about whether to terminate unvaccinated officers, *see supra*. Plaintiff also has not alleged facts asserting the inadequate training or supervision of DOC employees involved in termination decisions regarding unvaccinated DOC workers.

As a consequence, Plaintiff has not satisfactorily alleged the existence of a municipal policy or custom that was the moving force behind any alleged constitutional violation based on gender. The Court dismisses Count VII.

**C.    Claims Against Molina in his Individual Capacity (Counts VI and VIII)**

**1.    Legal Standard**

To state a claim under 42 U.S.C. § 1983 against a defendant in their individual capacity, a plaintiff must allege that "(1) the Individual Defendant[] [was] acting under color of state law, and (2) the Individual Defendant['s] conduct deprived [plaintiff] of a constitutional or a federal statutory right." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 575 (S.D.N.Y. 2011); *see also Harris v. Westchester Cnty. Dep't of Corr.*, No. 06-cv-02011 (RJS), 2008 WL 953616, at *9 (S.D.N.Y. Apr. 3, 2008) ("Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on a claim for damages under § 1983." (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001))).  To prove a defendant's personal involvement, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

**2.    Failure to State a Claim Against Molina in his Individual Capacity (Counts VI and VIII)**

Plaintiff further seeks to hold Molina liable in his individual capacity under Section 1983 (Counts VI and VIII), arguing that his conduct violated the Fourteenth Amendment because his discriminatory conduct denied her equal protection and, reading the SAC liberally, deprived her of procedural due process.  *See* SAC ¶¶ 215, 228 (alleging that defendant denied plaintiff "the equal protection of the law, and the full and equal benefits of all laws and proceedings for the security of her employment").  The City Defendants argue that the SAC fails to allege Molina's personal involvement in the decision to deny Plaintiff's accommodation request and that, in any event, Molina is entitled to qualified immunity.  City Dfs. Br. 16-18.  The Court will address each contention in turn.

41

    *i.*   *No Personal Involvement*

To hold Molina liable in his individual capacity, Plaintiff must "establish [his] personal involvement in the claimed violation." *Collins v. City Univ. of N.Y.*, No. 21-cv-09544 (NRB), 2023 WL 1818547, at *6 (S.D.N.Y. Feb. 8, 2023) (quoting *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016)).  The City Defendants argue that Plaintiff was required to allege that Molina "made the ultimate decision to deny [her] religious reasonable accommodation to the Mandate" and has not done so.  City Br. at 17.  The City Defendants also argue that the letter sent to Plaintiff notifying her that her request had been denied indicates that DOC's Equal Employment Opportunity ("EEO") Office denied the requested accommodation, not Molina.  *Id.*  Plaintiff relies on her claim that Molina established a policy of denying all religious accommodation requests while granting all medical accommodations to argue that she has satisfactorily alleged Molina's personal involvement.  *See* Pl. City Opp. at 7-8.

The Court agrees with City Defendants. There are no allegations that Molina was involved in the review or denial of Plaintiff's accommodation request or appeal.  While personal involvement can be established by showing that "the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom," *Littlejohn*, 795 F.3d at 314, Plaintiff has not satisfactorily alleged that Molina personally created such a policy.  *See supra.*  Plaintiff's Section 1983 claims against Molina are therefore dismissed for lack of personal involvement.

    *ii.*   *Qualified Immunity*

Even if Molina personally engaged in a constitutional violation, the Court would hold that qualified immunity protected Molina.  An individual defendant is entitled to qualified immunity if their "conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known," or if "it was objectively reasonable

for [the defendant] to believe that his actions were lawful at the time of the challenged act."

*Tooly v. Schwaller*, 919 F.3d 165, 172 (2d Cir. 2019) (alteration in original).  The Court will

address qualified immunity with respect to the procedural due process claim and then the

equal protection claim.

First, Plaintiff has cited no case to this Court, and the Court is not aware of any,

holding that procedural due process is violated in similar circumstances to those set forth here.

The SAC describes how Plaintiff was provided notice of the vaccine mandate and an

opportunity to comply or to request an accommodation or exemption.  SAC ¶¶ 77-81; *see* Dkt.

54-3 (setting forth the procedure and deadline for requesting an accommodation).  It details

the process by which her accommodation request was reviewed and notes that a detailed

written explanation was provided to her when her request was denied, clearly spelling out how

the conclusion was reached.  SAC ¶¶ 79-80, 104-108, 112-116; Dkt. 54-2.  An appeal process

was afforded to Plaintiff, during which she was permitted to remain at work, SAC ¶¶ 119-120;

Dkt. 54-2 at 2, and her appeal was ultimately denied by the City of New York Reasonable

Accommodation Appeals Panel, Dkt 67-1.  Plaintiff has not cited to any case where placement

on unpaid leave and then termination after such a process violated constitutional due process

rights and, indeed, the Second Circuit and courts in this Circuit have held otherwise.  *See, e.g.*,

*Garland v. N.Y.C. Fire Dep't*, No. 23-663, 2024 WL 445001, at *3-4 (2d Cir. Feb. 6, 2024)

(summary order) (affirming dismissal of due process claim by plaintiffs who were suspended

and fired for refusing to comply with COVID-19 vaccine mandate because they were given

notice of the mandate, an opportunity to request an accommodation, and an appeal process to

a city-wide panel); *Broecker v. N.Y.C. Dep't of Educ.*, No. 23-655, 2023 WL 888858, at *2

(2d Cir. Dec. 26, 2023) (summary order) (similar); *Marciano v. de Blasio*, 589 F. Supp. 3d

423, 436 (S.D.N.Y. 2022) (dismissing procedural due process claim based on termination for failure to comply with vaccine mandate because plaintiff received multiple notices of the mandate, an opportunity to comply or seek an accommodation, and review of that request through administrative channels).  "For qualified immunity to apply, it is sufficient that no clearly established law has held that 'an officer acting under similar circumstances' violated an employee's due process rights."  *Tooly*, 919 F.3d at 175 (quoting *White v. Pauly*, 580 U.S. 73, 80 (2017)).  The Court therefore concludes that Molina is entitled to qualified immunity as to the procedural due process claim.

Second, while it is a matter of clearly established law that employment discrimination based on race or gender can violate the Equal Protection Clause when the "discrimination was intentional," *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (collecting cases), Plaintiff has not cited any case holding that the Equal Protection Clause is violated where the plaintiff has not shown that the circumstances give rise to an inference of discrimination, let alone intentional discrimination.  Indeed, courts in this Circuit have rejected equal protection claims based on differential treatment in application of a vaccine mandate based on religion where, as here, the plaintiff failed to identify similarly situated individuals treated differently.  *See, e.g.*, *Mora v. N.Y. State Unified Ct. Sys.*, No. 22-cv-10322 (VB), 2023 WL 6126486, at *14 (S.D.N.Y. Sept. 19, 2023); *Conde v. Mid Hudson Regional Hosp. Med. Ctr.*, No. 22-cv-03085 (VB), 2024 WL 168282, at *5 (S.D.N.Y. Jan. 12, 2024) (dismissing equal protection claim where plaintiff did not adequately identify any similarly situated individual whom defendants treated differently).  The Court therefore concludes that Molina is also entitled to qualified immunity as to the equal protection claim.

 Since Molina would be protected by qualified immunity even if Molina was personally involved with a constitutional violation, Plaintiff's Section 1983 claims against

Molina in his individual capacity must also be dismissed.  *See Wagschal v. Skoufis*, 442 F. Supp. 3d 612, 627 (S.D.N.Y. 2020) (granting motion to dismiss where defendant was entitled to qualified immunity because he had not violated clearly established law).

## IV.    Title VII, NYSHRL, and NYCHRL Claims Against Salesforce (Counts III, IV, XII, XIII, XIV, and XV)

Moving next to Salesforce, Salesforce seeks to dismiss the Title VII, NYSHRL, and NYCHRL claims against it because Plaintiff has not alleged Salesforce was her employer. Salesforce Df. Br. at 5-6.  Plaintiff argues that Salesforce exercised control, along with the City Defendants, over the terms of her employment such that an employer-employee relationship exists.  Pl. Salesforce Opp. at 19-20.

### A.  Legal Standard

The Second Circuit has long held that "the existence of an employer-employee relationship is a primary element of Title VII claims."  *Gulino v. N.Y.S. Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006).  Similarly, a NYSHRL or NYCHRL plaintiff must establish the existence of an employer-employee relationship.  *Hanley v. N.Y.C. Health & Hosps. Corp.*, 722 F. Supp. 3d 112, 119 (E.D.N.Y. 2024).

"[I]n alleging an employer-employee relationship, an employee is not squarely limited to claims against his or her *formal* employer."  *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 838 (2d Cir. 2022) (Title VII claim); *see Fowler v. Scores Holding Co.*, 677 F. Supp. 2d 673, 680-81 (plaintiff may assert claims under the NYSHRL or NYCHRL "against an entity that is not formally his or her employer" under "the single and joint employer doctrines").  A plaintiff-employee may also, pursuant to the "joint employer" doctrine, "assert Title VII liability against a 'constructive employer' — an entity that shares in controlling the terms and conditions of a plaintiff's employment."  *Felder*, 27 F.4th at 838; *see Fowler*, 677 F. Supp. 3d

at 681.  The Second Circuit has instructed that non-exhaustive factors to consider in

determining whether an entity is a "joint employer" "include[e] control over an employee's

hiring, firing, training, promotion, discipline, supervision, and handling of records, insurance,

and payroll."  *Felder*, 27 F.4th at 838; *see also Torres v. Brend Restoration Servs. Inc.*, No.

22-cv-01191 (DEH), 2024 WL 4355030, at *3 (S.D.N.Y. Sept. 30, 2024) (same); *Moody v.

Empire Hotel Dev., Inc.*, No. 20-cv-02203 (PMH), 2023 WL 5480729, at *5 (S.D.N.Y Aug.

24, 2023) (applying *Felder* factors to NYSHRL claim); *Pappas v. XP Controle Participações

S.A.*, No. 19-cv-11137 (GHW), 2023 WL 317353, at *4 (S.D.N.Y. Jan. 18, 2023) (same to

NYCHRL claim).  "[A]ll of the incidents of the relationship must be assessed and weighed

with no one factor being decisive."  *Torres*, 2024 WL 4355030, at *3 (quoting *Felder*, 27

F.4th at 844).

### B.   Salesforce Is Not Liable Under Title VII, the NYSHRL, or the NYCHRL (Counts III, IV, XII, XIII, XIV, and XV)

The Court considers Plaintiff's Title VII, NYSHRL, and NYCHRL claims together

because each rises and falls on whether Salesforce can be considered Plaintiff's joint

employer.

The SAC does not establish that Salesforce exercised the kind of control over Plaintiff

that would be necessary to establish a joint employment relationship.  First, Plaintiff was hired

by and worked for the DOC, and she never alleges that she was hired by Salesforce.  SAC

¶ 54 ("The City Defendants employed Plaintiff from in or about November 2005 until

February 2022, when the City Defendants wrongfully terminated Plaintiff's employment.").

Plaintiff does not allege that Salesforce terminated her employment or placed her on leave

without pay, instead alleging that City Defendants were responsible for those steps.  *Id.* ¶ 68

("City Defendants placed Plaintiff on Leave of [*sic*] Without Pay, and subsequently

terminated her employment on or about February 11, 2022.").  There is no allegation in the

SAC that Salesforce had the "power to pay [Plaintiff's] salary," control her "training,

promotion, . . . supervision, and handling of . . . insurance," *Felder*, 27 F.4th at 838, or

"otherwise control [her] daily employment activities," *id.* at 844.  *See generally* SAC.

Plaintiff alleges only that Salesforce was involved in her appeal from the denial of her request

for an accommodation.  *See id.* ¶ 128; Pl. Salesforce Opp. at 20.  Indeed, Plaintiff admits that

"Salesforce's interaction with Plaintiff was limited to transmitting an email acknowledging

receipt of her appeal and thereafter transmitting another email summarily denying her appeal."

SAC ¶ 131; *see id.* ¶ 30.

The Court concludes that Salesforce's alleged involvement in the denial of Plaintiff's

appeal is not enough to establish, even at the pleading stage, that Salesforce was her

employer.  Salesforce did not control Plaintiff's daily employment activities or her hiring or

firing, nor did it impose the requirement that she be vaccinated.  Even if the Court credited

Plaintiff's allegation that Salesforce made the appeal decision, which is contrary to the

documents incorporated by reference in the SAC, as will be discussed further *infra*, it would

not conclude that Salesforce was Plaintiff's employer.  Courts in this Circuit have determined

that outside companies hired by the City to review appeals from similar denials are not

employers within the meaning of Title VII.  *See Herman-Scott v. N.Y.C. Dep't of Health &*

*Mental Hygiene*, No. 23-cv-08103 (NRM), 2023 WL 8717009, at *1-2 (E.D.N.Y. Dec. 18,

2023).  Accordingly, joint employer liability is inapplicable.

Since an employer-employee relationship is a prerequisite for liability under Title VII,

the NYSHRL, and the NYCHRL, the Court dismisses Counts III, IV, XII, XIII, XIV, and XV

of the SAC.  *See id.*; *Kiraly v. Cornell Coop. Extension of Del. Cnty.*, No. 23-cv-00446 (GTS),

2024 WL 1242320, at *13, 17 (N.D.N.Y. Mar. 22, 2024) (dismissing Title VII claim where

court, applying *Felder*, found that defendant was not plaintiff's employer for the purposes of Title VII); *Chavannes v. Bronx Parent Housing Network*, No. 21-cv-05060 (JGK), 2022 WL 4124762, at *4-5 (S.D.N.Y. Sept. 9, 2022) (granting in part motion to dismiss Title VII, NYSHRL, and NYCHRL claims where plaintiff failed to demonstrate defendant was her joint employer).

## V.   Section 1983 Claims Against Salesforce (Counts IX and X)

Plaintiff next brings claims against Salesforce under Section 1983, alleging that Salesforce, acting under color of state law, violated her equal protection and due process rights because of her religion in violation of the Fourteenth Amendment.  *See* SAC ¶ 235 (Count IX).  She also alleges that Salesforce denied her the right to make and enforce contracts because of her gender, in violation of Section 1983.  *Id.* ¶ 242 (Count X).  Salesforce moves to dismiss both claims.

### A.  Legal Standard

Private parties are generally not liable under Section 1983.  *Pedrow v. Greenburgh Police Dep't*, No. 24-cv-04010 (PMH), 2024 WL 4494292, at *1 (S.D.N.Y. Oct. 15, 2024). "A private actor may be liable under § 1983 only if there is a sufficiently 'close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 405-06 (2d Cir. 2013) (some internal quotation marks omitted) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see Newsome v. Bogan*, 795 F. App'x 72, 73 (2d Cir. 2020) (summary order) (similar).  Courts in the Second Circuit lack a single test to identify state actors, and instead three main tests have emerged:

> For the purposes of section 1983, the actions of a nominally private entity are attributable to the state . . . (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when

the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state ("the public function test").

*Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (alteration and omission in original) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)); *see Burke v. Verizon Commc'ns, Inc.*, 661 F. Supp. 3d 277, 285 (S.D.N.Y. 2023) (same), *aff'd sub nom. Burke v. Hous. & Servs., Inc.*, No. 23-635, 2024 WL 2207054 (2d Cir. May 16, 2024) (summary order).

**B.**     **The Section 1983 Claims Against Salesforce Must Be Dismissed (Counts IX and X)**

Salesforce argues that Plaintiff's Section 1983 claims should be dismissed because the SAC does not sufficiently plead that Salesforce took an action under color of state law. Salesforce Br. at 13.  The Court agrees.

Plaintiff alleges that, "upon information and belief," in or around 2020, Salesforce entered into a contract with the City to provide review services of claims by City employees, including appeals from COVID-19 vaccine accommodation or exemption decisions.  SAC ¶ 28.  She further alleges that "DOC, the City of New York, and Molina delegated to Salesforce their authority to determine the appeal of New York City employees, including employees working for DOC," *id.* ¶ 29, and that Salesforce "reviewed and made the determination whether to grant or deny the appeal of DOC employees," *id.* ¶ 30.  Plaintiff also alleges that Salesforce "acted under color of state law and the conduct and actions of Defendant Salesforce constituted state action."  *Id.* ¶ 25.  Plaintiff alleges that when Molina became DOC Commissioner, he "instructed" Salesforce to "exclude from application of the Teletype Order" — that is, the determination that the only accommodation that would not

cause an undue hardship to the DOC was weekly testing — "all employees including Plaintiff who requested a religious accommodation." *Id.* ¶ 99. Finally, Plaintiff alleges that "Salesforce's interaction with Plaintiff was limited to transmitting an email acknowledging receipt of her appeal and thereafter transmitting another email summarily denying her appeal." *Id.* ¶ 131; *see also id.* ¶¶ 128-129; *id.* ¶ 135 (quoting from email denying appeal).

Plaintiff has not demonstrated that Salesforce took action against her under color of state law. Plaintiff argues state action only under the "joint action" or "close nexus" test. *See* Pl. Salesforce Opp. at 10-11. "The touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom, or policy' shared by the private actor and the [government].'" *DuBois v. Bedford-Flatbush Chiropractic, P.C.*, 409 F. Supp. 3d 62, 69 (E.D.N.Y. 2019). The allegations in the SAC in support of Plaintiff's claim are too conclusory and are contradicted by the documents incorporated by reference in the SAC.

Plaintiff has not provided any factual allegations in support of her belief that the DOC entered into a contract with Salesforce to administer the appeals process and that the City Defendants had a policy of denying all religious accommodation requests that they shared with Salesforce. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."). More than that, though, Plaintiff's allegations are contradicted by the documents that are incorporated by reference in the SAC. "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter*, 2012 WL 1027639, at *2. The Court may consider the email Plaintiff received from Salesforce informing her that her appeal had been denied as it was incorporated by reference in the SAC. SAC ¶ 128; Dkt. 67-1. Plaintiff's allegation that the

City delegated to Salesforce the authority to determine appeals is contradicted by the email

that Salesforce sent Plaintiff, which shows that the City, not Salesforce, made the decision to

deny Plaintiff's appeal. *See* Dkt. 67-1. Plaintiff admits that the first email she received from

Salesforce acknowledged receipt of her appeal "*on behalf of* 'NYC Employee Vaccine

Appeals.'" SAC ¶ 128 (emphasis added). The ultimate email denying Plaintiff's

appeal — the only other email she says that she received from Salesforce — was sent from

"noreply@salesforce.com" on behalf of "Vax Appeal (DCAS)," and states that it was "[s]ent

from the Department of Citywide Administrative Services." Dkt. 67-1. The email provides:

"This is to advise you that the City of New York Reasonable Accommodation Appeals Panel

has decided to deny the appeal of Ayana Mumin." *Id.* There is no indication that Salesforce

reviewed or was responsible for the denial of Plaintiff's appeal. Rather, the face of the email

provides that such review was plainly completed by the City of New York Reasonable

Accommodation Appeals Panel. Plaintiff makes no allegation that Salesforce or any of its

agents participated in that Appeals Panel. Indeed, the initial DOC denial letter issued to

Plaintiff stated that any appeal would be through "www.nyc.gov/vaxappeal" and to notify the

DOC's Equal Employment Opportunity Officer, not Salesforce. Dkt. 54-2 at 2. The fact that

the appeal denial was sent via Salesforce's portal "on behalf of" the Department of Citywide

Administrative Services, *see* Dkt. 67-1, does not show that Salesforce took any action or made

any decisions about Plaintiff's appeal. As a result, the Court finds that Salesforce did not act

under color of state law under Section 1983.

### C.  Section 1985 Claim (Count XI)

Plaintiff finally brings a claim against Defendants under 42 U.S.C. § 1985(3), alleging

that Salesforce conspired with the City Defendants to grant only requests for medical

accommodations, and to deny all requests for religious accommodations; that they agreed to

place each DOC employee whose request for religious accommodation was denied on Leave Without Pay and then terminate them; and that, pursuant to this agreement, Defendants violated Plaintiff's civil rights and deprived her of employment opportunities.  SAC ¶¶ 249-257.

### A.  Legal Standard

Section 1985 provides a cause of action for damages for persons injured by a conspiracy to, among other things, "depriv[e], either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).  "To state a valid cause of action under § 1985(3)," Plaintiff must allege:

> (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

*K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 208 (S.D.N.Y. 2013) (quoting *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir.1999)).  "A conspiracy 'need not be shown by proof of an explicit agreement but can be established by showing that the "parties have a tacit understanding to carry out the prohibited conduct."'"  *Thomas*, 165 F.3d at 146 (2d Cir. 1999) (quoting *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995)).

### B.    Analysis

Salesforce argues that any Section 1985(3) claim Plaintiff asserts should fail because (1) Section 1985 cannot serve as a vehicle to redress Title VII claims, and (2) Plaintiff has not alleged either an agreement or any overt act that would satisfy the pleading requirements for a Section 1985 claim.  The Court need only address Salesforce's first contention.

Salesforce (and the City Defendants in their reply) argue that Plaintiff is attempting to impermissibly wedge a Title VII claim into a Section 1985(3) claim. Salesforce Br. at 16 n.9; City Reply at 8-9. Plaintiff does not engage with this argument. The Supreme Court has held that "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979). Courts in this Circuit have accordingly held that no action lies pursuant to Section 1985 where a plaintiff "fail[s] to assert any rights violation apart from employment related discrimination covered or closely related to that covered by Title VII." *Jenkins v. Arcade Bldg. Maint.*, 44 F. Supp. 2d 524, 533 (S.D.N.Y. 1999) (quoting *Ladson v. Ulltra E. Parking Corp.*, 853 F. Supp. 699, 704 (S.D.N.Y. 1994)); *Smith v. Loc. Union 28 Sheet Metal Workers*, 877 F. Supp. 165, 172 n.12 (S.D.N.Y. 1995) (dismissing Section 1985(3) claim based "solely upon claims of employment discrimination"); *accord Cater v. New York*, No. 17-cv-09032 (RWS), 2019 WL 763538, at *4-5 (S.D.N.Y. Feb. 4, 2019). The Court concludes that the sole basis for Plaintiff's Section 1985(3) claim is employment-related discrimination. In Count XI, Plaintiff realleges that the Defendants agreed to grant only requests for medical accommodations and to deny all requests for religious accommodations. SAC ¶¶ 249-254. She alleges that pursuant to this agreement, Salesforce and the City Defendants placed DOC employees who requested a religious accommodation on leave without pay and then terminated their employment, and claims that as a proximate result, "Defendant[s] deprived Plaintiff of employment opportunities." *Id.* ¶¶ 255-257. These claims fail to assert any rights violation apart from employment-related discrimination, and indeed these allegations, in substantial part, form the basis of Plaintiff's Title VII religious-discrimination claims. *See Cater*, 2019 WL 763538, at *4 (plaintiff's Section 1985 claim asserted Title VII claims where plaintiff referred to her Section 1985 claims as employment discrimination claims and her complaint

contained multiple references to phrases key to Title VII claims). As a result, the Court dismisses Count XI. *Cf. id.* at *4-5 (dismissing Section 1985(3) claim that asserted no rights violation besides employment discrimination); *Ladson*, 853 F. Supp. at 704 (same); *Smith*, 877 F. Supp. at 172 n.12 (same).

## VI.    Leave to Amend

Plaintiff seeks leave to amend the SAC should the Court find any deficiencies of pleading. Pl. City Opp. at 4; Pl. Salesforce Opp. at 1. Salesforce argues that further leave to amend should be denied as futile, *see* Salesforce Br. at 17, while the City asks that the SAC be dismissed with prejudice, Dkt. 53 at 1. The Court will grant Plaintiff's request for leave to amend.

Rule 15(a) provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a); *see Farrell v. City of New York*, No. 23-cv-04329 (JLR), 2024 WL 3849333, at *7 (S.D.N.Y. Aug. 16, 2024). "Nonetheless, 'it is within the sound discretion of the district court to grant or deny leave to amend.'" *Farrell*, 2024 WL 3849333, at *7 (quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018)). "[A] district court may properly deny leave when amendment would be futile." *Veras*, 2024 WL 3446498, at *8 (quoting *Jones v. N.Y. State Div. of Mil. & Naval Affs.*, 166 F.3d 45, 50 (2d Cir. 1999)).

Salesforce argues that granting Plaintiff further leave to amend would be futile, since she has already amended her complaint twice and has not stated a claim against Salesforce. *See* Salesforce Br. at 17. But the Court notes that each of these amendments were without the benefit of a ruling from this Court. *See* Dkts. 20, 43, 45. "While Plaintiff has already amended [her] complaint twice, the Second Circuit is 'particularly skeptical of denials of requests to amend when a plaintiff did not previously have a district court's ruling on a relevant issue' because 'without the benefit of a ruling, many a plaintiff will not see the

necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.'" *Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, No. 23-cv-01932 (JLR), 2024 WL 3849192, at *23 (S.D.N.Y. Aug. 16, 2024) (quoting *Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 833 (2d Cir. 2019) (per curiam)).

The Court grants Plaintiff leave to amend within 28 days of the date of this Opinion and Order.  The Court has no reason to conclude that Plaintiff has unduly delayed or acted in bad faith, that granting leave to amend would unduly prejudice Defendants, or that granting leave to amend would necessarily be futile.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Salesforce's motion to dismiss all claims against it set forth in Counts III, IV, IX, X, XI, XII, XIII, XIV, and XV.  The Court further GRANTS the City's motion to dismiss the entire SAC.  Plaintiff may file a Third Amended Complaint by January 15, 2025.  If no amended complaint is filed by that date, the Court will direct that judgment be entered in favor of Defendants and close the case.  The Clerk of Court is respectfully directed to terminate the motions at Dkts. 53 and 65.

Dated: December 17, 2024
      New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge