LAW OFFICE OF SANDRA D. PARKER
110 East 59th Street, 22nd Floor
New York, NY 10022
(212) 317-2883
Sandra D. Parker
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────x

AYANA F. MUMIN

                       Plaintiff,

         -against-                          THIRD AMENDED
                                         COMPLAINT AND
                                       JURY DEMAND

THE CITY OF NEW YORK, LOUIS A.
MOLINA, Individually and in his Official Capacity     23 CV 3932 (JLR)(JLC)
as  Commissioner of the New York City Department
of Correction, and SALESFORCE.COM, INC.

                        Defendants.
────────────────────────────────────────────────────────x

       Plaintiff, Ayana F. Mumin, for her Third Amended Complaint against the

Defendants The City of New York and Louis A. Molina, respectfully alleges as follows:

<u>JURISDICTION AND VENUE</u>

       1.      This is an action for declaratory judgment, injunctive relief and damages

instituted against the Defendants The City of New York and Louis A. Molina (collectively

Defendants), for unlawful employment practices and employment discrimination, based on

Plaintiff's religion and religious beliefs, pursuant to the Civil Rights Act of 1964 (as

amended), 42 U.S.C.§§ 2000e *et seq*. (Title VII), the New York State Human Rights Law,

NY Exec. L. §§ 290 *et seq*., (NYSHRL), and the New York City Human Rights Law, NYC

Admin. Code §§8-101 *et seq*., (NYCHRL).

2.      Plaintiff further brings this action against Defendants Louis A. Molina to redress the deprivation of Plaintiff's rights, privileges and immunities secured by the Fourteenth Amendment of the United States Constitution, pursuant to the Civil Rights Act of 1871 (as amended), 42 U.S.C.§ 1983.

3.      Defendants, in violation of Title VII, 42 U.S.C. § 1983, the NYSHRL, and the NYCHRL subjected Plaintiff to religious discrimination by denying Plaintiff a reasonable accommodation that would not cause Defendants undue hardship.

4.      Defendants subjected Plaintiff to further disparate treatment based on her religion and religious beliefs, in violation of Title VII, 42 U.S.C. § 1983, the NYSHRL, and the NYCHRL.

5.      Jurisdiction over the subject matter of this action is conferred on this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.  This Court's pendent jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a). Plaintiff further invokes this Court's jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202.

6.      The venue of this action is properly placed in the Southern District of New York, pursuant to 28 U.S.C. § 1391(b), and 42 U.S.C. § 2000e-5(f).

7.      Plaintiff has satisfied the procedural requirements of Title VII, prior to commencement of this action.

8.      On March 11, 2022 Plaintiff filed charges with the Equal Employment

Opportunity Commission (EEOC), alleging that the City of New York, the New York City Department of Correction and Salesforce.com, Inc. subjected her to discriminatory treatment, in the terms and conditions of employment, based on her religion, religious beliefs and gender.

9.      Thereafter, the EEOC issued a Notice of Right to Sue with respect to the charges asserted against the City of New York and the New York City Department of Correction.

10.     Plaintiff commenced this action against the City of New York and the New York City Department of Correction, within ninety (90) days of her receipt of the EEOC Notice of Right to Sue, with respect to charges filed against the City of New York and the New York City Department of Correction, by the filing of the Complaint on May 11, 2023, in this action.

11.     On or about September 29, 2023, the EEOC issued a Notice of Right to Sue with respect to the charges Plaintiff asserted against Defendant Salesforce.com, Inc. (Salesforce).

12.     Plaintiff instituted this action for violation of Title VII against the Defendant Salesforce, within ninety (90) days of her receipt of the EEOC Notice of Right to Sue issued in connection with the charges she filed against Defendant Salesforce.

PARTIES

13.    Plaintiff Ayana F. Mumin  is an African American former employee of the City of New York and the New York City Department of Correction.

14.    Plaintiff  observes and practices the Islamic religion.

15.    Plaintiff is a practicing Muslim.

16.    Upon information and belief, at all times relevant herein Defendant City of New York was and is a municipal corporation, organized and existing pursuant of the laws of New York State.

17.    Upon information and belief, at all times relevant herein, the City of New York Department of Correction (DOC) was and is an agency of the Defendant City of New York, created and existing pursuant to the New York City Charter, Article 25 and § 621, and Chapter 1 of Title 9 of the New York City Administrative Code.

18.    Upon information and belief, at all times relevant herein, Defendant Louis A. Molina (Molina) was the Commissioner of DOC.

19.    Upon information and belief, at all times relevant herein, Defendant Molina had all the powers, duties, and responsibilities conferred upon him and his predecessors as Commissioner of DOC, pursuant to Chapter 25 of the New York City Charter, Title 9, Chapter 1 of the New York City Administrative Code, and other applicable provisions of law, rules and regulations.

20.    At all times relevant herein, Plaintiff was an 'employee' of the City of New

York, DOC and Molina within the meaning of Title VII, the NYSHRL, and the NYCHRL.

21.    At all times relevant herein, the City of New York, DOC and Molina were Plaintiff's employers within the meaning of 42 U.S.C. § 2000e(b), the NYSHRL, and the NYCHRL.

22.    Defendant City of New York is sued pursuant to Title VII for its discriminatory conduct directed against Plaintiff based on her religion, and religious beliefs.

23.    Defendant Molina is sued in his official capacity for depriving Plaintiff of her civil rights secured by the Fourteenth Amendment of the United States Constitution, under color of state law, based on her religion and religious beliefs in violation of 42 U.S.C. §1983.

24.    Defendants also are sued for engaging in unlawful employment practices and discrimination, based on Plaintiff's religion and religious beliefs in violation of the NYSHRL and the NYCHRL.

25.    During Plaintiff's employment with DOC, the City of New York, announced in or about October 2020, that their employees including those employees working for DOC would be required to obtain the COVID 19 vaccination, in order to continue working.

26.    The City of New York further announced in or about November 2020, that their employees, including those employees working for DOC could submit requests based on their religion, religious beliefs or medical conditions, for an accommodation or exemption from the vaccine mandate.

27.    During Plaintiff's tenure with the DOC, the DOC, the Commissioner of DOC,

including Molina declared that weekly testing and submission of PCR[1] test results, would not cause the DOC undue hardship.

28.    Plaintiff and other employees of DOC who practice the Islamic religion submitted to DOC a request for an accommodation from the vaccine mandate, based on their Islamic beliefs.

29.    Among the other Muslim employees who sought a religious accommodation based on his Islamic religion was correction officer Kenneth Harrison.

30.    Plaintiff was the only Muslim captain, who requested an accommodation based on her Islamic religion.

31.    Defendants did not conduct a particularized assessment of whether granting Plaintiff's request for a religious accommodation would pose an undue hardship.

32.    Defendants made the decision to issue a blanket denial of Plaintiff's request, because according to Defendants if they granted Plaintiff's requests they would have to grant the requests of other Muslim employees.

33.    According to the Defendants they took the position that they had to deny and denied all requests of Muslim employees for a religious accommodation, which said employees requested based on their Islamic beliefs.

34.    Defendants admitted that they issued a blanket denial of Plaintiff's accommodation request, to avoid purportedly granting the religious requests of other Muslim

---

[1]    The PCR test or COVID-19 RT-PCR Test is designed to detect the virus that causes COVID-19.

employees.

35.     Pursuant to the foregoing policy of blanket denials of all Muslim employees' requests for a religious accommodation, Defendants denied Plaintiff's religious accommodation request.

36.     Defendants issued a blanket denial of Plaintiff's accommodation request, without conducting a particularized assessment whether granting the request would pose an undue hardship.

37.     Defendants instead singled out Plaintiff's accommodation request for denial, based on her Islamic belief and the fact that she was a practicing Muslim.

38.     Defendants then purported to inform Plaintiff that they had made a particularized assessment of her requests, when they had failed to do so.

39.     Defendants did not issue blanket denials of religious accommodations requests of non-Muslim employees.

40.     Defendants made a particularized assessment of each requests by non-Muslim employees, such as Catholics and other Christians.

41.     Defendants did not make the decision to render a blanket denial of all medical accommodation requests.

42.     Defendants made a particularized assessment of each medical requests for an accommodation.

43.     The Defendants singled out Muslim employees, such as Plaintiff who requested a religious accommodation based on her Islamic faith, because of their

discriminatory animus directed against Plaintiff, based on her religious beliefs and practices.

FACTS

44.     The Defendants employed Plaintiff from in or about November 2005 until February 2022, when they wrongfully terminated Plaintiff's employment.

45.     Plaintiff was employed with the DOC, first in the rank of a  Correction Officer and thereafter in the rank of Captain.

46.     The duties of DOC employees holding the rank of Captain are the same irrespective of their assignment and are set forth in DOC's Rules and Regulations.

47.     Irrespective of rank or assignment all DOC employees are subject to same standards of performance and discipline, which are set forth in DOC's command performance and discipline directive.

48.     During Plaintiff's employment with the Defendants, Plaintiff performed all duties, she was assigned in an exemplary manner.

49.     The Defendants employed Plaintiff in the position of Correction Officer from on or about November 3, 2005 until on or about January 1, 2014, assigning her work to at the Rose M. Singer Center, a facility of DOC which houses incarcerated persons or inmates.

50.     From in or about January 2014 through in or about 2016, Plaintiff held the position of Correction Officer/Medical Support Team Leader in the Applicant Investigations Unit of DOC.

51.     In or about July 2015 Plaintiff earned the promotion of Captain.

52.     Following Plaintiff's promotion to the title and position of Captain, the

Defendants assigned Plaintiff to work as Captain-Transitional Restorative Unit Supervisor at the Robert N. Daveron Complex (RND Complex), one of DOC's facilities, which houses inmates on Rikers Island.

53.    Plaintiff's next assignment, following her promotion to the position and title of Captain was Captain-Mentor Supervisor at the RND Complex.

54.    On or about November 11, 2020, while working as Captain-Mentor Supervisor at the RND Complex, Plaintiff suffered a job related injury to her right knee.

55.    As a result of the job injuries Plaintiff sustained on or about November 11, 2020, the Defendants determined that she was not medically fit to perform her full duties of Captain, and assigned Plaintiff to work in the Health Management Division of the DOC in or about May 2021.

56.    The Defendants assigned Plaintiff to work as Captain-Supervisor/Tour Commander of the Health Management Division Unit.

57.    Plaintiff worked in Health Management Division (HMD) as Captain-Supervisor/Tour Commander from in or about May 2021 until on or about January 2, 2022.

58.    As Captain-Supervisor/Tour Commander of the HMD, Plaintiff supervised approximately 20 uniformed employees or correction officers.

59.    Plaintiff's duties as Captain-Supervisor Tour Commander of the HMD also included supervision of the medical staff, consisting of three persons, who worked at the HMD under a contract with the Defendants, to provide medical services to DOC.

60    Plaintiff's duties as Captain-Supervisor/Tour Commander of HMD also

involved creating spreadsheets and reports, and compiling data regarding uniformed and non-uniformed employees of DOC, who reported sick.

61.    None of the duties Plaintiff performed and was required to perform as Captain-Supervisor Tour Commander in HMD, required Plaintiff to have contact with the DOC inmate population or the public.

62.    Plaintiff and the HMD staff  whom Plaintiff supervised were all assigned and worked in individually separated cubicles, with each cubicle separated by wall partitions.

63.    While still assigned as Captain-Supervisor Tour Commander of HMD, on or about July 7, 2021, Plaintiff underwent knee surgery and went on medical leave.

64.    The Defendants did not change Plaintiff's assignment to work in HMD while she was on medical leave.

65.    In or about August 2021, while Plaintiff was on medical leave, the Defendants announced that their employees, including DOC employees had to obtain the COVID vaccine, or alternatively undergo weekly COVID testing and submit weekly negative PCR test results, in order to continue working for the DOC.

66.    Thereafter, in or about October 2021, while Plaintiff was on medical leave, the Defendant City of New York announced that all City of New York employees, including those working for DOC would be required to be vaccinated against the corona virus.

67.    The DOC also announced in or about October 2021,  that it would review and determine requests from employees, who wished to be exempt from the vaccine mandate, based on their medical condition, their religion or religious beliefs.

68.    The Defendants required Plaintiff and other employees who requested an accommodation, to submit a completed Request for Accommodation Form, online.

69.    On or about October 22, 2021, while Plaintiff was on medical as a result of her right knee surgery, Plaintiff submitted a completed Request for Accommodation Form, requesting a religious accommodation or exemption from the COVID vaccine mandate, based on her Islamic religion, which prohibits her from being vaccinated against all conditions, ailments and impairments, including the corona virus.

70.    The Defendants did not meet with Plaintiff nor did they make themselves available to answer questions, Plaintiff had regarding the process involved in requesting and obtaining an accommodation.

71.    At the time that Plaintiff submitted the Request for Accommodation Form, the Defendants were aware that Plaintiff was assigned to work in HMD, as a result of her job related injury and that by virtue of that assignment, Plaintiff did not have any contact with inmates or the public.

72.    At the time that Plaintiff submitted the Request for Accommodation Form, the Defendants were aware that Plaintiff was on medical leave, was assigned to work estricted duty in HMD, and that by virtue of that assignment, Plaintiff did not have any contact with inmates or the public.

73.    At the time that Plaintiff submitted her application for a religious accommodation, the Defendants were aware that since in or about May 2021, Plaintiff  had not worked at the Rikers Island facility where inmates are housed, or any other DOC facility

that housed inmates.

74.     At the time that Plaintiff submitted her application for a religious

accommodation, the Defendants were aware that since in or about May 2021, Plaintiff had

not worked with the DOC inmate population.

75.      On or about November 8, 2021, approximately two weeks after Plaintiff

completed and submitted her request for a religious accommodation from the COVID

vaccine mandate, and while her accommodation request was pending, the Defendants and

specifically Vincent Schiraldi (Schiraldi), the then Commissioner of DOC, issued Teletype

Order No. HQ-02642-0.

76.     The Teletype Order stated that weekly testing and submission of negative PCR

results, was the only accommodation that would not cause the DOC undue hardship.

77.     The foregoing Teletype Order remained in effect during the entire tenure of

Plaintiff's employment, after she was terminated and was not rescinded by Schiraldi, or

Molina.

78.     On or about November 9, 2021 Plaintiff returned to work from her medical

leave.

79.     Upon reporting to work on or about November 9, 2021, Plaintiff underwent

testing for the COVID virus, and upon submitting a negative PCR test result was permitted to

resume performing the duties she previously performed as Captain-Supervisor/Tour

Commander in the HMD, before her medical leave of absence.

80.     From on or about November 9, 2021 until January 2, 2022, when the

Defendants placed Plaintiff on Leave Without Pay, Plaintiff underwent weekly testing for the COVID virus, and submitted weekly negative PCR test results.

81.     On November 10, 2021, two days after Plaintiff returned to work on restricted duty, and one day after the Defendants issued the Teletype Order, regarding the weekly testing accommodation from the vaccine mandate, the Defendants informed Plaintiff that they denied her request for a religious accommodation from the COVID vaccine mandate.

82.     Plaintiff did not demand that the Defendants provide her with a particular accommodation.

83.     Plaintiff did indicate that she was willing to undergo the weekly COVID testing and submit weekly PCR testing results described in Teletype Order, as an accommodation for her religion and religious beliefs.

84.     Beginning on or about November 8, 2021 when Plaintiff returned to work from medical leave, Plaintiff had been tested weekly for the COVID virus and had submitted weekly negative PCR test results.

85.     Plaintiff continued to undergo the weekly COVID testing and submitting weekly negative PCR test results to DOC through January 2, 2022, when the Defendants placed Plaintiff on Leave Without Pay.

86.     In addition to failing to offer Plaintiff the available reasonable accommodation of weekly testing, the Defendants among other things, disregarded applicable law, and the DOC Directive entitled "Reasonable Accommodations, " which provide that an employee's

request for a reasonable accommodation "triggers 'the interactive process.'"

87.     The Defendants' refused to engage in the interactive process with Plaintiff, failing to meet with Plaintiff or to discuss with Plaintiff her request for a religious accommodation, the available weekly testing accommodation and explore the availability of other and alternative accommodations.

88.     The Defendants denied Plaintiff's request for a religious accommodation from the COVID vaccine mandate, despite the fact that there was available at least one reasonable accommodation that they admitted would not cause them undue hardship.

89.     The Defendants denied Plaintiff's request for a religious accommodation on the ground that if they granted Plaintiff's request, they would have to grant the religious accommodations requests of other Muslims.

90.     Despite the fact that Defendants had made the decision to deny Plaintiff's accommodation request, based on their policy of making blanket denials of all Muslim accommodation requests, they purported to claim that they had denied her requested after allegedly conducting a particularized assessment of that request.

91.     Defendants did not make the decision to deny Plaintiff's accommodation request based on any particularized assessment of her request.

92.     On or about July 15, 2022, Defendants declared and admitted that they denied Plaintiff's religious accommodation request, based on their blanket policy of denying all Muslim employees' religious accommodation requests. On or about July 15, 2022, Defendants admitted that no request for an accommodation made by any Muslim, where the

Muslim employee's request was based on a conflict between the vaccine mandateand the employee's Islamic faith had been granted and would be granted.

93.    On or about November 16, 2021 Plaintiff appealed the denial of her request for a religious accommodation.

94.    On December 19, 2021 Plaintiff  was informed that her appeal had been denied, was given until Tuesday December 22, 2021 to submit  proof that she had obtained the COVID vaccine, and was threatened with being placed on Leave Without Pay if she did not obtain the COVID vaccine.

95.    In observation of her religion and religious beliefs, Plaintiff did not obtain the COVID vaccine, a requirement that conflicted with her Islamic religion and religious beliefs.

96.    Effective January 2, 2022 the Defendants placed Plaintiff on Leave Without Pay.

97.    The Defendants informed Plaintiff that she would remain on Leave Without Pay until she provided proof that she had obtained the COVID vaccine.

98.    As a result of being placed on Leave Without Pay, Plaintiff among other things, lost her income and benefits, including the reduction of her retirement benefits by the period during which she remained on leave.

99.    Defendants denied Plaintiff's religious accommodation request in accordance with their policy of blanket denial of all Muslim's religious accommodation requests, and limited the policy to requests made by Muslim employees based on their Islamic faith.

15

100.    For example, Defendants granted the religious accommodation request of correction officer Abad, based on her Catholic faith, permitting her to submit to weekly testing and submitting PCR test results.

101.    In addition, Defendants' purported denial of the requests of non-Muslim captains for a religious accommodation based on their Christian beliefs, unlike the denial of Plaintiff's request, had no effect on those captains, including the status of their employment with DOC.

102.    The purported denials did not result in placing the non-vaccinated captains on Leave Without Pay, was not followed by a threat of termination if the non-vaccinated captains failed to get the vaccine, nor were they terminated for not obtaining the vaccine.

103.    Said non-vaccinated Christian captains remained employed with DOC, suffering none of the consequences Plaintiff suffered as result of observing her Islamic faith and not obtaining the vaccination.

104.    Said non-vaccinated Christian captains kept their jobs, continued working, while submitting to weekly testing and submitting PCR test results.

105.    Among the non-Muslim captains whose purported denial of their religious accommodation requests, did not result in their placement on Leave Without Pay and subsequent termination were captain Janelle Murray (Murray), who requested a religious accommodation based on her Christian religious beliefs, and captain Christian Doninelli (Doninelli), who requested a religious accommodation based on his Catholic beliefs.

16

106.    Murray and Doninelli kept their employment with DOC and continued working without having obtained the COVID vaccine, and instead were permitted to submit to weekly testing and submitting weekly PCR test results.

107.    Murray was assigned to the RND Complex, which is a facility that houses inmates, and where Plaintiff was assigned following her promotion to captain.

108.    Doninelli was assigned to the Manhattan House of Detention (MHD), which is a facility that houses inmates.

109.    The duties of a captain are the same irrespective of the housing unit to which the captain is assigned.

110.    Murray and Doninelli performed the same duties Plaintiff performed as captain when she was assigned to the RND Complex.

111.    Captains assigned to housing units, are assigned to work in an enclosed office, which is located separate and away from the inmate housing area, and other facilities that service the inmates.

112.    The duties of a captain assigned to a housing unit, such as RND Complex and MHD involve supervision of approximately 25 correction officers in performance of their assignments; processing inmates for intake and discharge; reviewing court documents; securing orders, bail receipts, warrant checks; completing tour certification reports; ensuring equipment is accounted for; dispatching probe and response teams to alarms; and monitoring cameras.

113.    Murray and Doninelli performed the foregoing duties during their work respectively at the RND Complex and the MHD, and interacted with approximately 25 correction officers.

114.    The duties of a correction officer assigned to RND Complex, the MHD and any other facilities housing inmates are the same, and working under the supervision of the captain at the facility, involves direct supervision for the care, custody and control inmates; maintaining accurate accountability of inmates under their supervision; training inmate workers; supervising inmate in-house and at congregate meals; supervising indoor and outdoor recreation; conducting strip searches, pat frisks of inmates and inmate property; responding to alarms; escorting inmates to daily activities; completing reports regarding injuries and infractions; and safeguarding issued equipment.

115.    The correction officers assigned to the RND Complex, the MHD and other housing facilities interacted with the same number of people as captains assigned to those facilities, which is approximately 25 correction officers, along with the captain.

116.    In the case of correction officers, they had more direct contact with the inmates than did the captains assigned to the housing facility, in that they were assigned to be the first responders to issues involving inmates, such fights, sick reports and the like.

117.    Correction officer Randazzo who was assigned to RND Complex also submitted a request for a religious accommodation based on his Christian beliefs.

118.    In the case of Randazzo,  DOC did not provide him a response to that request,

and instead permitted him to remain unvaccinated, keep his job, while submitting to

weekly testing and submitting weekly PCR Test results.

119.    Defendants denied the religious accommodation request of Muslim correction

officer Kenneth Harrison, who was assigned to the same facility as captain Doninelli, the

MHD.

120.    Correction officer Abad, whose religious accommodation request DOC granted

was assigned to the RND Complex, where Murray was assigned and which was Plaintiff's

assignment, before going out on leave.

121.    Defendants further denied Plaintiff's religious accommodation request,

while she was assigned to the Health Management Division of the DOC, while granting the

medical accommodation request of one of the nurses assigned to that division.

122.    Defendants granted Kelly Persad (Persad), the accommodation of submitting to

weekly testing and submitting weekly PCR test results.

123.    Kelly Persad's duties involved interacting with approximately 50 persons

during each of her shifts, such as wardens, captains, correction officers, doctors, other nurses,

counselors and teachers.

124.    Persad took the vital signs, conducted EKGs, hearings and vision tests of

uniformed and non-uniformed employees; and conducted work in clearing uniformed

employees' return to work from various leaves.

125.    Defendant Molina was aware of the foregoing practice of issuing blanket

denials of religious accommodation requests submitted by Muslim employees,

such as Plaintiff based on their Islamic faith.

126.    Defendant Molina refused to take any action regarding the foregoing

discriminatory practice.

127.    The Defendants' governing policy provides that employees placed on Leave

Without Pay are entitled to remain on that Leave Without Pay for a least one year, without

facing termination of employment.

128.    During the one year period that the DOC employee is on Leave Without Pay,

the DOC must keep that employee's position open and available for said employee to

assume, upon the end of the one year leave period.

129.    Upon information and belief, on or about January 1, 2022, when Defendant

Molina became Commissioner of DOC, he directed DOC personnel to disregard the

foregoing leave policy.

130.    Defendant Molina gave no such directive with respect to DOC employees

whom the Defendants had placed on leave or were on leave for reasons unrelated to the

denial of their requests for a religious accommodation, including employees on medical

leaves.

131.    The foregoing directive of Defendant Molina and the conduct of the

Defendants, among other things violated the DOC's Leave Without Pay policy.

132.    Pursuant to the foregoing directive of Defendant Molina and in violation of the

DOC Leave Without Pay policy, on or about February 11, 2022 approximately one month after the Defendants placed Plaintiff on Leave Without Pay, terminated Plaintiff's employment, because of her inability to comply with the vaccine mandate, based on the conflict in that vaccine requirement with Plaintiff's religious beliefs.

133.    In violation of the foregoing Leave Without Pay policy and applicable laws, the Defendants took the foregoing action of terminating Plaintiff's employment while she was on Leave Without Pay for less than a year, to punish Plaintiff for requesting a religious accommodation from the vaccine mandate, to coerce Plaintiff into relinquishing her religious beliefs by obtaining the vaccine, and to punish Plaintiff for adhering to her religion and religious beliefs by not obtaining the vaccine.

134.    Effective February 10, 2023 less than a year after the Defendants placed Plaintiff on Leave Without Pay, the Defendants rescinded the mandate requiring their employees, including DOC employees to obtain the COVID vaccine.

135.    In or about February 2023 the Defendants announced that employees such as Plaintiff, whom they had given as the reason for terminating their employment, their failure to obtain the COVID vaccine, could reapply for entry level positions with the Defendants, including DOC.

136.    Under the foregoing announced policy of the Defendants, the Defendants required former employees such as Plaintiff, whose religious accommodation they denied, to start at the bottom of the employment ladder, robbing Plaintiff of the compensation, benefits,

position, promotional opportunities, and seniority status she earned during her almost two decades of service to the Defendants.

137.    Had the Defendants adhered to their Leave Without Pay policy by permitting Plaintiff to remain on leave for a year instead of terminating her employment within 30 days of that leave, Plaintiff would have been entitled to return to her former position of Captain, earning the same salary she was earning and receiving the same benefits she was receiving prior to her placement on Leave Without Pay.

138.    As a result of Defendants' wrongful conduct, among other things, Plaintiff has been deprived and continues to be deprived of the benefits and compensation she would be entitled to receive as a DOC employee holding the position of Captain.

139.    Unlike Plaintiff, captains Murray and Doninelli, correction officers Abad and Randazzo, and nurse Persad, maintained their employment with DOC, including their seniority, and other benefits.

140.    Despite reasonable efforts, Plaintiff has not been able to find employment comparable to the one she held prior to her termination by Defendants.

## COUNT I

141.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 140  of this Third Amended Complaint, with the same force and effect as if set forth herein.

142.    Defendant City of New York discriminated against Plaintiff in the terms and

22

conditions of her employment on the basis on her Islamic religion and religious belief, in violation of 42 U.S.C. §§ 2000e *et seq*., by denying Plaintiff a reasonable accommodation for her religious beliefs, despite the existence of a reasonable accommodation that would not pose an undue hardship on Defendants.

143.    As a proximate result of Defendant's religious discrimination, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, career advancement, and other employment benefits.

144.    As a proximate result of Defendant's religious discrimination, Plaintiff has suffered and continues to suffer impairment and damage to her good name and reputation.

145.    As a proximate result of Defendant's religious discrimination, Plaintiff has suffered and continues to suffer severe lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

146.    The conduct of the Defendant was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights, entitling Plaintiff to an award of punitive damages.

## COUNT II

147.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 140 of this Third Amended Complaint, with the same force and effect as if set forth herein.

148.    Defendant City of New York discriminated against Plaintiff in the terms and

conditions of her employment and subjected her to disparate treatment on the basis on her

Islamic faith, in violation of 42 U.S.C. §§ 2000e *et seq*.

149.   As a proximate result of Defendant's religious discrimination, Plaintiff has

suffered and continues to suffer substantial losses, including the loss of past and future

earnings, career advancement, and other employment benefits.

150. As a proximate result of Defendant's religious discrimination, Plaintiff has

suffered and continues to suffer impairment and damage to her good name and reputation.

151.   As a proximate result of Defendant's religious  discrimination, Plaintiff has

suffered and continues to suffer severe lasting embarrassment, humiliation and anguish, and

other incidental and consequential damages and expenses.

152.   The conduct of the Defendant was outrageous and malicious, was intended to

injure Plaintiff, and was done with reckless indifference to Plaintiff's  protected civil rights,

entitling Plaintiff to an award of punitive damages.

## COUNT III

153.   Plaintiff repeats and realleges each and every allegation set forth in paragraphs

1 through 142  of this Third Amended Complaint, with the same force and effect as if set

forth herein.

154.   Defendant Molina, as Commissioner of the DOC engaged in the conduct

complained of herein, because of his discriminatory animus directed against Plaintiff on

account of her religion and religious beliefs.

155.    On or about January 1, 2022, when Defendant Molina became the Commissioner of the DOC he was aware of the DOC policy of issuing blanket denials of all request by Muslim employees for a religious accommodation based on their Islamic faith.

156.    Defendant Molina was aware of DOC's affirmation of that policy on or about July 15, 2022 and the enforcement of that policy to deny Plaintiff's request and the requests of other Muslim employees for a religious accommodation based on their Islamic faith.

157.    Despite his knowledge of said policy, Defendant Molina took no steps to stop it, but instead encouraged and acquiesced in the enforcement of said policy.

158.    By engaging in such conduct, Defendant Molina denied Plaintiff the equal protection of the law, in violation of the Fourteenth Amendment of the Constitution of the United States, because of her religion and religious beliefs in violation 42 U.S.C. § 1983.

159.    As a proximate result of Defendant's violation of Plaintiff's civil rights, Defendant deprived Plaintiff of employment opportunities and caused Plaintiff to sustain substantial damages.

160.    As a proximate result of Defendant's deprivation of Plaintiff's civil rights, Plaintiff suffered and continues to suffer impairment and damage to her good name and reputation.

161.    As a proximate result of Defendant's deprivation of Plaintiff's civil rights, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages.

## COUNT IV

162. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 140 of this Third Amended Complaint, with the same force and effect as if set forth herein

163. Defendants in violation of NYSHRL, subjected Plaintiff to discriminatory treatment based on her Islamic religious, by denying her reasonable request for a religious accommodation that would not cause Defendants undue hardship, based on her Islamic faith.

164. As a result of the foregoing, Plaintiff has been denied employment. Plaintiff has lost wages, benefits, employment and promotional opportunities. Plaintiff has suffered mental anguish, emotional distress and loss of enjoyment of life. Plaintiff has incurred damages thereby.

165. The conduct of the Defendants was outrageous and malicious, was intended to injure Plaintiff, and was done with a conscious disregard of her civil rights, entitling Plaintiff to an award of punitive damages.

## COUNT V

166. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 140 of this Third Amended Complaint, with the same force and effect as if set forth herein

167. Defendants subjected Plaintiff to disparate treatment, based on her religion and religious beliefs, in violation of NYSHRL.

168. As a result of the foregoing, Plaintiff has been denied employment. Plaintiff has lost wages, benefits, employment and promotional opportunities. Plaintiff has suffered mental anguish, emotional distress and loss of enjoyment of life. Plaintiff has incurred damages thereby.

169. The conduct of the Defendants was outrageous and malicious, was intended to injure Plaintiff, and was done with a conscious disregard of her civil rights, entitling Plaintiff to an award of punitive damages.

<u>COUNT VI</u>

170. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 140 of this Third Amended Complaint, with the same force and effect as if set forth herein

171. Defendants in violation of NYCHRL, subjected Plaintiff to discriminatory treatment based on her Islamic religion, by denying her reasonable request for a religious accommodation that would not cause Defendants undue hardship, based on her Islamic faith.

172. As a result of the foregoing, Plaintiff has been denied employment. Plaintiff has lost wages, benefits, employment and promotional opportunities. Plaintiff has suffered mental anguish, emotional distress and loss of enjoyment of life. Plaintiff has incurred damages thereby.

173. The conduct of the Defendants was outrageous and malicious, was intended to injure Plaintiff, and was done with a conscious disregard of her civil rights, entitling Plaintiff

to an award of punitive damages.

COUNT VII

174.    Plaintiff  repeats and realleges each and every allegation set forth in

 paragraphs 1 through 140  of this Third Amended Complaint, with the same force and effect

as if set forth herein.

175.    Defendants subjected Plaintiff to disparate treatment based on Plaintiff's

religion and religious beliefs, in violation of the NYCHRL.

176.    As a result of the foregoing, Plaintiff has been denied employment.  Plaintiff

has lost wages, benefits, employment and promotional opportunities.  Plaintiff suffered

mental anguish, emotional distress and loss of enjoyment of life. Plaintiff incurred damages

thereby.

177.    The conduct of the Defendants was outrageous and malicious, was intended to

injure Plaintiff, and was done with a conscious disregard of her civil rights, entitling Plaintiff

to an award of punitive damages.

WHEREFORE, Plaintiff prays that this Court grant her judgment containing the

following relief:


1.    A declaration that the acts and practices complained of herein are in violation

of 42 U.S.C. §§ 2000e *et seq*., 42 U.S.C. § 1983,  NY Exec. L. §§ 290 *et seq*., and NYC

Admin. Code §§ 8-101 *et seq*.

28

2.      An order prohibiting Defendants from continuing or maintaining the policy, practice and/or custom of denying job benefits and opportunities to employees on the basis of religion and religious beliefs.

3.      An award to Plaintiff of actual damages in an amount to be determined at trial for loss wages, benefits and promotional opportunities, including an award of front pay, compensating Plaintiff for loss of future salary and benefits.

4.      An award of damages in an amount to be determined at trial to compensate Plaintiff for mental anguish, humiliation, embarrassment, and emotional injury.

5.      An award of punitive damages in an amount to be determined at trial.

6.      An order enjoining Defendants from engaging the wrongful acts and practices complained of herein.

7.      An award of pre-judgment and post-judgment interest.

8.      An award of reasonable attorney's fees and costs of this action.

9.      An award of such other and further relief, as this Court may deem just and proper.

Pursuant to Fed. R. Civ. Proc. 38, Plaintiff demands a trial by jury of all issues of fact in this action.

Dated:       New York, New York
               February 5, 2025

                                    LAW OFFICE OF SANDRA D. PARKER

                                    By:/s/ Sandra D. Parker
                                       Sandra D. Parker
                                     110 East 59th Street, 22nd Floor
                                     New York, NY 10022
                                     212-317-2883
                                     Attorney for Plaintiff
                                     parkefirm@aol.com