UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
AYANA F. MUMIN

                              Plaintiff,

              -against-
                                                    23 CV 03932 (JLR)

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTION, LOUIS A.
MOLINA, Individually and in his Official Capacity
as  Commissioner of the New York City Department
of Correction; and SALESFORCE.COM, INC.

                              Defendants.
------------------------------------------------------------x


PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE THIRD
AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES..........................................................................iii

STATEMENT OF THE CASE.........................................................................1

I.     Procedural History...........................................................................3

II.    The Religious Accommodation
       And Disparate Treatment Claims.........................................................4

III.   The Factual Bases Of The Claims
       Asserted In The TAC.......................................................................6

       A. Mumin's Assignment And Duties.....................................................6

              1.     Duties And Responsibilities
                     Of Correction Officers ......................................................7

              2.     Duties And Responsibilities
                     Of Captains..................................................................8

              3.     Mumin's Limited Duty Assignment.......................................9

       B.     Defendants' COVID Vaccine Mandate.............................................11

              1.     Defendants' COVID Vaccine
                     Accommodation Policy......................................................11

              2.     Defendants' Treatment Of Mumin's
                     Request For A Religious Accommodation.................................12

              3.     Defendants' Treatment Of Other
                     Religious Accommodation Requests.....................................15

              4.     Defendants' Treatment Of Medical
                     Accommodation Request..................................................16

i

ARGUMENT

    POINT I

    DEFENDANTS DENIED MUMIN'S REQUEST
    FOR A REASONABLE ACCOMMODATION FROM
    THE VACCINE MANDATE BASED ON HER
    MUSLIM BELIEFS AND PRACTICES..................................................................18


        Qualified Immunity Does Not Save Molina
        From Liability.................................................................................................26


    POINT II

    DEFENDANTS SUBJECTED MUMIN TO
    DISPARATE TREATMENT BASED
    ON HER RELIGION.............................................................................................29


CONCLUSION...............................................................................................................34

## TABLE OF AUTHORITIES

### CASES

Algarin v. NYC Health+Hosp. Corporation.

   678 F. Supp. 3d 497 (S.D.N.Y.  2023)

   aff'd, 2024 WL 1107481 (2d Cir. Mar. 14, 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

Bergin v. NYS Unified Court Sys.

   2024 WL 4444434 (S.D.N.Y. Oct. 8, 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24, 25

Cox v. Northwest Regional Educational Service District.

   2024 WL 777598 (D. Oregon, Feb. 23, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

Delaney v. Bank of America

   766 F. 3d 163 (2d Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

E.E.O.C. v. Abercrombie & Fitch Stores, Inc.

   575 U.S. 768 (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Greenberg v. Visiting Nurse Servs. of Westch. Inc.

   2024 WL 4252550 (S.D.N.Y. Sep. 19, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

Hafer v. Melo

   502 U.S. 21 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

Herman v. City of New York

   2023 WL 6386887 (S.D.N.Y. Sep. 29, 2023). . . . . . . . . . . . . . . . . . . . . . . . .  18, 19, 33

Lehey v. Northwell Health Inc.

    2024 WL 1703697 (S.D.N.Y. Apr. 19, 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Lively v. Wafra Investment Advisory Group Inc.

    6 F. 4th 293 (2d Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Lowman v. NVI LLC

    821 Fed. Appx. 29 (2d Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

Lynch v. City of New York

    952 F. 3d (2d Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

Makhsudova v. City of New York

    2022 WL 1571152 (S.D.N.Y. Sep. 29, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

McHenry v. Fox News Network, LLC

    510 F. Supp. 3d 51 (S.D.N.Y. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills

    815 F. Supp. 2d 679 (S.D.N.Y. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Mumin v. City of New York

    760 F. Supp. 3d 28 (S.D.N.Y. 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18, 19, 21, 30

Oncale v. Sundower Offshore Servs. Inc.

    523 U.S. 75 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Patrick v. LeFevre

    745 F. 2d 153 (2d Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

iv

Rizzo v. City Dept. of Sanitation

    2024 WL 3274455 (S.D.N.Y. Jul. 2, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

Sadallah v. City of Utica

    383 F. 3d 34 (2d Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

Stern v. City of New York

    2015 WL 918754 (S.D.N.Y. Mar. 3, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

Sughrim v. State of New York

    503 F. Supp. 3d 68 (S.D.N.Y. 2020) . . . . . . . . . . . . . . . . . . . . . . . . .  22, 23, 24, 28, 33

Thompson v. City of New York

    83 Misc. 3d 1213 (A)(Sup. Ct. Kings. Co. Jun. 11, 2024) . . . . . . . . . . . . . . . . . . . . . .  32

Tyson v. Town of Ramapo

    2019 WL 1331913 (S.D.N.Y. Mar. 25, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

U.S. v. Allen

    760 F. 2d 447 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

Vasquez v. City of New York

    2024 WL 1348702 (E.D.N.Y. Mar. 30, 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Vega v. Hempstead Union Free School Dist.

    801 F. 3d 72 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18, 30

Williams v. Smith

    781 F. 2d 319 (2d Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26, 27

<u>Ying Jin Gan v. City of New York</u>

   996 F. 2d 522 (2d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## STATUTES

42 U.S.C. §§ 2000e et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

42 U.S.C. §§ 8-101 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

42 U.S.C. §§290 et seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

42 U.S.C. §1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## <u>STATEMENT OF THE CASE</u>

Ayana Mumin, the Plaintiff in this action is a practicing Muslim, who observes and practices the Islamic faith.  Third Amended Complaint (TAC) ¶¶ 14-15.   Defendants City of New York and   Molina (Molina), Commissioner of the New York City Department of Correction (DOC) employed Mumin from November 3, 2005 until February 11, 2022 when Defendants terminated her employment. TAC ¶¶ 49, 132.

 As set forth in the TAC, she alleges that Defendants discriminated against her based on her religious beliefs, by refusing to provide her with an available reasonable accommodation that would not pose undue hardship on DOC.  Mumin also alleges that Defendants subjected her to disparate treatment based on her religious beliefs.

Following denial of her accommodation request, and as punishment for not obtaining the COVID vaccination, they first placed her on involuntary leave without pay and then terminated her employment. Defendants took no such action against unvaccinated non-Muslim employees.

Mumin asserts the above claims against Defendants, pursuant to 42 U.S.C. §§ 2000e *et seq.* (Title VII), the New York State Human Rights Law, NY Exec. L. §§290 *et seq.,* (NYSHRL)  and the New York City Human Rights Law, NYC Admin. Code §§ 8-101 *et seq.* (NYCHRL).  Mumin's claims against Molina are asserted against him in his official capacity as Commissioner, pursuant to 42 U.S.C. § 1983.  Defendants have moved to dismiss the TAC, arguing that it does not state a claim against them for failure

to provide her with a reasonable accommodation and for subjecting her to disparate treatment based on her religious beliefs.

The Defendants denied Mumin's religious accommodation request of submitting weekly negative PCR test results, in lieu of obtaining the vaccine, while granting the requests of non-Muslim captains and correction officers to submit to such weekly testing in lieu of obtaining the vaccine. The non-Muslim employees were permitted to work unvaccinated in facilities that housed inmates, interacting with them, other DOC employees and the public.

Thus to the extent the Court determines that Defendants' asserted defense of undue hardship appears on the face of the TAC, which for the reasons discuss herein Mumin submits it was not, the allegations of the TAC contradict their purported health and safety concerns advanced as the reason for denying her accommodation requests

Mumin's Section 1983 claim against Molina, sued herein in his official capacity is not defeated by Defendants' qualified immunity argument . That principle does not apply to Mumin's official capacity claim against him.

In addition to denying Mumin an available reasonable accommodation because of her religious beliefs, Defendants subjected her to disparate treatment by among other things, placing her on involuntary leave and then terminating her employment, while permitting unvaccinated Muslims to maintain their employment.

Defendants' motion should be denied in its entirety.

2

I.    **Procedural History**

Mumin initially commenced this action against the City of New York, the DOC,

Molina, and Salesforce.com, Inc. (Salesforce), on May 10, 2023, asserting religious and

gender discrimination claims pursuant to Title VII, Section 1983, NYSHRL and

NYCHRL.  ECF Doc. # 1, 3.[1]  In response to the Defendants City of New York, DOC and

Molina motion to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), Mumin filed

a First Amended Complaint.   ECF Doc. # 16, 20.  In an order dated January 17, 2024, the

Court granted Mumin leave to file a Second Amended Complaint (SAC), which she filed

on February 15, 2024.  ECF Doc. #43, 45.[2]

On or about March 14, 2024, Defendants City of New York and Molina moved to

dismiss the SAC, pursuant to Rule 12(b)(6).  ECF Doc #53.  Salesforce who had now

appeared in the action, also filed a motion to dismiss on May 7, 2024.  ECF Doc. #65.  In a

decision and order, dated December 17, 2024, the Court granted their motion with leave to

Mumin, to file an amended complaint.  *See*, *Mumin v. City of New York,* 760 F. Supp.

─────────────

[1]  At that time Mumin had not received her right to sue letter from the U.S. Equal
Employment Opportunity Commission (EEOC) with respect to the Title VII charge she filed
against Salesforce.  Mumin's claims against Salesforce in the original complaint were asserted
under 42 U.S.C. §1981, the NYSHRL and the NYCHRL.

[2]  The SAC dropped DOC as a party-defendant, and  asserted  Title VII and Section 1983
claims against Salesforce.  Concerned with difficulties serving Salesforce with process within the
time limit provided by the Federal Rules of Procedure, Mumin commenced a separate and related
action for religious discrimination against Salesforce, on December 22, 2023.  See, *Mumin v.
Salesforce.com, Inc.,* 23 CV 11134 (S.D.N.Y. Dec. 22, 2023) ECF Doc #1.  After service on
Salesforce and its appearance in this action, the second action was voluntarily dismissed in
March 2024.  23 CV 11134, ECF Doc. #8.

3d 28, 69 (S.D.N.Y. 2024).

On or about February 11, 2025, Mumin filed the TAC asserting seven counts or causes of action against the Defendants City of New York and Molina, pursuant to Title VII, 42 U.S.C. § 1983. ECF Doc. 84.[3]  The TAC does not assert claims against Salesforce, who was voluntarily dismissed from the case on or about March 7, 2025.  ECF Doc. #88-89.

## II.    The Religious Accommodation And Disparate Treatment Claims

Mumin's seven causes of action asserted against the Defendants and based on their discriminatory conduct directed against her because she observes and practices the Islamic religion, are set forth in Counts I through VII of the TAC.  Count I of the TAC asserts that the City of New York violated Title VII by refusing to provide her with a reasonable accommodation that would not cause the DOC undue hardship.  TAC ¶¶ 141-146.

As set forth in Count II of the TAC, Mumin alleges that the City of New York, further violated Title VII by subjecting her to disparate treatment based in her observation and practice of the Islamic religion.  TAC ¶¶ 147-152.  Notwithstanding Defendants' argument in their motion papers, Mumin does not assert a disparate impact claim in this

---

[3]  Mumin originally filed the TAC on February 5, 2025, but was instructed to re-file it due to technical filing errors.

action, under Title VII or any other statute.[4]

Mumin's federal claim asserted pursuant to 42 U.S.C. § 1983, against Molina in his official capacity is set forth in Count III of the TAC.  The TAC alleges that Molina violated her Equal Protections rights provided by the United States Constitution, when with knowledge of DOC's practice of issuing blanket denials of accommodation requests based on the requesting DOC's employee's Islamic religion, he failed to take action to stop the practice and instead acquiesced and condoned it. TAC ¶¶ 153-161.  As a consequence DOC continued to execute that practice throughout his tenure, including against Mumin.

Mumin's New York State and New York City law claims asserted respectively pursuant to the NYSHRL and the NYCHRL against the City of New York and Molina are set forth in Counts IV through VII of the TAC.   Count IV the TAC alleges that Defendants violated the NYSHRL when they failed to provide Mumin with a reasonable accommodation that would not cause DOC undue hardship, while in Count V, the TAC asserts Mumin's claim of disparate treatment based on her religious belief and observation of the Islamic religion.  TAC ¶¶ 162-169.  Count VI and Count VII assert respectively Mumin's failure to accommodate and disparate treatment claims against the Defendants, pursuant to the NYCHRL.  TAC ¶¶ 170-177.

---

[4] *See,* e.g., Point II of Defendants' Brief at 12, 15, where Defendants argue for dismissal of Mumin's alleged disparate impact claim.  No such claim appears or is asserted in the TAC.

5

### III.    The Factual Bases Of The Claims Asserted In The TAC

The TAC also sets forth the facts and circumstances which give rise to the foregoing claims Mumin asserts against the Defendants.  Mumin is a practicing Muslin.  TAC ¶¶ 14-15.  She observes and practices the Islamic religion.  *Id.*  As a practicing Muslim, she is prohibited from being vaccinated against all conditions, ailments and impairments, including the corona virus.  TAC ¶ 69.

In or about November 2005, Mumin began working for the Defendants and in particular the DOC as a correction officer.  TAC ¶¶44-45.  Approximately five years later, in or about July 2015, she was promoted to the position of captain. TAC ¶¶51.

Mumin held the position of captain and remained employed with DOC, until on or about January 2, 2022 when Defendants first placed her on involuntary leave without pay and then terminated her employment on or about February 11, 2022.  TAC ¶¶ 44-45, 85, 132.  Defendants placed Mumin on an involuntary and unpaid leave of absence and then terminated her employment, to discipline her for not obtaining the COVID vaccine, which conflicted with her Islamic beliefs.  *Id.*

### A.    Mumin's Assignments And Duties

Defendants employed Mumin, first in the rank of a correction officer and thereafter in the rank of captain.  TAC ¶45.  Irrespective of rank, such as correction officer and captain, DOC employees are subject to the same standards of performance and discipline, which are set forth in DOC's command performance and discipline directive.

TAC ¶46.

Defendants employed Mumin as a correction officer from on or about November 3, 2005 until on or about January 1, 2014, assigning her work to at the Rose M. Singer Center, a facility of DOC (RMS), which houses incarcerated persons or inmates.  TAC ¶49.  The duties which Mumin performed as a correction officer, during her assignment in RMS are the same duties performed by other correction officers assigned to work in a DOC facility which houses inmates. TAC ¶¶114-116.

In addition to RMS, the Robert N. Daveron Complex (RND Complex) and the Manhattan House of Detention (MHD) are DOC facilities which house inmates, and correction officers assigned to those facilities perform the same duties.  TAC ¶¶114-116.

### 1.  Duties and Responsibilities of Correction Officers

Correction officers assigned to RMS, the RND Complex, the MHD and other DOC facilities housing inmates are the same.  At those housing facilities, working under the supervision of the captain at the facility, they directly supervise for the care, custody and control inmates; maintain accurate accountability of inmates under their supervision; train inmate workers; supervise inmate in-house and at congregate meals; supervise indoor and outdoor recreation; conduct strip searches, pat frisks of inmates and inmate property; respond to alarms; escort inmates to daily activities; complete reports regarding injuries and infractions; and safeguard issued equipment.  TAC ¶114.

The correction officers and captains assigned to the RND Complex, the MHD and

7

other DOC housing facilities interacted with the same number of DOC employees assigned to those facilities, which is approximately 25 correction officers.  TAC ¶115. However, the duties of correction officers required them to have more direct contact with the inmates than the captains assigned to housing facilities. TAC ¶116.

During Mumin's approximate nine year tenure at RMS she performed the above duties, while assigned to that housing facility.  Other corrections officers such as correction officers----Abad, a Catholic, who worked at the RND Complex, Kenneth Harrison, a practicing Muslim, who worked at MHD and Randazzo, a Christian who also worked at the RND Complex----performed the above described correction officer duties during their tenure at those housing units.  TAC ¶¶115, 117-120.

From in or about January 2014 through in or about 2016, Mumin's assignment involved her working as a Correction Officer/Medical Support Team Leader in the Applicant Investigations Unit of DOC.  TAC ¶50.

### 2.    Duties and Responsibilities of Captains

In or about July 2015 Mumin earned the promotion of captain.  TAC ¶51. The duties of DOC employees holding the rank of captain are the same irrespective of their assignment and are set forth in DOC's Rules and Regulations. TAC ¶46.  That is the case, particularly with respect to captains assigned to work in facilities that house inmates.  TAC ¶¶ 109, 111-112.

DOC captains assigned to housing units, are assigned to work in an enclosed

office, which is located separate and away from the inmate housing area, and other facilities that service the inmates.  TAC ¶¶109, 111.  Captains assigned to housing units, such as the RND Complex and MHD are responsible for supervising approximately 25 correction officers in performance of their assignments; processing inmates for intake and discharge; reviewing court documents; securing orders, bail receipts, warrant checks; completing tour certification reports; ensuring equipment is accounted for; dispatching probe and response teams to alarms; and monitoring cameras.  TAC ¶¶ 109, 112.

Mumin's first assignment as captain was to work as Captain-Transitional Restorative Unit Supervisor at the RND Complex, one of DOC's facilities, which houses inmates on Rikers Island.  There, she performed the above described duties of captain working in a housing facility.  TAC ¶¶52, 111-112.

Other captains assigned to housing units such as---captain Janelle Murray, a Christian who was assigned to the RMD Complex and Christian Doninelli, a Catholic who was assigned to MHD also performed the above described duties during their tenure in those units.   TAC ¶¶ 105, 107-108, 110. Mumin continued to perform the foregoing described duties of captain, when DOC assigned her to work as Captain-Mentor Supervisor at the RND Complex. TAC ¶¶53, 111-112.

### 3.    Mumin's Limited Duty Assignment

On or about November 11, 2020, while assigned as Captain-Mentor Supervisor at the RND Complex, Mumin sustained a work related injury to her  right knee, and  was

determined to be not medically fit to perform the full duties of captain.  TAC ¶¶54-55.

DOC then assigned Mumin, in or about May 2021, to work in the Health Management

Division of the DOC (HMD), as Captain-Supervisor/Tour Commander of HMD. TAC

¶¶55-56.

DOC continued Mumin's assignment as Captain-Supervisor/Tour Commander of

HMD until on or about January 2, 2022, when they placed her on involuntary leave

without pay and thereafter terminated her employment.  TAC ¶57.  HMD unlike the RND

Complex and MHD does not house inmates. TAC ¶¶ 58-59, 61.  Mumin's duties in HMD

did not require her to come in contact with inmates.  TAC ¶¶ 60- 61. Her duties also

involved creating spreadsheets and reports, and compiling data regarding uniformed and

non-uniformed employees of DOC, who reported sick. TAC  ¶60. Mumin  and the HMD

staff whom she supervised were all assigned and worked in individually separated

cubicles, with each cubicle separated by wall partitions. TAC ¶ 62.

As Captain-Supervisor/Tour Commander of the HMD, Mumin  supervised

approximately 20 uniformed employees or correction officers, specifically the medical

staff, consisting of three persons, who worked at the HMD under a contract with the

Defendants, to provide medical services to DOC.  TAC ¶¶ 58-62.

Among the medical staff which Mumin supervised was Kelly Persad, a nurse

assigned to HMD.  TAC ¶¶ 121-122.  Kelly Persad's duties included taking vital signs,

conducting EKGs, hearing and vision tests of uniformed and non-uniformed DOC

employees, and clearing uniformed employees to return to work, following leaves of absences. TAC ¶¶ 123-124. She interacted with approximately 50 persons, during each of her shifts. TAC ¶123.

While still assigned as Captain-Supervisor Tour Commander of HMD, on or about July 7, 2021, Mumin underwent knee surgery and went on medical leave. TAC ¶¶ 63-64.

**B.    Defendants' COVID Vaccine Mandate**

In or about August 2021, the Defendants announced that their employees, including DOC employees had to obtain the COVID vaccine, or alternatively undergo weekly COVID testing and submit weekly negative PCR test results, in order to continue working for the DOC. TAC ¶ 65.

**1.    Defendants' COVID Vaccine Accommodation Policy**

In or about October 2021, the Defendant City of New York announced that all City of New York employees, including those working for DOC would be required to be vaccinated against the corona virus. TAC ¶ 66. The DOC also announced in or about October 2021, that it would provide exemptions or accommodations from the vaccine mandate, based on the employee's medical condition, religion or religious beliefs. *id.*

On or about November 8, 2021, the Defendants and specifically Vincent Schiraldi (Schiraldi), the then Commissioner of DOC, issued Teletype Order No. HQ-02642-0. TAC ¶ 75. The Teletype Order which remained in effect during the entire time Mumin

was employed with Defendants and continued in effect following her termination, stated that weekly testing and submission of negative PCR results, was the only accommodation that would not cause the DOC undue hardship.  TAC ¶¶76-77.

### 2.    Defendants' Treatment Of Mumin's Request For A Religious Accommodation

On or about October 22, 2021, while Mumin was on medical as a result of her right knee surgery, and before Schiraldi issued Teletype Order No. HQ-02642-0 (Teletype Order), she  submitted a completed Request for Accommodation Form, requesting a religious accommodation or exemption from the COVID vaccine mandate, based on her Islamic religion, which prohibits her from being vaccinated against all conditions, ailments and impairments, including the corona virus.   TAC ¶69.  Mumin was the only captain employed with DOC who requested an accommodation based on her practice and observation of the Islamic religion.  TAC ¶ 30.

One day after issuance of the Teletype Order, on November 9, 2021 Mumin reported to work from her leave.  TAC ¶78.  In order to begin working Mumin underwent testing for the COVID virus, and upon submitting a negative PCR test result was permitted to resume performing the duties she previously performed as Captain-Supervisor/Tour Commander in the HMD, before her medical leave of absence.  TAC ¶¶78-79.  Mumin continued to undergo the weekly testing for the COVID virus, and submitted weekly negative PCR test results until January 2, 2022, when the Defendants

placed her on Leave Without Pay.  TAC ¶80.

In her request for an accommodation from the vaccine mandate, Mumin did not demand that the Defendants provide her with a particular accommodation, but instead indicated that she was willing to undergo the weekly COVID testing and submit weekly PCR testing results described in Teletype Order, as an accommodation for her religion and religious beliefs.  TAC ¶¶ 82-83.

The Defendants did not meet with Mumin, did not make themselves available to answer questions, Mumin had regarding the accommodation process, refusing to engage in the interactive process regarding her accommodation request. TAC ¶¶70, 87.  At the time that Mumin submitted the Request for Accommodation Form, the Defendants were aware that she was assigned to work in HMD, as a result of her job related injury and that by virtue of that assignment, did not have any contact with inmates or the public.  TAC ¶¶71-74.

Beginning on or about November 8, 2021 when Mumin returned to work from medical leave, she had been tested weekly for the COVID virus and had submitted weekly negative PCR test results.  She continued to undergo the weekly COVID testing and submitting weekly negative PCR test results to DOC through January 2, 2022, when the Defendants placed her on Leave Without Pay.  TAC ¶¶84-85.

The Defendants denied Mumin's request for a religious accommodation from the COVID vaccine mandate, despite the fact that there was available at least one reasonable

13

accommodation that they admitted would not cause them undue hardship. TAC ¶88.

While the Defendants purported to portray their review and determination of Mumin's accommodation request as a purported particularized assessment of the request, they did not conduct any such particularized assessment of Mumin's request to determine whether granting the request would cause DOC undue hardship. TAC ¶¶89-91.

On or about July 15, 2022, Defendants announced, declared and admitted the true reason for their denial of her request. Their decision to deny her request was done pursuant to their blanket policy of denying all Muslim DOC employees' religious accommodation requests. TAC ¶¶ 91-92. In fact, on that date they admitted that no request for an accommodation made by any Muslim DOC employee, based on the employee's practice and observation of Islam had been granted and would be granted, including Mumin's request. *id.*

The reason Defendants gave for this blanket denial of Muslim employees' religious accommodation requests was that if they granted those requests, purportedly they would have to grant the religious accommodations requests of all DOC employees who sought an accommodation based on their Islamic religion. TAC ¶ 89.

Accordingly, Defendants denied Mumin's appeal of their decision, gave her until December 22, 2021 to submit proof that she had obtained the COVID vaccine, threatened to place her on leave if she did not obtain the vaccine, then placed on leave

14

without pay effective January 2, 2022.  TAC ¶¶ 93-96. Approximately one month

thereafter, on February 11, 2002, Defendants terminated Mumin's employment.  TAC

¶¶97-98, 132.

### 3.    Defendants' Treatment Of Other Religious Accommodations Requests

Defendants treated and responded to the requests of non-Muslim employees for a

religious accommodation and more specifically DOC employees who sought an exemption

from the vaccine mandate based on their Christian beliefs, quite differently from the

treatment and response Mumin and other Muslim employees received. Defendants granted

the religious accommodations requests of non-Muslims, permitting them to continue

working unvaccinated, in facilities that housed inmates.  Defendants granted their

accommodation requests of weekly testing and submission of negative PCR test results.

For example, Defendants granted the accommodation requests of a captain and a

correction officer, assigned to the RND Complex.  That is the housing facility to which

Mumin was assigned before being placed on limited duty.  Defendants granted the

religious accommodation requests of captain Janelle Murray (Murray), and correction

officer Abad, who were both assigned to the RND Complex, based of their asserted

conflict of Christian beliefs with the vaccine mandate.  TAC ¶¶105-107, 109-112, 120.

In the case of another Christian correction officer assigned to the RND Complex,

specifically correction officer Randazzo, Defendants did not bother to respond to his

religious accommodation request and instead just permitted him to continue working at that housing complex, while submitting to weekly testing and submitting PCR test results. TAC ¶¶117-118.  Defendants also did not take any action against Randazzo for not obtaining the vaccine or providing proof of having obtained the vaccine, such as placing him on unpaid leave and/or terminating his employment, as they did with Mumin.  *id.*

At the MHD, Defendants granted the religious accommodation request of captain Christian Doninelli (Doninelli), based on his Catholic beliefs, permitting him to work unvaccinated, while submitting to weekly testing and submitting PCR test results.  TAC ¶¶105, 108-112.  However, when correction officer Kenneth Harrison (Harrison), who also was assigned to MHD but was a practicing Muslim, requested the same religious accommodation (as Doninelli) based on his Islamic beliefs, Defendants denied his request, citing alleged undue hardship.  TAC  ¶119.

### 4.    Defendants' Treatment Of Medical Accommodation Request

As to DOC employees not assigned to work in facilities that house inmates, Defendants also treated those employees more favorably that Mumin.  Kelly Persad (Persad) is one such employee.  She was one of the nurses Mumin supervised during her tenure in HMD.  TAC ¶¶ 57-59, 121-122.  Defendants granted Persad's request for a medical accommodation, permitting her to submit to weekly testing and submitting PCR test results, despite the fact that at HMD, she had more direct and substantial interactions with DOC employees than Mumin.  TAC ¶¶ 122-124.

Nurse Persad was charged with taking the vital signs, conducting EKGs, hearings and vision tests of uniformed and non-uniformed employees, and clearing uniformed employees' return to work from various leaves.  TAC ¶124.  Nurse Persad interacted with approximately 50 persons during each of her shifts, including uniformed personnel such as wardens, captains, correction officers, and non-uniformed staff such doctors, nurses, counselors and teachers.  TAC ¶123.

Mumin on the other hand, while in HMD supervised approximately 20 uniformed employees or correction officers, and the three members of the medical staff. TAC ¶¶ 58-59.

In sum, Defendants denied Mumin's religious accommodation request and Harrison's accommodation request, in accordance with their policy of blanket denials of all Muslim's religious accommodation requests.  TAC ¶90.

Defendant Molina was aware of the foregoing practice of issuing blanket denials of religious accommodation requests submitted by Muslim employees, such as Mumin and Harrison, yet failed and refused to take any action regarding the foregoing discriminatory practice.  TAC ¶¶ 125-126.  As a result, on or about February 11, 2022 approximately one month after the Defendants placed Mumin on Leave Without Pay, they terminated her employment.  TAC ¶132.

## ARGUMENT

## POINT I

## DEFENDANTS DENIED MUMIN'S REQUEST FOR A REASONABLE ACCOMMODATION FROM THE VACCINE MANDATE BASED ON HER MUSLIM BELIEFS AND PRACTICES

Defendants seek dismissal of Mumin's failure to accommodate claims on the ground that providing her with the accommodation of weekly COVID testing, DOC provided to non-Muslim employees, would cause an undue hardship.

They first discuss the prima facie showing Mumin allegedly must make with respect to her failure to accommodate claim, when she does not have to make such a showing to withstand their motion to dismiss her Title VII claim.  *Lowman v. NVI LLC,* 821 Fed. Appx. 29, 31 (2d Cir. 2020) (summary order); *Mumin v. City of New York*, 760 F. Supp. 3d 28, 45-46 (S.D.N.Y.  2024)(citations omitted)*; Herman v. City of New York*, 2023 WL 6386887 at *6-7,  21 CV 6295 (S.D.N.Y. Sept. 29, 2023)[citing *Vega v. Hempstead Union Free School District,* 801 F. 3d 72, 85 (2d Cir. 2014)];*Vasquez v. City of New York*, 2024 WL 1348702 at *5, 22 CV 05068 (E.D.N.Y.  Mar. 30, 2024).

The allegations that the plaintiff  "actually" requires a religious accommodation and that "the employer's desire to avoid the prospective accommodation [was] a motivating factor in [an employment] decision" are sufficient to defeat a motion to dismiss. *Lowman,* 821 Fed. Appx. at 31 [quoting *Equal Opportunity Commission v. Abercrombie & Fitch*

18

*Stores, Inc.*, 575 U.S. 768, 774  (2015)]; *Mumin*, 760 F. Supp. 3d at 46.  Here, the TAC

alleges that Defendants refused to provide Mumin with an accommodation for her Muslim

beliefs, and instead placed her on an involuntary leave without pay, then terminated her

employment.  These allegations are sufficient to withstand Defendants' motion to dismiss,

as well as present a prima facie case of religious discrimination. *Mumin*, 760 F. 3d at 46;

*Rizzo v. City Dept. of Sanitation*, 2024 WL 3274455 at *3, 23 CV 7190 (S.D.N.Y. Jul. 2,

2024).

The foregoing allegations also meet the more liberal pleading standard applicable to

Mumin's NYSHRL and NYCHRL claims of failure to accommodate, and sufficiently

allege a failure to accommodate claim against the Defendants.  *Herman,* 2023 WL

6386887 at * 7; *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y.

2020)(claims under the NYSHRL which arose after October 2019 are analyzed under the

same broad standard applicable to NYCHRL claims); *Lehey v. Northwell Health Inc.,*

2024 WL 1703697 at * 23 CV 04708 at * 3 (S.D.N.Y.  Apr. 19, 2024)[effect amendment

of NYSHRL on August 2019 "is to make the standard for NYSHRL claims closer to the

more liberal standard of . . . [the NYCHRL]," (citation omitted].

Defendants also incorrectly assert that Mumin does not allege she has a sincere

religious belief that conflicted with the vaccine mandate, when the TAC clearly asserts

that "her Islamic religion, . . . prohibits her from being vaccinated against all conditions,

ailments and impairments, including the corona virus."  TAC ¶ 69.

19

These allegations sufficiently allege Mumin had a sincere religious belief, which

conflicted with the mandate.  *See, Patrick v. LeFevre*, 745 F. 2d 153, 158 (2d Cir. 1984);

*U.S. v. Allen,* 760 F. 2d 447, 449-450 (2d Cir. 1985); *Algarin v. NYC Health+Hosp.*

*Corp.,*678 F. Supp. 3d 497, 508 (S.D.N.Y.  2023), *aff'd,* 2024 WL 1107481 (2d Cir. Mar.

14, 2024).[5]

Defendants next seek dismissal of the TAC based on their assertion of undue

hardship.  They do so by asking the Court to consider the contents of extrinsic documents

annexed to the Declaration of their attorney, specifically what their attorney described as

an October 20, 2021 Order of the Commissioner of Health and Mental Hygiene

(Commissioner's Order), the Teletype Order and Defendants' denial letter dated

November 10, 2021 (denial letter).[6]  They advance their incorporation argument as a

means to assert that undue hardship allegedly appears on the face of the TAC.

Mumin submits that neither the Commissioner's Order nor the denial letter is not

incorporated in the TAC.  Neither the Commissioner's Order nor the denial letter is

mentioned, referred to or discussed in the TAC.  Nor do Defendants point to any

---

[5]  Defendants in their Brief cite to the allegation in paragraph 69 of the TAC which
describes the conflict between Mumin's religious beliefs and the vaccine mandate.  *See,*
*Defendants' Brief at 3.* Yet they ignore it to challenge Mumin's sincerely held beliefs, by citing
the allegation in paragraph 95 of the TAC.  *Defendants' Brief at 6.* They further ignore the fact
they did not  challenge Mumin's Muslim beliefs in connection with their decision denying her
religious accommodation request.

[6]  Defendants assert that the Court may take judicial notice of the Commissioner's Order.
Mumin does not challenge their argument regarding judicial notice of the Commissioner's Order,
but maintains that it is not incorporated in the TAC for the reason discussed herein.

allegation or statement in the TAC which mentions, refers to or discusses those documents.

With respect to the denial letter, on which Defendants appear to exclusively rely to advance their argument of undue hardship, there are no allegations in the TAC regarding the letter and therefore, the TAC is unlike the SAC filed in this case. In granting Defendants' dismissal motion, this Court considered the denial letter because "its contents were incorporated by reference in the Complaint. SAC ¶¶ 104-106, 112-116." *Mumin,* 760 F. Supp. 3d at 46. The paragraphs and the allegations set forth in the paragraphs cited in this Court's decision, described the denial letter, and provided details regarding its contents. *See, ECF Doc. # 45 at 19-21.*

In contrast, the TAC is silent with respect to the denial letter. The Court should reject Defendants' argument that the denial letter was incorporated in the TAC. *Lynch v. City of New York*, 952 F. 3d 67, 75, 79 (2d Cir. 2020); *Lively v. Wafra Investment Advisory Group Inc.,* 6 F. 4th 293, 301 (2d Cir. 2021).

Even if the Court were to consider the denial letter, as incorporated in the TAC and rule that the defense of undue hardship appears on the face of the TAC, the Defendants' conduct, as articulated in the TAC, contradicts and undermines their assertion of undue hardship, as a basis for denying Mumin's accommodation request. Defendants do not address these contradictions in the motion to dismiss.

The allegations in the TAC that it was not an undue hardship for Defendants to

grant the same accommodation Mumin requested when made by non-Muslim employees who worked in facilities that housed inmates, and who had substantial interactions with each other, the inmates, and the public, undermine and contradict their assertion of undue hardship and warrant denial of their motion. *See, e.g. Sughrim v. State of New York,* 503 F. Supp. 3d 68, 79, 97 (S.D.N.Y. 2020). There the Court denied defendants' motion to dismiss plaintiffs' Title VII failure to accommodate claims. The defendants had among other things, denied the religious accommodation requests of Muslim officers to wear beards, while permitting and granting non-Muslim officers right to do so.

Pointing to the contents of the denial letter, Defendants stress alleged safety concerns of the DOC for other employees, the inmates at the housings facilities and the public, as the reason for not permitting Mumin to work unvaccinated. Defendants further argue that providing Mumin with an accommodation would present a "direct threat" to their health and safety, since Mumin would interact with other employees, the inmates and the public, while unvaccinated. According to Defendants, weekly testing and submitting negative PCR test results, would not and could not mitigate DOC's alleged safety concerns.

Despite these alleged safety and health concerns DOC voiced, DOC did permit "members of the service" who worked in facilities which house inmates, and which require their interaction with the inmates, other DOC employees assigned to those units, and the visiting public, to work unvaccinated. With respect to those employees permitted

22

to work unvaccinated, their weekly PCR testing apparently mitigated and addressed Defendants' alleged health and safety concerns, while inexplicably,  Mumin's proposed weekly PCR testing did not and would not.

Defendants permitted captain Murray and correction officer Abad, to work unvaccinated at the RND Complex, the facility which houses inmates and where Mumin worked, before being placed on limited duty.  Defendants granted the religious accommodation requests or exemptions from the vaccine mandate of Murray and Abad, based of their assertions of a conflict of their Christian beliefs with the vaccine mandate. TAC ¶¶105-107, 109-112, 120.  This was the same accommodation Mumin requested while working on limited duty in HMD, and which Defendants purportedly claim cause them undue hardship to grant.

Defendants permitted correction officer Randazzo, a Christian who also was assigned to the RND Complex, to work unvaccinated.  In fact, with respect to his religious accommodation request to submit to weekly testing, Defendants did not bother to respond to his religious accommodation request and instead just permitted him to continue working unvaccinated at that housing complex.  TAC ¶¶117-118.  Defendants also did not take any action against Randazzo for not obtaining the vaccine or providing proof of having obtained the vaccine, such as placing him on unpaid leave and/or terminating his employment, as they did with Mumin.  *id.*

Defendants permitted captain Doninelli, a Catholic who was assigned to the MHD,

another inmate housing facility to work unvaccinated.  They granted his religious

accommodation request to work unvaccinated, while submitting to weekly testing and

submitting PCR test results.  TAC ¶¶105, 108-112.  Yet, they denied and declined to grant

the religious accommodation request of correction officer Harrison, a practicing Muslim

assigned to the same housing facility as Doninelli—MHD.  Defendants required Harrison

to obtain the vaccine in order to keep his job, despite the fact that he requested the same

accommodation that they granted Doninelli. TAC  ¶119.

     As to Defendants' alleged concern regarding Mumin's "level of interaction" with

DOC employees and staff "responsible for overseeing the health" of DOC and the inmates,

they had no such concerns with permitting an unvaccinated member of the HMD staff,

specifically nurse Persad, to work unvaccinated, while she examined uniformed and

uniformed DOC employees and cleared them to return to work from their various leaves

of absences. TAC ¶¶ 124-125.

     With respect to their alleged concerns about Mumin being reassigned to work at

one of the housing facilities, they permitted unvaccinated captains as well as correction

officers to work at those facilities, granting them the accommodation Mumin requested.

The Defendants' professed health and safety concern was pretextual and the Court should

deny their motion. *Sughrim,* 503 F. Supp. 3d at 97.

     Other cases, decided in the context of a motion for summary judgment are

instructive and also support denial of Defendants' motion. *See, Bergin v. NYS Unified*

*Court Sys.*, 2024 WL 4444434 at \*4, 22 CV 5265 (S.D.N.Y. Oct. 8, 20024).  In *Bergin*, the

Court ruled that granting plaintiff's religious accommodation would not have posed an

undue hardship, since defendants granted other religious accommodations requests,

"permitting accommodations of the same sort requested by plaintiff."  *See also, Cox v.*

*Northwest Regional Educ. Serv. Dist.,* 2024 WL 777598 at \*12-13, 22 CV 01073 (Feb. 23,

2024)("a jury could conclude from the fact that in person work was allowed for other

student-facing employees that it would not have been an undue hardship to allow Plaintiffs

to do so as well").

In addition to the foregoing facts, which demonstrate the pretextual nature of

Defendants' asserted undue hardship, the Defendants on July 15, 2022, made clear the real

reason they denied Mumin's religious accommodation request and the religious

accommodation requests of all other Muslim DOC employees.  TAC ¶92.

On or about July 15, 2022, Defendants declared and admitted that they denied

Mumin's religious accommodation request, based on their blanket policy of denying all

Muslim employees' religious accommodation requests.  *id.* On or about July 15, 2022,

Defendants admitted that no request for an accommodation made by any Muslim, where

the Muslim employee's request was based on a conflict between the vaccine mandate and

the employee's Islamic faith had been granted and would be granted. *id.*   Defendants

made the foregoing declaration in response to Mumin's EEOC charge of employment

discrimination, declaring it in their Position Statement, dated July 15, 2022.

However, Defendants did not indicate how or why granting Mumin's accommodation request, particularly since she was the only Muslim captain who requested a religious accommodation request, would require them to grant the religious accommodation requests of all other Muslim DOC employees.  TAC ¶30.  They merely made the assertion.

### Qualified Immunity Does Not Save Molina From Liability

Liability for the foregoing discriminatory practice of the Defendants in addition attaching to the City of New York also attaches to Molina, as Commissioner of the DOC. He is not save by Defendants' argument regarding qualified immunity.  Defendants incorrectly assert that Molina is sued in his individual capacity, when that is not the case. TAC ¶¶153-161.  He is sued in his official capacity. Accordingly, their argument that liability does not attach to Molina because allegedly he was not "personally involved" in the conduct at issue does not apply to Mumin's official capacity claim against him.  *See, Williams v. Smith*,781 F. 2d 319, 323 (2d Cir. 1986)(discussing ways in which plaintiff may satisfy the personal involvement requirement for individual capacity claim asserted pursuant to of 42 U.S.C. § 1983).

The TAC plausibly alleges that Molina deprived Mumin of her equal protection rights, pursuant to the declared and admitted DOC policy of not granting but instead denying all religious accommodation requests of Muslim employees.  TAC ¶ 92.  The DOC not only announced existence of the policy on July 15, 2022 in their response to

26

Mumin's Title VII charge, they further declared that it had been applied to Mumin's accommodation request. *id.*   Contrary to Defendants' argument this is not a "general" allegation," but a specific description of the statement and conduct of the DOC with respect Muslim employees seeking religious accommodations.[7]

As demonstrated by the then Commissioner of DOC issuing the Teletype Order, the Commissioner was intricately involved in overseeing the DOC's COVID vaccination. See Exhibit C annexed to Declaration of Ilona Ehrlich.  It was the Commissioner of the DOC who issued the DOC vaccination policy, including establishing the "weekly testing and submission of negative PCR results" as the "only allowable accommodation from the vaccine mandate that will not cause undue hardship and/or disruption of the Department." *id.*

When the DOC gave notice of the policy of denying the religious accommodation requests of all Muslim's, including Mumin's request, it was merely announcing a policy that had been considered, established and approved by the DOC Commissioner. On or about January 1, 2022, when Molina replaced Schiraldi as Commissioner, he continued that policy, as demonstrated by the July 15, 2022 articulation by DOC to the EEOC.  The policy was still in effect during his tenure, and it resulted in Mumin being placed on involuntary leave without pay and subsequent termination.

---

[7] Defendants argue that the denial letter, which the TAC does not mention or refer to, was incorporated in the TAC and should be considered on their motion to dismiss.  They make no such argument regarding their July 15, 2022 Position Statement submitted to the EEOC in response to Mumin's Title VII charge, which unlike the denial letter is discussed in the TAC.

The foregoing satisfies the requirement to impose liability on Molina, pursuant to

Section 1983. *See, Stern v. City of New York,* 2015 WL 918754 at *3, 12 CV 5210

(S.D.N.Y. Mar. 3, 2015)("decision by a municipal policymaker on even a 'single occasion'

may expose the municipality to Section 1983 liability")(citations omitted); *Sughrim*, 503 F.

Sup. 3d at 93-94 ("Plaintiff's allegations that Defendants selectively enforced the

grooming policy against them because of their religion suffice to plead a violation of

clearly established law").  It also should be noted that DOC began providing the vaccine

exemptions in or about 2021, then approximately two years later, in or about February

2023, rescinded the vaccine mandate.  TAC ¶134.[8]

Molina is not absolved of liability by virtue of qualified immunity, as that principle

does not apply in this case.  Molina is not sued in his official capacity, but instead as the

DOC Commissioner.  He cannot assert and is not entitled to assert qualified immunity for

his wrongful conduct.  *See, Ying Jin Gan v. City of New York*, 996 F. 2d 522, 529 (2d Cir.

1993)[citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)]; *Sadallah v. City of Utica*, 383 F. 3d

34, 37 (2d Cir. 2004).

Even if he could assert that principle, it does not apply where as here Molina

violated clearly established law that prohibits discrimination based on an employee's

religion. *Ying Jin Gan*, 996 F. 2d at 531-532; *Sughrim*, 503 F. 3d at 93.

The allegations asserted against Molina also meet the "but for" standard applicable

---

[8]  Thus the practice was limited to this approximately two year time period.

to the section 1983 claim. The "but for" standard does not require that the impermissible factor be the sole factor or reason for Molina's conduct, but instead is satisfied where the TAC alleges that the employment action would not have occurred without it. *See, e.g. Delaney v. Bank of America*, 766 F. 3d 163, 169 (2d Cir. 2014)(applying standard to age discrimination claim). The TAC meets the "but for" standard in that it alleges in addition to denying Mumin the same accommodation requests they granted to non-Muslim employees, Defendants admitted that they denied her request and the religious requests of other Muslims, because of their Islamic religion.

### POINT II

### DEFENDANTS SUBJECTED MUMIN TO DISPARATE TREATMENT BASED ON HER RELIGION

Although Defendants refer to a disparate impact claim, which Mumin does not assert, they appear to be seeking dismissal of the asserted disparate treatment claim on the ground that there is no inference of religious discrimination. A review of the allegations in the TAC yields the opposite conclusion.

Defendants advance an argument for dismissal that several courts including this Court have consistently rejected. The argument they advance is one that usually is asserted to challenge a failure to accommodate claim. They argue that there is no inference of religious discrimination allegedly because they did not terminate Mumin for

her religious belief, but instead for not obtaining the COVID vaccine. *Defendants' Brief at 14.*

This Court rejected that argument in its decision dismissing the SAC. The Court said that "a plaintiff's complaint that her defendant-employer suspended her without pay and ultimately terminated her employment because she did not. . . [get the vaccine] due to conflicting sincerely held religious beliefs" [sufficiently pleads] the final element of a prima facie case of religious discrimination for failure to accommodate." 760 F. Supp. 3d at 46 (citations omitted).

Defendants do correctly set out the showing Mumin must make to defeat their motion to dismiss her disparate treatment claim, as articulated by the Second Circuit in *Vega v. Hempstead Union Free Sch. Dist.*, 801 F. 3d 73, 84 (2d Cir. 2015). The TAC meets the standard applicable to Mumin's discrimination claim in that the TAC plausibly alleges that Defendants took adverse action against her and her religion was a motivating factor in their actions.

Defendants required Mumin to obtain the COVID vaccine, denied her request to submit weekly testing, while either granting the requests of non-Muslim employees and permitting them to work unvaccinated. Defendants also denied the requests of other Muslim DOC employees such a Harrison. In fact, on July 15, 2022, Defendants admitted that they had denied and would continue to deny all Muslim employees' religious accommodation requests.

30

They foregoing statements are not speculation, surmise or conjecture.  The TAC specifically identifies the non-Muslim employees who received more favorable treatment that Mumin and Harrison and against whom Defendants took no action despite their unvaccinated status.

Defendants permitted practitioners of the Christian religion, such captain Murray, correction offices Abad and Randazzo, to work unvaccinated at the RND Complex, the facility which houses inmates and where Mumin worked, before being placed on limited duty.  Granting Murray and Abad, the same religious accommodation Mumin requested, while not taking action with respect to Randazzo's request, but permitting her to continue working unvaccinated.

They also permitted captain Doninelli, a Catholic who was assigned to the MHD, another inmate housing facility to work unvaccinated, granting him the same accommodation Mumin requested.  Yet they denied and declined to grant that accommodation to correction officer Harrison, a practicing Muslim assigned to the same housing facility as Doninelli—MHD.  In the HMD facility where Mumin was assigned, they also granted nurse Persad, the same accommodation Mumin requested.

In accordance with the principle that Mumin does not have to assert a prima facie case of religious discrimination, to withstand Defendants' dismissal motion, the absence that requirement applies particularly to comparators, and the comparators discussed in this case. *See, Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills,* 815 F. Supp. 2d 679,

696-698 (S.D.N.Y. 2011).

The relevant factors in this case are the comparators' interaction with other DOC employees, inmates and the public, since these are the factors Defendants claimed to have considered in reviewing and determining whether employees could work unvaccinated, while submitting weekly PCR test results.

Mumin was similarly situated to nurse Persad, in that she worked in HMD and interacted with some, but not all of the persons with whom nurse Persad interacted. In the case of Persad she had more direct and substantial interaction with DOC employees, given her responsibility of examining them to clear them for return to work. Despite Persad's more direct and substantial interaction with DOC employees, Defendants permitted her to work unvaccinated, while denying Mumin's request.

The same is true with respect to the other comparators. If as Defendants maintain, Mumin may have been reassigned to work in a housing facility, as a captain at that facility, the level of interaction she would have had with other DOC employees, inmates and the public would have been the same as captains Murray and Doninelli. Yet Defendants permitted them to work unvaccinated at those facilities.[9]

---

[9] The cases Defendants cite regarding comparators are distinguishable. Here Mumin provides details regarding the captains and officers, while some of the cited the plaintiff failed to do so. *See, Greenberg v. Visiting Nurse Servs. of Westch. Inc.,* 2024 WL 4252550 at * 10, 23 CV 04252 (S.D.N.Y. Sept. 19, 2024). In others the plaintiff meet the motion to dismiss pleading standard regarding comparators. *See Thompson v. City of New York,* 83 Misc. 3d 1213(A)(Sup. Ct. Kings Co. Jun. 11, 2024)(plaintiff's allegation that comparators worked in the same precinct and were charge with similar offenses sufficient to raise inference of racial discrimination).

Defendants permitted similarly situated employees to work unvaccinated, permitting them to submit weekly PCR test results, while denying Mumin that opportunity, warranting denial of their motion to dismiss. *See, Makhsudova v. City of New York*, 2022 WL 1571152 at *6, 20 CV 10728 (S.D.N.Y. May 18, 2022)(denial of plaintiff's religious time off request while granting time off requests of employees of a different of religion to raise inference of discrimination). *See also, Sughrim*, 503 F. Supp. 3d at 97; *Tyson v. Town of Ramapo*, 2019 WL 1331913 at *15, 17 CV 499 (S.D.N.Y. Mar. 25, 2019); *Herman v. City of New York*, 2023 WL 6386887 at * 7 (S.D.N.Y. Sept. 29, 2023).[10]

---

[10]   *See also, Oncale v. Sundower Offshore Servs. Inc.,* 523 U.S. 75, 76, 79-80.  Despite the fact that plaintiff was unable to find and identify similarly situated co-workers, the Court still found that he had been subject to sexual discrimination by a review of the underlying circumstances and how plaintiff was treated.  Such a review of what Defendants did and said with respect to Mumin and other DOC employees also supports Mumin's claim that she was subject to disparate treatment because of her religion.

33

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests denial in its entirety,

the motion of the  Defendants to dismiss the Third Amended Complaint.

Dated:        New York, New York
              June 12, 2025


                              Respectfully submitted,


                              LAW OFFICE OF SANDRA D. PARKER

                              By:     /s/ Sandra D. Parker
                                    Sandra D. Parker
                                    110 East 59th Street, 22nd Floor
                                    New York, NY 10022
                                    (212) 317-2883
                                    parkefirm@aol.com
                                    Attorney for Plaintiff

34

## **CERTIFICATION OF WORD COUNT**

Sandra D. Parker, hereby certifies pursuant to paragraph 3.C of the Court's

Individual Rules of Practice in Civil Cases this document complies with the word count

limit of requirement in that  excluding the parts of the document exempted this document

contains 7974 words.


Dated:        New York, New York
              June 12, 2025


                                        /s/ Sandra D. Parker_____