UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AYANA F. MUMIN,<br><br>                              Plaintiff,<br><br>        -against-<br><br>THE CITY OF NEW YORK and LOUIS A.<br>MOLINA, individually and in his official capacity as<br>Commissioner of the New York City Department of<br>Correction,<br><br>                              Defendants. | Case No. 1:23-cv-03932 (JLR)<br><br>**<u>OPINION AND ORDER</u>** |

JENNIFER L. ROCHON, United States District Judge:

In 2021, Plaintiff Ayana F. Mumin ("Mumin" or "Plaintiff"), then an employee of the

New York City Department of Corrections ("DOC"), requested an accommodation from the

DOC's COVID-19 vaccine mandate on the grounds that vaccination conflicted with her

religious practice as a Muslim. The DOC denied her request, and Plaintiff was eventually put

on leave without pay and then terminated as a result of her failure to comply with the

mandate. Plaintiff now asserts claims against the City of New York (the "City") and Louis A.

Molina ("Molina" and, together with the City, "Defendants") under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, related state and city laws, and 42 U.S.C.

§ 1983. *See generally* Dkt. 84 ("Third Amended Complaint" or "TAC"). The Court

previously granted Defendants' motion to dismiss the Second Amended Complaint for failure

to state a claim, but granted Plaintiff leave to amend. *See generally Mumin v. City of New*

*York*, 760 F. Supp. 3d 28 (S.D.N.Y. 2024) (*Mumin I*). Defendants now move to dismiss the

TAC for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

Dkt. 92. For the reasons stated below, the Court DENIES the motion to dismiss.

# BACKGROUND[1]

## I.    Procedural History

On March 11, 2022, Plaintiff filed charges with the U.S. Equal Opportunity Employment Commission (the "EEOC"), alleging that the City, the DOC, and Salesforce.com, Inc., "subjected her to discriminatory treatment in the terms and conditions of her employment, based on her religion, religious beliefs and gender."  TAC ¶ 8.  The EEOC issued a Notice of Right to Sue with respect to the charges asserted against the City and the DOC.  TAC ¶ 9.

Plaintiff subsequently filed this action on May 11, 2023, alleging violations of Title VII, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), as well as claims under 42 U.S.C. §§ 1981 and 1983.  Dkt. 3 ("Compl.").  On September 29, 2023, the EEOC also issued a Notice of Right to Sue with respect to the claims Plaintiff asserted against Salesforce.com, Inc. ("Salesforce").  TAC ¶ 11.  On October 10, 2023, the City, the DOC, and Molina moved to dismiss the Complaint.  Dkt. 16.  On October 31, 2023, Plaintiff filed a First Amended Complaint, principally adding more detail about her claims and alleging claims against Salesforce for violations of Title VII

---

[1] The facts stated herein are taken from the TAC, as well as documents integral to or incorporated by reference in the TAC — namely the City's vaccine mandate, the denial letter Mumin received on November 10, 2021, and DOC's November 8, 2021 Teletype Order regarding compliance with and accommodations from the City's vaccine mandate, Dkts. 93-1, 93-2, 93-3.  *See Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018); *Mumin I*, 760 F. Supp. 3d at 39 n.1 (explaining why the same documents were incorporated by reference or integral to the Second Amended Complaint).  While Plaintiff now argues that the Teletype Order and denial letter are not "mentioned, referred to or discussed in the TAC," Opp. at 20, this assertion is belied by the TAC itself, which repeatedly mentions the Teletype Order, *see* TAC ¶¶ 75-77, 81, 83, and refers to the denial letter, albeit more obliquely than in the SAC, *see id.* ¶¶ 81, 90.  These documents are, at a minimum, integral to the TAC and the Court has thus relied on these documents in evaluating the present motion to dismiss.

resulting from alleged religious and gender discrimination. *See generally* Dkt. 20 ("FAC");
Dkt. 20-1.

The City, the DOC, and Molina moved to dismiss the FAC on November 28, 2023.
Dkt. 27. The Court denied the motion to dismiss as moot without prejudice to refiling after
Plaintiff indicated her intent to file a Second Amended Complaint. Dkt. 43 at 1-2. Plaintiff
filed a Second Amended Complaint on February 15, 2024, that, among other things, dropped
the claims against the DOC. Dkt. 45 ("SAC"); *see* Dkt. 45-1. On March 14, 2025,
Defendants moved to dismiss the SAC, Dkt. 53, and on May 7, 2024, Salesforce moved to
dismiss the claims against it, Dkt. 65. After briefing by the parties, *see* Dkts. 55, 66, 68, 73,
74, 78, the Court granted the motions to dismiss but granted Plaintiff leave to amend, *see*
*Mumin I*, 760 F. Supp. 3d at 69.

On February 11, 2025, Plaintiff filed the TAC, which, among other things, dropped the
gender discrimination claims. *See generally* TAC; Dkt. 84-1. On March 6, 2025, the parties
filed a stipulation of voluntary dismissal against Salesforce, Dkt. 88, which the Court entered
on March 7, 2025, Dkt. 89. Defendants moved to dismiss the TAC on April 25, 2025.
Dkt. 92; Dkt. 93; Dkts. 93-1 to 93-3; Dkt. 94 ("Br."). Plaintiff filed her opposition on June
12, 2025, Dkt. 97 ("Opp."), and Defendants filed their reply on July 15, 2025, Dkt. 100
("Reply"). The motion is thus fully briefed.

## II.    Factual Background

Plaintiff, a former employee of the DOC, is African American and a practicing
Muslim. TAC ¶¶ 13-15. Plaintiff was employed at the DOC from November 2005 until
February 2022, first as a Correction Officer and then as a Captain. TAC ¶¶ 44, 49-51. After
Plaintiff became a Captain in July 2015, she was assigned to work as a Captain-Transitional
Restorative Unit Supervisor at the Robert N. Daveron Complex (the "RND Complex"), a

DOC facility that houses inmates on Rikers Island.  TAC ¶¶ 51-52.  She eventually became Captain-Mentor Supervisor at the RND Complex.  TAC ¶ 53.  On November 11, 2020, Plaintiff suffered a job-related injury to her knee, after which she was assigned to the Health Management Division (the "HMD") as a Captain-Supervisor/Tour Commander in May 2021. TAC ¶¶ 54-56.

As Captain-Supervisor/Tour Commander at the HMD, Plaintiff supervised approximately twenty uniformed employees or correction officers, as well as a three-person medical staff of contractors who worked at the HMD and provided medical services to the DOC.  TAC ¶¶ 58-59.  Her role also "involved creating spreadsheets and reports, and compiling data regarding uniformed and non-uniformed employees of [the] DOC" who reported sick.  TAC ¶ 60.  Plaintiff's duties did not "require[] [her] to have contact with the DOC inmate population or the public."  TAC ¶ 61.  Plaintiff, as well as her supervisees in the HMD, worked in individual cubicles, with each cubicle separated by a partition.  TAC ¶ 62. "[O]n or about July 7, 2021, Plaintiff underwent knee surgery and went on medical leave." TAC ¶ 63.

In August 2021, while Plaintiff was still on medical leave, Defendants announced a policy whereby City employees, including DOC employees, had to obtain the COVID-19 vaccine or undergo weekly testing.  TAC ¶ 65.  In October 2021, the City announced that it would require all City employees, including those working for the DOC, to be vaccinated against COVID-19 (the "Vaccine Mandate").  TAC ¶ 66.  Also in October 2021, the DOC announced that it would review and determine requests from employees who sought exemptions from the Vaccine Mandate based on their medical condition or religion. TAC ¶ 67.  The DOC required employees to submit a Request for Accommodation Form online to obtain an accommodation from the Vaccine Mandate.  TAC ¶ 68.

On or about October 22, 2021, while still on medical leave, Plaintiff submitted her Request for Accommodation Form, seeking a religious accommodation or exemption from the Vaccine Mandate "based on her Islamic religion, which prohibits her from being vaccinated against all conditions, ailments[,] and impairments, including the corona virus." TAC ¶ 69. On or about November 8, 2021, then–DOC Commissioner Vincent Schiraldi issued an order to all DOC employees (the "Teletype Order"), which set forth the Vaccine Mandate and the process for requesting a reasonable accommodation, and stated in part that "the only allowable accommodation from the vaccination mandate that will not cause undue hardship and/or disruption to the department is weekly testing and submission of negative PCR results." Dkt. 93-3 at 1; *see* TAC ¶¶ 75-76. On November 9, 2021, Plaintiff returned to work, underwent testing for COVID-19, and, upon submitting a negative PCR test result, was permitted to resume her duties at the HMD while her request was under consideration. TAC ¶¶ 78-79.

On November 10, 2021, Defendants informed Plaintiff that the DOC had reviewed her request and could not accommodate it, stating that providing Plaintiff with an exemption would cause "an undue hardship to the Department as it presents a direct threat to members of service, the public and those detained by the Department." Dkt. 93-2 at 1; *see* TAC ¶ 81. The letter further advised that:

> The facilities maintained by the [DOC] are often confined spaces with narrow passages that do not always allow for social distancing. The layout and the duration of time people spend near each other in the facilities allows for the easy transmission of COVID-19. Due to this, many Members of Service have contracted COVID-19 during the pandemic, and some Members of Service and detainees have died due to the virus. Furthermore, the Department interacts with visiting members of the public on a regular basis. Since the public frequently visits detainees and interacts with Members of Service, they may introduce COVID-19 into the facilities where it can be transmitted to Members of Service and to detainees within our custody.

Dkt. 93-2 at 1.  It also cited the risk of asymptomatic transmission and the concern that

"masks and weekly testing may be insufficient to control the spread of COVID-19 in the

Department."  *Id.*  It further noted that:

> The Department is currently operating with a severe shortage of staff at most
> jail facilities.  At various points over the last few months, more than a quarter
> of uniformed Members of Service have been out sick or have not appeared for
> work.  Due to these widespread staffing shortages, the Department has had to
> redeploy uniformed Members of Service at non-jail Commands to the jail
> facilities to fill the posts not manned due to the absences.  Therefore, it is an
> undue hardship to exempt Members of Service from the vaccine because many
> Members of Service have been out sick recently and the Department has had
> difficulty fully staffing the facilities.  The Department has a great need to make
> sure that Members of Service are healthy and manning their posts.

*Id.* at 1-2.

On November 16, 2021, "Plaintiff appealed the denial of her request for a religious

accommodation."  TAC ¶ 93.  On December 19, 2021, Plaintiff was informed that her appeal

had been denied, and she was given a deadline of December 22, 2021, to submit proof that she

had obtained the COVID-19 vaccine.  TAC ¶ 94.  Plaintiff was advised that she would be

placed on leave without pay if she did not comply with the Vaccine Mandate.  TAC ¶ 94.

Plaintiff did not comply with the Vaccine Mandate and was placed on leave without pay on

January 2, 2022.  TAC ¶ 96.  Defendants informed her that she would remain on leave without

pay until she provided proof of vaccination.  TAC ¶ 97.  From November 8, 2021, until she

was placed on leave on January 2, 2022, Plaintiff underwent weekly testing and submitted

negative PCR test results.  TAC ¶ 85; *see* TAC ¶ 84.

Because she was placed on leave without pay, Plaintiff lost her income and benefits,

and her retirement benefits were reduced.  TAC ¶ 98.  Plaintiff's position was terminated on

February 11, 2022, due to her noncompliance with the Vaccine Mandate.  TAC ¶ 132.

Plaintiff's termination allegedly contravened the DOC's policies that employees on leave

without pay are entitled to remain on leave without pay for at least a year without facing termination, and that DOC must keep that employee's position open and available for the employee on leave to resume at the end of the year.  TAC ¶¶ 127-128.  Plaintiff alleges that when Molina became Commissioner, he directed DOC personnel to disregard the leave policy for some subset of employees, but did not give the same directive with respect to DOC employees "on leave for reasons unrelated to the denial of their requests for a religious accommodation, including employees on medical leaves."  TAC ¶ 130; *see* TAC ¶ 129.

Plaintiff alleges that Defendants denied her accommodation request in accordance with their "policy of blanket denial of all Muslim's [*sic*] religious accommodation requests," and that the policy was "limited . . . to requests made by Muslim employees based on their Islamic faith."  TAC ¶ 99.  Plaintiff alleges that on July 15, 2022, "Defendants declared and admitted that they denied [her] religious accommodation request, based on their blanket policy of denying all Muslim employees' religious accommodation requests," and "admitted that no request for an accommodation made by any Muslim, where the Muslim employee's request was based on a conflict between the [V]accine [M]andate[]and the employee's Islamic faith[,] had been [or] would be granted."  TAC ¶ 92.  According to Plaintiff, Defendants granted religious accommodations for Christian DOC employees and permitted other, unvaccinated Christian DOC employees to keep their jobs even though they were not vaccinated.  TAC ¶¶ 100-105.  Plaintiff alleges that Molina was aware of the DOC's "practice of issuing blanket denials of religious accommodation requests submitted by Muslim employees," TAC ¶ 125, but "refused to take any action," TAC ¶ 126.

According to Plaintiff, Captains Janelle Murray and Christian Doninelli applied for accommodations from the Vaccine Mandate based on their Christian religious beliefs. TAC ¶ 105.  Plaintiff alleges that the DOC denied their requests, but did not place them on

leave without pay or subsequently terminate their employment, and that Murray and Doninelli instead underwent weekly PCR testing.  TAC ¶¶ 105-106.  Murray and Doninelli were assigned to the RND Complex and the Manhattan House of Detention (the "MHD"), respectively, both of which house inmates.  TAC ¶¶ 107-108.  Plaintiff now alleges that, as captains assigned to inmate housing, Murray and Doninelli worked in enclosed offices located separately from inmate housing, supervised and interacted with approximately twenty-five correction officers, processed inmates for intake and discharge, and performed other administrative tasks.  TAC ¶¶ 111-113.

Plaintiff also alleges that the DOC treated Christian correction officers more favorably than their Muslim counterparts.  DOC correction officers all have the same responsibilities, including "direct supervision for the care, custody and control [of] inmates," "maintaining accurate accountability of inmates under their supervision," "training inmate workers," "supervising inmate[s] in-house and at congregate meals," "supervising indoor and outdoor recreation," and "conducting strip searches" and "pat frisks of inmates and inmate property." TAC ¶ 114.  Correction officers at the RND Complex, the MHD, and other housing facilities interacted with approximately twenty-five other correction officers, along with their assigned captain, and "had more direct contact with the inmates than did the captains" because they were "assigned to be the first responders to issues involving inmates," like "fights" or "sick reports."  TAC ¶ 116; *see* TAC ¶ 115.  According to Plaintiff, Correction Officers Randazzo, Abad, and Kenneth Harrison each applied for accommodations based on their religious beliefs — Harrison based on his Muslim beliefs, Randazzo based on his Christian beliefs, and Abad based on her Catholic faith.  TAC ¶¶ 117, 119-120.  Randazzo and Abad were assigned to the RND Complex, while Harrison was assigned to the MHD.  TAC ¶¶ 117, 119, 120. Defendants did not respond to Randazzo's request but permitted him to remain unvaccinated

and submit to weekly PCR testing.  TAC ¶ 118.  Randazzo did not lose his job.  TAC ¶ 118.

Defendants granted Abad's accommodation request and permitted her to submit to weekly

PCR testing.  TAC ¶ 100.  However, Defendants denied Harrison's accommodation request.

TAC ¶ 119.

Plaintiff also alleges that Defendants granted the medical accommodation request of

Kelly Persad, a nurse assigned to the HMD.  TAC ¶¶ 121, 122.  Defendants permitted Persad

to undergo weekly PCR testing as an accommodation from the Vaccine Mandate.  TAC ¶ 122.

Persad's duties "involved interacting with approximately 50 persons during each of her shifts,

such as wardens, captains, correction officers, doctors, other nurses, counselors[,] and

teachers."  TAC ¶ 123.  She also took the vital signs of uniformed and non-uniformed DOC

employees, conducted EKGs, and performed hearing and vision tests, in addition to work

related to "clearing uniformed employees' return to work from various leaves."  TAC ¶ 124.

The Defendants eventually rescinded the Vaccine Mandate, effective February 10,

2023.  TAC ¶ 134.  In February 2023, Defendants announced that employees who had been

terminated because of their failure to comply with the Vaccine Mandate could reapply for

entry-level positions with Defendants, including the DOC, TAC ¶ 135, but they would have to

"start at the bottom of the employment ladder," TAC ¶ 136, rather than "return to [their]

former position[s]," TAC ¶ 137.

## LEGAL STANDARD

Under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." *Francis v. Kings Park Manor, Inc.*,

992 F.3d 67, 72 (2d Cir. 2021) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)).  The court draws all reasonable inferences in the plaintiff's favor and accepts as true

all nonconclusory allegations of fact.  *Id.*  However, a complaint must allege "more than a

sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (first quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); and then quoting *Twombly*, 550 U.S. at 557). Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

### I. Failure-to-Accommodate Claims Under Title VII, the NYSHRL, and the NYCHRL (Counts I, IV, and VI)

Plaintiff alleges that Defendants discriminated against her based on her religion in violation of Title VII, the NYSHRL, and the NYCHRL when they denied her request for an accommodation from the Vaccine Mandate and instead placed her on unpaid leave and then terminated her. TAC ¶¶ 141-142, 162-163, 170-172.

### A. Title VII Failure-to-Accommodate Claim (Count I)

The Court begins with Plaintiff's failure-to-accommodate claim under Title VII. To plead a Title VII claim for failure to grant a religious accommodation, a plaintiff "must plausibly allege that (1) he or she held a bona fide religious belief conflicting with an employment requirement; (2) he or she informed his or her employers of this belief; and (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023) (summary order) (alterations adopted) (quoting *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)). "Once a prima facie case is established by the employee, the employer must offer him or her a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Russo v. Patchogue-Medford Sch.*

*Dist.*, 129 F.4th 182, 186 (2d Cir. 2025) (quoting *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006)).

Defendants move to dismiss this claim, arguing that Plaintiff has not pleaded the first element of her *prima facie* case and that granting Plaintiff's request for an accommodation would have imposed an undue burden on the DOC.  Br. at 6.  The Court addresses each argument in turn.

### 1.  Prima Facie *Case*

Defendants briefly argue that "Plaintiff has failed to plead [that] she has a religious belief and practice that conflicts with the [Vaccine] Mandate" because the allegations in the TAC are merely "bald legal conclusions."  Br. at 6.  The Court is not convinced.

"[A]t the motion to dismiss stage[,] . . . the Court's review [of the first element] is heavily circumscribed," and "examines simply whether Plaintiff has alleged that her 'espoused beliefs do in fact stem from religious convictions.'"  *Matos v. Discovery Commc'ns, LLC*, 750 F. Supp. 3d 307, 320 (S.D.N.Y. 2024) (quoting *Beickert v. N.Y.C. Dep't of Educ.*, No. 22-cv-05265 (DLI) (VMS), 2023 WL 6214236, at *3 (E.D.N.Y. Sept. 25, 2023)).  Though somewhat thinly pleaded, the TAC's allegations clear this bar.  Plaintiff has pleaded that she "did not obtain the COVID vaccine" because the "requirement . . . conflicted with her Islamic religion and religious beliefs," TAC ¶ 95, and that her Islamic faith specifically "prohibits her from being vaccinated against all conditions, ailments and impairments, including the corona virus," *id.* ¶ 69.  This satisfactorily pleads the first element of Plaintiff's *prima facie* case.  *See, e.g.*, *Gardner-Alfred v. Fed. Reserve Bank of N.Y.*, 651 F. Supp. 3d 695, 721-22 (S.D.N.Y. 2023) (plaintiff adequately alleged sincere religious belief in conflict with employment requirement by pleading that she was a member of the Temple of Healing Spirit, which "opposes the invasive techniques of Western medicine," and thus

COVID-19 vaccine requirement "represent[ed] unacceptable intrusions on her personal form

due to their provenance, chemical composition, and origin" (internal quotation marks

omitted)); *Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 509 (S.D.N.Y. 2023)

(plaintiff pleaded first element of his *prima facie* case by alleging that "as a practicing

Christian, his sincerely held religious beliefs prevented him from receiving a COVID-19

vaccine that was tested, developed, or produced with fetal cell lines derived from procured

abortions" (internal quotation marks omitted)); *Langer v. Hartland Bd. of Educ.*, No. 22-cv-

01459, 2023 WL 6140792, at *5-7 (D. Conn. Sept. 20, 2023) (same, where plaintiff pleaded

that she had sincerely held religious beliefs that submitting to COVID-19 testing "when [she]

[was] healthy and without symptoms [was] coercing [her] to participate in an untruth, which

[she] cannot do" (citation omitted)).

Defendants do not address the other elements of Plaintiff's *prima facie* case.  *See* Br.

at 6.  As set forth in *Mumin I*, Plaintiff's allegations also adequately plead the second and third

elements of her claim: Plaintiff informed Defendants about her sincere religious belief, TAC

¶ 69, and was disciplined for failure to comply with that requirement by being placed on leave

and then terminated, *id.* ¶¶ 96, 132.

### 2.  Undue Hardship

Defendants principally argue that Plaintiff has not stated a claim because it is clear

from the face of the TAC that Plaintiff's proposed accommodation would have presented an

undue hardship to the DOC.  Br. at 6-12.  The Court is not persuaded given the additional

allegations in the TAC.

"[A] proposed accommodation constitutes an 'undue hardship' when it poses 'a

burden [that] is substantial in the overall context of an employer's business.'"  *Russo*, 129

F.4th at 186 (alteration in original) (quoting *Groff v. DeJoy*, 143 S. Ct. 2279, 2294 (2023)).

"The undue hardship inquiry is fact-specific," *Richardson v. Nat'l Basketball Ass'n*, No. 23-cv-06926 (DLC), 2025 WL 2402614, at *9 (S.D.N.Y. Aug. 18, 2025), and requires consideration of "all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size, and operating cost of [an] employer," *Groff*, 143 S. Ct. at 2295 (internal quotation marks omitted) (alteration in original); *accord DeMaria v. N.Y. State Unified Ct. Sys.*, No. 23-cv-03627 (PAE), 2025 WL 2298452, at *10 (S.D.N.Y. Aug. 8, 2025).

"The defense of undue hardship 'may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint.'" *D'Cunha*, 2023 WL 7986441, at *2 (omission in original) (quoting *Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010)). In evaluating undue hardship on a motion to dismiss, a district court may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

Defendants' undue-burden defense cannot be established on the face of the TAC. Defendants' denial letter stated that an exemption from the Vaccine Mandate would cause the DOC undue hardship due to the layout of DOC facilities and the duration of the time people spent near each other in them, Dkt. 93-2 at 1; that DOC employees frequently interacted with the public, creating a risk of COVID-19 transmission, *id.*; that the masking-and-testing accommodation would present an undue hardship because the precautions "may be insufficient to control the spread of COVID-19 in the Department," *id.*; and that it was "an undue hardship to exempt Members of Service from the vaccine because many Members of Service have been out sick recently," *id.* at 1-2. However, these rationales are now undermined by Plaintiff's new allegations that the DOC granted the masking-and-testing

accommodation to several other DOC employees in jail and non-jail facilities who had similar supervisory duties and/or medical roles (or denied the accommodation but permitted them to use the masking-and-testing accommodation without consequence). Specifically, Plaintiff now pleads that DOC permitted Captains Janelle Murray and Christian Doninelli to remain unvaccinated and instead submit to weekly PCR testing after denying their accommodation requests based on their Christian religious beliefs, and that DOC granted the medical accommodation request of Kelly Persad, a nurse assigned to the HMD. TAC ¶¶ 103-113, 115-124; *see New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319, 333 (2d Cir. 2025) (considering, in resolving motion to dismiss constitutional failure-to-accommodate claims, whether the amended complaint "pleaded allegations that contradict[ed]" the undue-hardship rationale apparent on the face of the pleading); *Chinchilla v. N.Y.C. Police Dep't*, No. 23-cv-08986 (DEH), 2024 WL 3400526, at *10 (S.D.N.Y. July 12, 2024) (allegations that police department permitted "other employees to test and mask" "tend[ed] to demonstrate the feasibility of offering [the masking-and-testing] accommodation to [p]laintiff," and meant the undue-hardship affirmative defense was not clear from the face of the complaint); *Lumley v. Town of Knightdale*, No. 23-cv-00663, 2024 WL 3678348, at *5 (E.D.N.C. Aug. 6, 2024) (allegations that fire department continued to rely on unvaccinated first responders and granted exemption requests made under the ADA "undercut defendant's argument that any exemption from the policy, even for first responders, would impose undue hardship"); *cf. Sughrim v. New York*, 690 F. Supp. 3d 355, 380 (S.D.N.Y. 2023) (no basis to conclude that permitting plaintiff–correction officers to wear one-inch beards for religious reasons would impose an undue hardship where other officers were permitted to wear one-inch beards for secular reasons); *Hebrew v. Tex. Dep't of Crim. Just.*, 80 F.4th 717, 722-24 (5th Cir. 2023) (similar). The denial letter also "identified particular hardships associated

with exempting employees at non-jail commands, given the need to deploy some of those individuals to jail commands in the face of staffing shortages." *Mumin I*, 760 F. Supp. 3d at 50; *see* Dkt. 93-2 at 1-2. But these hardships are difficult to square with the TAC's new, more specific allegations that officers even *in jail commands* were granted the same accommodation Plaintiff sought. *See* TAC ¶¶ 103-113, 115-120. Presumably, if the DOC were facing staffing shortages in jail commands, granting accommodations to officers in those commands also would make it harder for the DOC "to make sure that Members of Service are healthy and manning their posts," Dkt. 93-2 at 2, yet according to Plaintiff, Defendants granted such accommodations anyway. As a result, resolution of whether Plaintiff's requested accommodation would have imposed an undue hardship is more properly suited to a later stage, with the benefit of discovery. Thus, the Court denies Defendants' motion to dismiss Count I.[2]

### B.    NYSHRL and NYCHRL Failure-to-Accommodate Claims (Counts IV and VI)

Plaintiff also now alleges that Defendants' denial of her request for an accommodation violated the NYSHRL and NYCHRL. TAC ¶¶ 162-165, 170-173.[3] Defendants move to dismiss these claims, largely repeating their argument that granting Plaintiff's exemption

---

[2] Defendants' citations to cases in which the plaintiff either did not allege that other similarly situated employees received the requested accommodation, or in which permitting the accommodation would have violated state law, are unpersuasive because they are factually distinguishable from the allegations in the TAC. *See Algarin*, 678 F. Supp. 3d at 509 ("[E]xempting Plaintiff from the mandatory vaccination requirements . . . would violate the state rule, which would necessarily create an undue hardship on [Defendant]."); *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-cv-02929 (CS), 2023 WL 3467143, at *5-6 (S.D.N.Y. May 15, 2023) (similar). While discovery may eventually prove that permitting Plaintiff to test weekly in lieu of getting the COVID-19 vaccine would have posed an undue hardship to Defendants, it is not clear from the face of the TAC that it did.

[3] The Court will analyze Plaintiff's NYSHRL and NYCHRL claims together (but separately from her Title VII claims) for the reasons stated in *Mumin I*. *See* 760 F. Supp. 3d at 44.

request would have imposed an undue hardship on the DOC, and that the City adequately engaged in an interactive process with Plaintiff. Br. at 7-12.

The Court denies the motion to dismiss Plaintiff's NYSHRL and NYCHRL failure-to-accommodate claims for the same reasons articulated above with respect to Plaintiff's Title VII claim. "The same Title VII two-step framework is used to evaluate a NYCHRL" (and post-amendment NYSHRL) "claim for religious discrimination for failure to accommodate." *Algarin*, 678 F. Supp. 3d at 512. "To make out a *prima facie* case under" either the NYCHRL or NYSHRL, "Plaintiff must demonstrate that '(1) he has a bona fide religious belief that conflicts with an employment requirement; (2) he informed the employer of his belief; and (3) he was disciplined for failure to comply with the conflicting employment requirement." *Id.* at 513 (quoting *Price v. Cushman & Wakefield, Inc.*, 829 F. Supp. 2d 201, 222 (S.D.N.Y. 2011)). However, the NYCHRL and post-amendment NYSHRL are "construed 'more liberally' than federal law and 'broadly in favor of discrimination plaintiffs.'" *Mumin I*, 760 F. Supp. 3d at 55 (quoting *Algarin*, 678 F. Supp. 3d at 613). Since Plaintiff has adequately alleged her failure-to-accommodate claim under Title VII, she has also satisfactorily pleaded her NYSHRL and NYCHRL claims.[4] Thus, the Court denies Defendants' motion to dismiss Counts IV and VI.

---

[4] Defendants argue that Plaintiff has not stated a cooperative dialogue claim under the NYCHRL. Br. at 11-12. While it is not clear that the TAC actually asserts an independent cooperative-dialogue claim, *see* TAC ¶¶ 170-173, the Court dismisses any such claim for failure to state a claim. "The failure to engage in a 'cooperative dialogue' under the NYCHRL is 'independently actionable as a separate claim under the NYCHRL.'" *McSweeney v. Cohen*, 776 F. Supp. 3d 200, 249 (S.D.N.Y. 2025) (quoting *Greenbaum v. N.Y.C. Transit Auth.*, No. 21-1777, 2022 WL 3347893, at *5 (2d Cir. Aug. 15, 2022) (summary order)); *see Hosking v. Mem'l Sloan-Kettering Cancer Ctr.*, 126 N.Y.S.3d 98, 103 (App. Div. 2020) (similar). Here, there are no facts pleaded suggesting that Defendants "failed to respond to multiple requests . . . for information and guidance" about the accommodation process, Plaintiff's application, or her appeal, or "failed to explain in any meaningful way" why Plaintiff's "application did not qualify for an accommodation." *Rizzo*

## II. Disparate-Treatment Claims Under Title VII, the NYSHRL, and the NYCHRL (Counts II, IV, VII)

Plaintiff also brings disparate-treatment claims under Title VII, the NYSHRL, and the NYCHRL.  TAC ¶¶ 147-152, 166-169, 174-177.  Specifically, Plaintiff alleges that Defendants subjected her to disparate treatment in the terms and conditions of her employment by denying her request for an accommodation, placing her on leave without pay, and ultimately terminating her employment, while allowing other, non-Muslim DOC employees to remain unvaccinated without negative consequences.  *Id.* ¶¶ 95-98, 103-113, 115-124.  Defendants move to dismiss these claims.  Br. at 13-15.  The Court begins with Plaintiff's Title VII claim.  An individual plaintiff may prove disparate treatment under Title VII under the *McDonnell Douglas* framework by establishing "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination."  *Barrett v. Forest Lab'ys, Inc.*, 39 F. Supp. 3d 407, 426 (S.D.N.Y. 2014) (quoting *Weinstock v. Columbia*

---

*v. N.Y.C. Dep't of Sanitation*, No. 23-cv-07190 (JMF), 2024 WL 3274455, at *4 (S.D.N.Y. July 2, 2024) (quoting *Marsteller v. City of New York*, 192 N.Y.S.3d 18, 20 (App. Div 2023)).  Rather, Defendants offered information about how to apply for an accommodation, Plaintiff applied, the DOC explained in detail why her application did not qualify for an accommodation, and Plaintiff further appealed her determination, which was denied.  TAC ¶¶ 68-69, 93-94.  This does not plausibly support a claim that Defendants' process fell short of the NYCHRL's requirements.  *See, e.g.*, *Marsteller*, 192 N.Y.S.3d at 20 (rejecting NYCHRL interactive process claim where the defendant-City "publicly offered public information on its process for reviewing accommodation requests related to the vaccine mandate, and informed employees about how to apply . . . and how to appeal denials," the plaintiff "availed himself of this process," the agency "explained why his application did not qualify for an accommodation, and the parties further engaged during the administrative appeals process"); *cf. Rizzo*, 2024 WL 3274455, at *4 (denying motion to dismiss cooperative dialogue claim where defendant "failed to respond to multiple requests from [plaintiff] for information and guidance," failed to explain why he did not qualify for an accommodation, "and failed to communicate why granting [plaintiff] an exemption would result in hardship for [defendant]").  Thus, insofar as Count VI brings a NYCHRL cooperative dialogue claim, that claim is dismissed.

*Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)).  At the pleading stage, "a plaintiff 'is not required to

plead a *prima facie* case under *McDonnell Douglas*.'"  *Makhsudova v. City of New York*,

No. 20-cv-10728 (KPF), 2022 WL 1571152, at *6 (S.D.N.Y. May 18, 2022) (quoting *Vega v.

Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)).  Instead, "a plaintiff must

plausibly allege that [i] the employer took adverse action against [her] and [ii] [her] race,

color, religion, sex, or national origin was a motivating factor in the employment decision."

*Id.* (alterations in original) (quoting *Vega*, 801 F.3d at 86).  "A plaintiff may demonstrate

circumstances giving rise to an inference of discrimination by alleging that [s]he was treated

less favorably than similarly situated employees . . . ."  *Brown v. Daikin Am. Inc.*, 756 F.3d

219, 229 (2d Cir. 2014).

Defendants chiefly argue that Plaintiff has not pleaded facts supporting an inference of

discrimination, since the other employees the TAC now identifies are not similarly situated to

Plaintiff.  Br. at 13-14.  The Court disagrees.  "An employee is similarly situated to co-

employees if they were (1) subject to the same performance evaluation and discipline

standards and (2) engaged in comparable conduct."  *Ruiz v. County of Rockland*, 609 F.3d

486, 493-94 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Graham v. Long

Island R.R.*, 220 F.3d 34, 40 (2d Cir. 2000)).  "To survive a motion to dismiss, a plaintiff need

only allege facts making it 'plausible that a jury could ultimately determine that the

comparators are similarly situated.'"  *Talukder v. New York*, No. 22-cv-01452 (RA), 2023 WL

2752863, at *8 (S.D.N.Y. Mar. 31, 2023) (quoting *Miller-Sethi v. City Univ. of N.Y.*, No. 21-

cv-08591 (JPO), 2023 WL 419277, at *4 (S.D.N.Y. Jan. 26, 2023)).  Here, Plaintiff alleges

that Defendants placed her on leave without pay for failure to obtain the vaccination but other

captains, Captains Murray and Doninelli, who had Christian religious beliefs, were permitted

to continue working and submit weekly PCR testing (even though they were also denied their

accommodation requests).  TAC ¶¶ 105-106.  Plaintiff now alleges that she and Captains

Murray and Doninelli engaged in comparable conduct, despite the fact that she worked in the

HMD and Murray and Doninelli were assigned to housing units.  All three worked in

"enclosed office[s]," *id.* ¶ 111; *see id.* ¶ 62; all three supervised between twenty to twenty-five

uniformed employees or correction officers, *id.* ¶¶ 58-59, 112; and all three performed

predominantly administrative and supervisory tasks, *id.* ¶¶ 60, 112.  In addition, Plaintiff,

Murray, and Doninelli were all "subject to [the] same standards of performance and

discipline."  *Id.* ¶ 47.  Defendants do not address these new allegations, *see* Br. at 14, which

now plead sufficient detail about Murray and Doninelli to plausibly allege that they were

similarly situated to Plaintiff.  *See McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir.

2001) (explaining that to establish a *prima facie* case, plaintiffs are "not obligated to show

disparate treatment of an identically situated employee"); *Talukder*, 2023 WL 2752863, at *9

(concluding it was reasonable to "compare the grooming requirements of trainees with those

of corrections officers at the pleading stage").  Drawing all reasonable inferences in Plaintiff's

favor, she has now plausibly alleged that she was treated less favorably than similarly situated

DOC staff who had Christian religious beliefs, were permitted to work unvaccinated even

after their requests for religious accommodation were denied, and were not placed on leave

without pay or terminated.  *See Sughrim v. New York*, 503 F. Supp. 3d 68, 89, 97 (S.D.N.Y.

2020) (claim that plaintiffs, who were Muslim, were denied accommodation from grooming

policy while employer overlooked violations of the grooming policy by those who wore

beards for non-religious reasons, supported inference of discrimination); *Barnett v. Inova

Health Care Servs.*, 125 F.4th 465, 472 (4th Cir. 2025) (allegations that employer treated

accommodation requests from other, more prominent religions more favorably sufficiently

pleaded that employer "treated [plaintiff] differently than other employees because of her

religious belief, and thus, support[ed] a reasonable inference of discriminatory intent"). The Court therefore denies Defendants' motion to dismiss Plaintiff's Title VII disparate-treatment claim.

The Court also denies Defendants' motion to dismiss Plaintiff's analogous claims under the NYSHRL and NYCHRL, as those standards are more employee-friendly than the standards under Title VII. *See Rizzo v. N.Y.C. Dep't of Sanitation*, No. 23-cv-07190 (JMF), 2024 WL 3274455, at *3 (July 2, 2024) (denying motion to dismiss religious discrimination NYSHRL and NYCHRL claims where court had denied motion to dismiss Title VII claim); *Makhsudova*, 2022 WL 1571152, at *9-10 (same). Accordingly, Plaintiff's NYSHRL and NYCHRL claims survive Defendants' motion to dismiss.

## III.    Section 1983 Claims (Count III)

Finally, Plaintiff brings a claim under 42 U.S.C. § 1983 against Molina in his official capacity as DOC Commissioner, alleging that the DOC had a policy of denying all religious accommodation or exemption requests made by Muslim DOC employees, including Plaintiff. TAC ¶¶ 30-43, 90, 92, 153-161.[5] Defendants move to dismiss this claim, arguing that Plaintiff has not stated a claim under section 1983 because Plaintiff has not pleaded facts

---

[5] Although the caption names Molina in both his official and individual capacity, TAC at 1, Plaintiff represents in her opposition brief that the TAC only asserts claims against Molina in his official capacity, *see* Opp. at 26 ("Defendants incorrectly assert that Molina is sued in his individual capacity, when that is not the case. He is sued in his official capacity." (citation omitted)). As such, the Court dismisses Plaintiff's section 1983 claim against Molina in his individual capacity insofar as there ever was such a claim. Therefore, the Court does not reach the qualified immunity arguments raised by Defendants, because qualified immunity does not apply in the context of a claim brought against a municipal official in their official capacity. *See Askins v. Doe No. 1*, 727 F.3d 248, 254 (2d Cir. 2013) ("Qualified immunity is a defense available only to individuals sued in their individual capacity. '[M]unicipalities have no immunity from damages for liability flowing from their constitutional violations.'" (alteration in original) (internal quotation marks omitted) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012))).

suggesting that the denial of her request for an accommodation took place pursuant to the City's policies or customs.  Br. at 16-18.  The Court disagrees with Defendants.

A claim against a municipal officer in his official capacity is "in effect a claim against the governmental entity itself."  *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012). Claims against municipalities are considered under the standard for municipal liability articulated in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  *See Lore*, 670 F.3d at 168.  "When the defendant sued for discrimination under § 1983 is a municipality or an individual sued in his official capacity, the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom."  *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 575 (S.D.N.Y. 2011).  The plaintiff must also "establish a causal connection . . . between the policy and the deprivation of his constitutional rights."  *Greene v. City of New York*, 725 F. Supp. 3d 400, 428 (S.D.N.Y. 2024) (omission in original) (quoting *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).

Plaintiff may satisfy the "policy or custom" requirement by alleging either "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates."  *Mumin I*, 760 F. Supp. 3d at 57-58 (citation omitted).

Reviewing the allegations in the TAC in the light most favorable to Plaintiff, the Court concludes that Plaintiff has plausibly pleaded the third route; that is, that Defendants had a custom or practice of denying all religious accommodation requests made by Muslim DOC employees.  "[A]n act performed pursuant to a 'custom' that has not been formally approved

21

by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bowen v. County of Westchester*, 706 F. Supp. 2d 475, 484 (S.D.N.Y. 2010) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).  The Court previously dismissed the SAC's *Monell* claim for religious discrimination — which, unlike here, alleged there was a policy to deny *all* religious accommodations, not just those of Muslim employees — because the SAC only identified two examples of denials of religious accommodations and did not plead other allegations supporting an inference that "there was a persistent and widespread practice of denying all religious accommodations and granting all medical accommodations." *Mumin I*, 760 F. Supp. 3d at 59; *see id.* at 58-60.  In the TAC, Plaintiff now pleads that Defendants had a "policy of blanket denials of all Muslim employees' requests for religious accommodation," TAC ¶ 35; that Molina was aware of the "practice of issuing blanket denials of religious accommodation requests submitted by Muslim employees," *id.* ¶ 125, but "refused to take any action regarding the . . . practice," *id.* ¶ 126; that Defendants denied Plaintiff's accommodation request and that of a Muslim correction officer, Kenneth Harrison, based on that policy, *id.* ¶¶ 90, 99, 119; and, most importantly, that on July 15, 2022, Defendants "declared and admitted that they denied Plaintiff's religious accommodation request[] based on their blanket policy of denying all Muslim employees' religious accommodation requests," *id.* ¶ 92, purportedly in DOC's position statement to the EEOC, *see* Opp. at 25, 27 & n.7. While Defendants deny that such a statement exists, *see* Reply at 5, they did not submit the EEOC position statement to the Court, and the Court must accept the allegations in the TAC as true at this stage.  *Cf. Mumin*, 760 F. Supp. 3d at 67 ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." (citation omitted)).

While discovery may bear out Defendants' position, the Court concludes that at this stage, Plaintiff has plausibly pleaded a claim that Defendants had a custom or practice of denying all Muslim DOC employees' requests for religious accommodation, primarily because Defendants allegedly stated that they had such a policy. *See, e.g.*, *Baron v. Hickey*, 242 F. Supp. 2d 66, 75-76 (D. Mass. 2003) (denying summary judgment as to custom-or-practice *Monell* claim where deputy superintendent testified that he knew about "code of silence" in jails); *Haslinger v. Westchester County*, No. 18-cv-05619 (PMH), 2020 WL 2061540, at *6 (S.D.N.Y. Apr. 29, 2020) (plaintiff plausibly pleaded municipal policy of denying keep-separate orders in correctional facilities where he alleged that he was told by an assistant warden during grievance process that defendant "had no way of placing a keep separate order with someone who is not presently incarcerated in [the] facility" (citation omitted)).  As a result, the motion to dismiss Plaintiff's section 1983 claim against Molina in his official capacity is denied.

## CONCLUSION

In light of the foregoing, Defendants' motion to dismiss the TAC is DENIED.  The stay of discovery, Dkt. 52, is lifted.  The Clerk of Court is respectfully directed to amend the caption to terminate Defendant Salesforce.com, Inc.  The parties are directed to submit a proposed Civil Case Management Plan, as set forth in the Court's individual rules, by

**October 17, 2025**.  The Clerk of Court is respectfully directed to terminate the motion at Dkt.

92.

Dated:  September 25, 2025
        New York, New York

                          SO ORDERED.

                          _Jennifer Rochon_
                          _____
                          JENNIFER L. ROCHON
                          United States District Judge